1

2

3

4

5

6

7

8    IN THE UNITED STATES DISTRICT COURT

9    FOR THE EASTERN DISTRICT OF CALIFORNIA

10   BRIAN DAWE d/b/a FLAT IRON
     MOUNTAIN ASSOCIATES,
11
                    Plaintiff,                    No. CIV S-07-1790 LKK EFB
12            vs.

13   CORRECTIONS USA, et al.,
                                                 ORDER
14            Defendants.
                                    /
15
     AND CONSOLIDATED ACTION &
16   RELATED COUNTERCLAIMS.
                                    /
17

18          This case was before the undersigned on April 16, 2008, for a continued hearing on Brian

19   Dawe's motion to compel production of documents, and Correction USA's related motion for a

20   protective order and its motion to seal the deposition of non-party Steve Fournier.  Daniel Baxter

21   appeared on behalf of Brian Dawe; Maureen VanderMay appeared on behalf of Gary Harkins;

22   and, Phillip Mastagni and James Carr appeared on behalf of Corrections USA, California

23   Correctional Peace Officer's Association ("CCPOA"), James Baiardi and Donald Baumann

24   (referred to collectively as the "CUSA defendants").  The parties were previously before the

25   court on February 27, 2008, at which time the court ordered the parties to make additional efforts

26   to meet and confer over their myriad discovery disagreements.  While the parties did meet and

1

1  confer, little progress was made in resolving the specific discovery disputes.  Accordingly, the

2  parties were again before the court on April 16.  The court makes the following orders with

3  regard to the pending motions.

4  **I.  BACKGROUND**

5          Brian Dawe initiated this action in Wyoming state court.  It was removed to federal

6  district court in Wyoming on the basis of diversity, and was subsequently transferred to this

7  district on July 26, 2007.  In the verified complaint, Dawe, d/b/a Flat Iron Mountain Associates,

8  alleges several state law claims against defendants CUSA, CCPOA, Baiardi and Baumann.

9          CUSA is a coalition of correctional officers, unions, associations and fraternal orders

10  from around the nation that promotes the profession and addresses issues of common concern.  It

11  was established in 1998 and has members in 43 states.  CUSA is funded through payroll

12  deductions from correctional officers who choose to join CUSA.  The California Correctional

13  Peace Officers Association ("CCPOA") is one of fifty organizational members of CUSA.  The

14  majority of CUSA members (about 85%) are residents of California.  *See* CUSA Compl., Docket

15  Entry no. 35-2, ¶ 1.  Baiardi is the current chairman of CUSA, and Baumann is a CUSA board

16  member and employee of CCPOA.  Dawe is the former executive director of CUSA, and has

17  held other leadership positions within the organization.

18          Dawe's claims against the CUSA defendants center around an alleged breach of contract

19  that he characterizes as an employment contract, and allegedly defamatory statement about him

20  made or distributed by all four defendants.  The contract at issue is appended to the verified

21  complaint, and appears to contemplate Dawe's services as a consultant to CUSA.  It specifically

22  provides that Dawe is to perform the functions of the Executive Director and Membership

23  Benefits Administrator, in addition to other duties.  *See* Dawe Compl., Docket Entry no. 2, Ex.

24  B.

25          Dawe seeks declaratory relief to have the contract declared an employment contract.  He

26  alleges that pursuant to the contract and CUSA operating procedures, he was an employee of

2

CUSA under the employment laws of Wyoming.  In connection with his "breach of employment contract claim," Dawe alleges that CUSA discharged him without cause.  He alleges that he had a "special relationship with CUSA" and that CUSA terminated him in an effort to avoid further obligations under the Agreement.  He also alleges a tort claim for breach of the covenant of good faith and fair dealing implicit in employment contracts.

Dawe alleges, alternatively, a straight breach of contract claim against CUSA, and includes a claim for breach of the implied covenant of good faith and fair dealing in connection with that claim.  The breach of contract claims, whether sounding in employment or contract, are alleged against CUSA only.

With regard to Dawe's defamation claims, he alleges that all four defendants defamed him in an e-mail communication to CUSA's members.  He alleges that the e-mail contained untrue statements about Dawe's alleged misuse and mismanagement of CUSA funds.  *See* Dawe Compl., Ex. F.  The e-mail also implicates Richard Loud and Gary Harkins, both of whom are defendants named in CUSA's countersuit, in the alleged misconduct.  The e-mail further cautions CUSA members against joining a new, competing association that Dawe, Loud and Harkins were in the process of establishing.  Dawe alleges that the e-mail was sent from a CCPOA e-mail address registered to and/or used by Baumann, and was authored by Baiardi in his capacity as a CUSA board member and employee of CCPOA.  *See* Dawe Compl., ¶¶ 44-61.

Dawe's complaint also includes a claim for interference with prospective contractual relations against all four defendants, and a claim for indemnification against CUSA.

According to Dawe (though not specifically alleged in the complaint), the leadership of CCPOA took over CUSA's board for the benefit of individual CCPOA leaders and CCPOA itself.  In particular, he accuses CCPOA of misappropriating CUSA funds, and asserts that he was forced out of his position at CUSA because of his imminent exposure of wrongdoing by several CCPOA and CUSA members and officials.  He also asserts that he was ousted from the organization by CUSA officials seeking to "appease" the woman who replaced him as executive

1  director, Shannon Lahey.  Dawe alleges that she was given his position as quid pro quo for not

2  going forward with charges of sexual harassment against CUSA and CCPOA leaders.

3      Before Dawe's case was transferred from the District of Wyoming to this court, CUSA

4  and Mike Jimenez, as representative of the members of CUSA, filed a separate lawsuit against

5  Dawe, Loud and Harkins in Sacramento Superior Court.  CUSA's action against Dawe, Loud

6  and Harkins was removed to this court on April 4, 2007, on the basis of diversity.  CUSA alleges

7  eleven separate state law causes of action against the defendants, all of which focus on their

8  alleged mismanagement and misuse of CUSA funds and assets.  Further, CUSA alleges that the

9  defendants violated their fiduciary duties to CUSA by founding competing correctional officer

10 associations while they were still employed or otherwise affiliated with CUSA.

11     CUSA's specific claims against all three defendants are as follows: (1) breach of

12 fiduciary obligations and duties in violation of Cal. Corp. Code §§ 7231, *et seq*., beginning in

13 2003 (*see* CUSA Compl., ¶ 65); (2) breach of those duties by entering into undisclosed, self-

14 interested transactions in violation of Cal. Corp. Code § 7231, beginning in 2003 (*see* CUSA

15 Compl., ¶ 79); (3) breach of those duties by making prohibited advances, loans, obligations and

16 guarantees in violation of Cal. Corp. Code § 7235, beginning in 2003 (*see* CUSA Compl., ¶ 92);

17 (4) falsification of and failure to keep adequate books and records in violation of Cal. Corp.

18 Code §§ 8320, 8813, beginning on an unknown date (*see* CUSA Compl., ¶ 105); (5) interference

19 with CUSA's contracts and business relations, beginning on an unspecified date; (6) interference

20 with prospective business relations and economic advantage, beginning on an unknown date; (7)

21 unauthorized use of CUSA's name, trademark rights and promotional items in violation of Cal.

22 Corp. Code § 8816, beginning in 2006 (*see* CUSA Compl., ¶ 148); (8) unauthorized use of

23 CUSA's membership list in violation of Cal. Corp. Code § 8338, beginning on an unspecified

24 date; (9) fraudulent acquisition, misuse, falsification, and concealment of CUSA assets and

25 records in violation of Cal. Corp. Code § 8814; (10) conversion of CUSA property, funds and

26 assets, beginning on an unspecified date; and, (11) an equitable accounting in order to ascertain

1   the full extent of the alleged misappropriations.

2       After CUSA's action was removed to this court, the district judge ordered the two actions

3   related on September 10, 2007.  On September 17, 2007, the cases were consolidated pursuant to

4   Fed. R. Civ. P. 42(a).  Since that time, the parties have been proceeding with the litigation, but

5   have encountered several disagreements as to the discoverability of certain documents and the

6   manner in which discovery should proceed.

7   **II.  DISCUSSION**

8       Three motions are presently before the court:  (1) Dawe's motion to compel production

9   of documents from CUSA, CCPOA, Baiardi and Baumann; (2) the CUSA defendants' motion

10  for a protective order; and, (3) the CUSA defendants' motion to seal the deposition transcript of

11  non-party Steve Fournier.

12      The motion to compel and the motion for a protective order overlap significantly, as the

13  CUSA defendants have attempted to predicate disclosure of several categories of items on

14  Dawe's stipulation to a blanket confidentiality order.  The CUSA defendants formally moved the

15  court, pursuant to Fed. R. Civ. P. 26(c), for an order limiting or preventing disclosure of several

16  categories of documents.

17      At the April 16, 2008, hearing, the parties indicated that they had made some progress in

18  arriving at a stipulated, proposed protective order that would moot some of the disputes presently

19  pending before the court.  The court has reviewed the lodged stipulation, and has approved it,

20  with some modifications.

21      **A.  <u>Motion to Compel and Protective Order</u>**

22      Dawe brings a motion to compel pursuant to Fed. R. Civ. P. 37(a)(3)(B).  Dawe served

23  requests for production of documents on CUSA, CCPOA, Baiardi and Baumann, and as of the

24  date of the hearing, has received few, if any, documents in response.  The CUSA defendants

25  responded to requests, in large part, with boilerplate objections and unsupported claims of

26  privilege.  Though they filed a privilege log, it did not identify the withheld documents with any

5

1    specificity, and otherwise failed to comply with the requirements of Fed. R. Civ. P. 26(b)(5).

2    Despite these failures, the court finds some of the CUSA defendants' objections with regard to

3    relevance and overbreadth to be well-taken, and addresses the disputed document requests by

4    category below.

5         The overarching principle guiding the determination of whether or not information is

6    relevant is articulated in Fed. R. Civ. P. 26(b)(1) ("Parties may obtain discovery regarding any

7    non-privileged matter that is relevant to any party's claim or defense. . . .  Relevant information

8    need not be admissible at the trial if the discovery appears reasonably calculated to lead to the

9    discovery of admissible evidence.").

10        As to CUSA's motion for a protective order, the party moving for an order that discovery

11   not be had or be otherwise limited must establish "good cause" for such an order.  Fed. R. Civ. P.

12   26(c).  In general, the CUSA defendants seek an order either protecting them from responding to

13   irrelevant or overbroad discovery requests, or limiting the dissemination of various items.  Here,

14   the motions to compel and for a protective order are intertwined and concern the same, disputed

15   requests.  Accordingly, to the extent the stipulation by the parties does not resolve the pending

16   disputes, the following discussion encompasses a consideration of the dueling motions to compel

17   and for a protective order.

18        1.    **Documents concerning CCPOA Finances/Reimbursements (CCPOA Request Nos. 1, 2, 54-58; CUSA Request Nos. 1, 2, 54-58; Baumann**
19        **Request No. 1; Baiardi Request No. 1)**

20        These requests seek documents relating to CCPOA's reimbursement of expenses made in

21   connection with CUSA-related activities, including an alleged CCPOA loan to CUSA.  The

22   relevance of the requested documents is disputed.  Dawe argues that these requests are relevant

23   insofar as they will reflect CUSA's accounting practices with regard to CCPOA's expenditures

24   of CUSA monies.  He contends that some of the money he is accused of taking may be attributed

25   to others' misconduct – the suggestion being that others and not he either misused or

26   misappropriated the allegedly missing funds.  Further, he argues that CCPOA controls CUSA,

6

1  and that both entities made the decision to oust him because he was on the verge of unveiling

2  serious financial (and other) misconduct by officials within both organizations.  Dawe argues

3  that this is relevant both to his employment claims and his defamation claims.  More specifically,

4  Dawe argues that the allegations of misconduct leveled at him by CUSA are merely a pretext for

5  his discharge, and that the real reason he was defamed and discharged was to stop him from

6  blowing the whistle on others.  Dawe does not explain how his discharge or the defamation has

7  prevented him from "blowing the whistle" in any event.

8      In reviewing the pleadings, this theory seems somewhat attenuated from the actual causes

9  of action that are alleged.  Indeed, CCPOA is only named as a party to this suit in connection

10  with Dawe's claims of defamation and tortious interference.  Nonetheless, assuming that Dawe's

11  theory of the case, i.e., that CCPOA and CUSA acted in collusion to terminate him from his

12  position at CUSA "without cause" and for other more nefarious, pretextual reasons, these

13  documents may be relevant to his breach of employment contract claim.

14      The parties have not addressed which state's substantive laws govern the contract claims.

15  However, whether proceeding under California or Wyoming law, an employer's reasons for

16  terminating an employee are relevant to a claim of wrongful termination, which Dawe has

17  alleged as his third cause of action.  *See* Dawe Compl., ¶¶ 31-36.

18      "In Wyoming, employment is at-will unless an express or implied contract establishes

19  employment that may be terminated only for cause."  *Jewell v. North Big Horn Hosp. Dist. by &*

20  *Through Board of Trustees*, 953 P.2d 135, 137 (Wyo. 1998) (citing *Loghry v. Unicover Corp.*,

21  927 P.2d 706, 710 (Wyo. 1996)).  In *Jewell*, the court denied the employer's motion for

22  summary judgment on the wrongful discharge claim, concluding that a jury "could reasonably

23  decide that [plaintiff] was improperly discharged for the purpose of denying her a scheduled pay

24  raise and other possible benefits associated with her longevity. . . ."  *Jewell*, 953 P.2d at 139.

25      "Under California law, an employer has good cause to terminate an employee if it has

26  'fair and honest reasons, regulated by good faith on the part of the employer, that are not trivial,

7

1   arbitrary or capricious, unrelated to business needs or goals, or pretextual.'" *Incalza v. Fendi N.*

2   *Am., Inc.*, 479 F.3d 1005, 1013 (9th Cir. 2007) (quoting *Contran v. Rollins Hudig Hall Int'l, Inc.*,

3   17 Cal.4th 93, 96 (Cal. 1998)).

4          Here, Dawe alleges that CUSA "breached the employment [agreement] by discharging

5   plaintiff . . . without cause." Dawe Compl., ¶ 36. In the papers filed in connection with the

6   discovery motion, he alleges that his "discharge" was pretextual for the reasons articulated

7   above. Based on Dawe's theory, information tending to show that CUSA was controlled and

8   mismanaged by CCPOA, and that Dawe was discharged to prevent him from exposing that fact,

9   could bear on the issue of "cause."

10         The connection to his defamation claims is less clear. While the court has no doubt that

11  CUSA's financial records have been put at issue by CUSA's claims, Dawe's specific requests

12  are attenuated from the defamation claim. He argues that the requested documents will show

13  that the mismanagement and misconduct that the CUSA defendants accuse him of is really

14  attributable to others. However, Dawe's accusations of wrongdoing by CCPOA do not

15  necessarily prove the falsity of the allegations of wrongdoing leveled at him. For example,

16  where the allegedly defamatory e-mail accuses Dawe of misusing travel reimbursements and

17  credit cards, Dawe alleges that CCPOA wrongfully used CUSA funds to pay off sexual

18  harassment lawsuits filed against CCPOA officials. These two instances of alleged wrongdoing

19  are not related. One does not prove the falsity of the other for purposes of a defamation claim.

20         On the other hand, other accusations in the allegedly defamatory e-mail are fairly broad.

21  The e-mail states that Dawe was removed from CUSA "for mismanaging the organization,"

22  "padding his pocket," and spending "unheard of amounts of . . . dues money [for his] own

23  benefit while accomplishing little or nothing for correctional officers on the line." Dawe

24  Compl., Ex. F. If Dawe is to prove the falsity of these statements, he will likely need to do so, in

25  part, through evidence from CUSA's financial records, as well as his own. If CCPOA and

26  CUSA funds were inappropriately intermingled, as Dawe alleges, this may bear on proving the

8

falsity of the allegedly defamatory statements regarding Dawe's mismanagement of funds, as well as Dawe's defense against the similar claims alleged against him by CUSA.  Accordingly, the requested documents are relevant in that respect, and are therefore discoverable within the federal rule's broad interpretation of the term.

As to the CUSA' defendants' boilerplate objections to these requests, they are unavailing as well as improper.  *See United States ex rel. O'Connell v. Chapman Univ*., 245 F.R.D. 646, 650 (C.D. Cal. 2007) (citing numerous cases holding that boilerplate objections are insufficient to meet party's burden to explain why discovery requests were objectionable).  Further, the court wholly rejects the objection that the requested documents are "confidential corporate financial documents."  In these consolidated actions, it will be CUSA (and to some extent CCPOA) "corporate financial documents" that prove or disprove CUSA's allegations against Dawe. Indeed, CUSA is advised that, based on a reading of its complaint, it has placed in issue its financial records from 1998 onward.  Mr. Dawe is entitled to access those records in order to defend against the many claims asserted against him.  Withholding those records on a blanket assertion of privilege without compliance with Fed. R. Civ. P.  26(b)(5), including the requirement of a privilege log, is simply inappropriate, especially where the unsupported objection appears to be little more than boilerplate.

To the extent the parties agree that certain of these documents are sensitive or confidential and should not be disseminated beyond the scope of the litigation, they may designate them as such pursuant to the terms of the stipulated protective order.

Finally, the court admonishes the CUSA that it risks waiving any asserted privileges – including the attorney-client privilege – if the assertions are unsupported by a privilege log that complies with Fed. R. Civ. P. 26(b)(5).

In accordance with the foregoing, the court grants Dawe's motion to compel as to these requests, and orders the CUSA defendants to produce all responsive documents.  CUSA's motion for an order that discovery not be had, or be otherwise limited, with regard to these

1   documents is denied.  However, the parties are free to work within the confines of their

2   stipulated protective order to facilitate production.  To the extent any documents are withheld on

3   the basis of privilege, each document shall be specifically identified in a privilege log that

4   accompanies the production.

5          2.      **Documents regarding Shannon Lahey's Lobbying and Union Work, Reimbursement, and Sexual Harassment Claims (CCPOA Request**

6          **Nos. 3, 5, 6-12, 39-41, 67; CUSA Request Nos. 3, 5, 6-12, 39-41, 67)**

7          These requests seek documents relating to the current executive director of CUSA,

8   Shannon Lahey.  Dawe makes numerous allegations with regard to Ms. Lahey.  In particular, he

9   seems to believe that his removal as executive director, was, in addition to the theories cited

10  above, done to prevent Ms. Lahey from filing a sexual harassment lawsuit against various CUSA

11  and CCPOA officials.  That is, Dawe asserts that Ms. Lahey was given his job to keep her quiet,

12  and that this was just part and parcel of the pretextual reasons for his discharge as well as one

13  more instance of wrongdoing the CUSA defendants sought to cover up through his removal.

14         The underlying allegations of sexual harassment and related misconduct have little or

15  nothing to do with the causes of action in these two complaints.  Drudging up information

16  through discovery as to the allegations themselves does not appear to be reasonably calculated to

17  disclose evidence relevant to either complaint here.  However, information regarding the

18  "settlement" of Ms. Lahey's claims may bear on Dawe's wrongful termination claims, and is

19  therefore discoverable.  Consistent with the foregoing, the court makes the following orders as to

20  the specific requests at issue.

21         Request no. 3 seeks documents reflecting expenses submitted to CCPOA for

22  reimbursement by Ms. Lahey in connection with CUSA-related activities.  As discussed above,

23  CUSA's financial records, including its records of its dealings with CCPOA, have been placed at

24  issue, both by CUSA's claims against Dawe, and by Dawe's theory of wrongful termination.

25  Accordingly, in that context the court grants Dawe's motion to compel as to this request, but

26  encourages the parties to work within the terms of the stipulated protective order to facilitate

1   production.  Any documents withheld on the basis of privilege shall be specifically identified in

2   a privilege log that accompanies the production, and that log shall comply with Fed. R. Civ. P.

3   26(b)(5).

4         Request no. 5 seeks documents relating to Ms. Lahey's replacement of Dawe as

5   executive director, which is relevant to Dawe's employment claim.  Accordingly, Dawe's motion

6   to compel is granted as to this request.  The same admonitions regarding the stipulated protective

7   order and privilege log apply.

8         Request nos. 6-7 seek documents relating to other contracts entered into between Ms.

9   Lahey and CUSA.  Dawe asserts that these documents will show that Mr. Loud was authorized

10  to negotiate and approve contracts on behalf of CUSA, contrary to CUSA's assertions that he

11  was not.  Dawe fails to point to a specific allegation to that effect in CUSA's forty-two page

12  complaint.  Indeed, based on a review of that document, it appears that CUSA's claims against

13  Loud, Dawe and Harkins with regard to any contracts are that such agreements were improper

14  because they were self-dealing and not disclosed to or approved by the board, not because the

15  parties lacked authority to bind CUSA.  Accordingly, Dawe's motion to compel is denied

16  without prejudice as to this request.

17        Request no. 8 seeks communications between certain individuals relating to Ms. Lahey.

18  This request is overbroad in terms of a time-frame and with regard to the subject matter of the

19  "communications."  Dawe's motion to compel is denied without prejudice as to this request.

20        Request nos. 9-12 seek information relating to Ms. Lahey's purported threats of sexual

21  harassment, which, as discussed above, Dawe claims was one of the reasons for his ouster.

22  These requests also seek Ms. Lahey's full employment file.

23        To the extent the "Lahey sexual harassment theory" bears on Dawe's wrongful

24  termination claim, documents tending to prove that theory are discoverable.  However, the court,

25  mindful that the lawsuits here are based entirely on diversity, considers CUSA's objections on

26  the basis of state law privacy rights.  *See Nat'l Union Fire Ins. Co. v. Elec. Transit Inc.*, No.

04-3435 JSW (MEJ), 2006 U.S. Dist. LEXIS 38440, at *7-8 (N.D. Cal. June 1, 2006) (when a party asserts a privilege to deny a request for production of documents in a civil diversity case, state law governs).  "Even when discovery of private information is found directly relevant to the issues of ongoing litigation, it will not be automatically allowed without a careful balancing of the need for the information against the privacy interest."  *Id.* (citing *City of Santa Barbara v. Adamson*, 27 Cal.3d 123, 130 (Cal. 1980)).  "In conducting its balancing, courts should consider whether the information is relevant and, if so, whether less intrusive means could yield the information sought."  *Id*. (citing *El Dorado Sav. & Loan Assn. v. Super. Ct.*, 190 Cal. App. 3d 342, 346 (Cal. Ct. App. 1987))

Neither party has presented much information as to the "need" for Ms. Lahey's employment file, the weight of the privacy interests at stake, or whether the requested information can be obtained from some other, less intrusive source.  In light of the lack of information in this respect and the questionable relevance of Ms. Lahey's "full employment file," Dawe's motion as to requests nos. 10 and 11 is denied without prejudice.  Nonetheless, the CUSA defendants are ordered to produce documents responsive to request no. 12 regarding the "sexual harassment theory."  The production shall be limited to any documents tending to show that Ms. Lahey's alleged harassment claims motivated Dawe's dismissal and Lahey's promotion to the position of executive director.  The same admonitions regarding the stipulated protective order and privilege log apply.

Dawe's argument that the requested documents are relevant to his defamation claim insofar as they will disprove "CUSA's statements that Mr. Dawe and Mr. Loud wrongfully terminated Ms. Lahey" is unavailing.  The defamation claim, as alleged, relates to the January 3, 2007, e-mail, which makes no mention of Ms. Lahey.  Indeed, there is no mention of Ms. Lahey or her alleged "wrongful termination" claim in any of the pleadings.  These requests also seek information regarding a person named Sheryl Merkley, a vendor apparently recommended to Dawe by CCPOA officials.  In spite of the CUSA defendants' objections on the basis of

1  relevance, Dawe has offered no explanation as to how information about Ms. Merkley is relevant

2  to the claims or defenses in either lawsuit.  Accordingly, the court denies Dawe's motion to

3  compel request nos. 39-41 (those pertaining to Lahey's employee evaluation and to Ms.

4  Merkley).  The denial is without prejudice to Dawe's redrafting more carefully crafted requests.

5      Dawe's motion to compel is also denied as to request no. 67.  This request seeks

6  information from events occurring three or more years prior to the inception of CUSA, i.e.,

7  documents relating to communications between Don Novey and former Congressman Gary

8  Condit.  Dawe argues that these documents will show  "why Ms. Lahey was hired by CCPOA in

9  1995" and that there exists some improper quid pro quo between her and CCPOA.  Dawe has

10  failed to explain how this relates to a claim or defense in either action.  Accordingly, CUSA's

11  relevance objections are affirmed, and Dawe's motion to compel is denied as to request no. 67.

12      3.  **Documents regarding Sexual Harassment Claims and Settlements (CCPOA Request Nos. 13, 14, 43-49; CUSA Request Nos. 13, 14, 43-49)**

13

14      These requests seek documents regarding alleged claims of sexual harassment and related

15  lawsuits and/or settlements, involving either CUSA or CCPOA officials and members.  Dawe

16  asserts that "these documents will show the pervasiveness of claims and threatened claims for

17  sexual harassment against CUSA and CCPOA officials, and how membership funds were used

18  without member knowledge to pay settlements to the various claimants."  *See* "Further Joint

19  Statement," Docket Entry no. 96, 17:10-15.  Dawe also claims these documents will tend to

20  show that his "imminent exposure of those quiet payoffs was one of the reasons for his

21  termination, and [that] the sums directed to those payoffs are among those which Defendants

22  now accuse Mr. Dawe of misappropriating."  *Id.*

23      Again, drudging up information as to the underlying details of such lawsuits does not

24  appear to be reasonably calculated to disclose evidence relevant to claims or defenses in this

25  case**.**  However, the alleged financial settlements of those claims, and the source of the funds to

26  pay those settlements, may have relevance to the competing allegations of misappropriation of

13

1  funds.

2       At the hearing, it was clarified that Dawe only seeks information relating to payments by

3  CUSA of judgments in sexual harassment or hostile work environment lawsuits, settlements

4  thereof, or "payoffs" to prevent such lawsuits.  Thus, to the extent CUSA paid such sums in

5  connection with claims of sexual harassment, either on behalf of CCPOA or CUSA members, the

6  CUSA defendants are to produce documents evidencing those payments.  The same admonitions

7  noted above regarding the stipulated protective order and any documents withheld on the basis of

8  privilege apply.  The court further limits production to documents from 1998 and beyond, as

9  CUSA was not formed until 1998.

10            **4.    Documents regarding the California Employees Chapter of CUSA
                  (CCPOA Request Nos. 15-18, 20-22, 61-63; CUSA Request Nos. 15-18,**
11            **20-22, 61-63)**

12       These requests seek documents relating to the "California Chapter of CUSA," which

13  Dawe claims was established by a CCPOA official, Lance Corcoran.  Dawe states that Corcoran

14  is CCPOA's primary representative from California on the CUSA board.  He alleges that

15  Corcoran established this account as a ruse to permit CCPOA, through Corcoran, to

16  misappropriate CUSA membership funds.  Dawe claims that his forthcoming exposure of that

17  ruse was one of the reasons for his discharge and the subsequent defamation.  As discussed

18  above, regardless of the plausibility of Dawe's theory, such information is relevant, within the

19  meaning of the federal rules, as to the wrongful termination claim.  Dawe's motion as to these

20  requests is granted.  To the extent the CUSA defendants have in their possession documents

21  responsive to these requests, they are ordered to produce them, subject to the same admonitions

22  regarding the stipulated protective order and assertions of privilege.

23            **5.    Documents regarding CUSA Board Meetings (CCPOA Request Nos.
                  23, 25-27; CUSA Request Nos. 23, 25-27; Baumann Request No. 2;**
24            **Baiardi Request No. 1)**

25       These requests seek documents concerning the August 11, 2006, CUSA board meeting

26  and "pre-meeting" on August 10, at which Dawe's termination was discussed.  *See* Dawe

1    Compl., Ex. C.  They also seek similar documents concerning board meetings in September and

2    October of 2006, during which Dawe's termination was made effective.  *See Id.*, Exs. D, E.

3         Given the relevance of these documents to Dawe's claims for wrongful termination and

4    defamation, the court grants Dawe's motion as to these requests and finds CUSA's boilerplate

5    objections unavailing.  The CUSA defendants shall produce documents responsive to these

6    requests, and the same admonitions regarding the stipulated protective order and assertions of

7    privilege apply.  The court will deem any blanket assertion of privilege waived if it is

8    unsupported by a proper privilege log.  *See* Fed. R. Civ. P. 26(b)(5).

9         **6.    Documents regarding CCPOA Board Meetings and CCPOA
                  Communications (CCPOA Request Nos. 24, 50, 65; CUSA Request
10                 Nos. 24, 50, 65)**

11        Request no. 24 seeks "all minutes, notes, and recordings of CCPOA Executive Council

12   and State Board meetings from January 1996, inclusive, through [present]. . . where any

13   discussion of CUSA or the Corrections and Criminal Justice Coalition took place."

14        Dawe argues that these documents will evidence the extent to which CCPOA officials

15   were involved in the cover-up and removal of Dawe and Loud, and will allow him to discern the

16   nature of "CCPOA's predatory tactics involving other organizations, which shows a pattern of

17   conduct by CCPOA that informs its conduct and the issues in this case."  *See* "Further Joint

18   Statement," Docket Entry no. 96, 18:26–19:3.

19        The CUSA defendants object on grounds of overbreadth and relevance, and assert

20   numerous boilerplate objections.  The relevance and overbreadth objections are well-taken.

21   CUSA was not formed until 1998.  Dawe fails to explain how documents from 1996 bear on the

22   "cover-up and removal" of him and Loud from CUSA in 2006.  Accordingly, Dawe's motion is

23   denied without prejudice as to request no. 24.

24        Likewise, request no. 50 seeks "all documents reflecting meetings or discussions . . .

25   between Lance Corcoran and CCPOA regarding CUSA from January 1, 1998," to present.

26   Given Dawe's characterization of Corcoran's role in both CCPOA and CUSA, this request could

                                             15

1   encompass essentially every document in CUSA's possession since its inception in 1998.  As

2   such, it is overly broad and does not meet the requirements of Fed. R. Civ. P. 34(b)(1)(A)

3   (request must describe the information sought with reasonable particularity).  Accordingly,

4   Dawe's motion is denied without prejudice as to request no. 50.

5        Request no. 65 seeks documents sent by or on behalf of Michael Jimenez or CCPOA to

6   the Suffolk County Correctional Officers Association in 2006 and 2007, regarding Vito

7   Dagnello.  Dawe seems to allege that Dagnello was the victim of defamation by CUSA, similar

8   to that allegedly suffered by him.  He argues that the requested documents will establish

9   "CCPOA's predatory tactics" and "pattern of conduct."  He also alleges that Dagnello was the

10  chair of the board meeting during which Dawe was dismissed, and that the requested documents

11  will shed light on the decisionmaking process with regard to his dismissal.

12       To the extent the requested documents bear on CUSA's motivations in terminating Dawe,

13  they are discoverable.  The court wholly rejects CUSA's unsupported claims of privilege based

14  on the "California Police Officers Bill of Rights," and similar state law protections against

15  disclosure of peace officer personnel records.

16       First, CUSA fails to explain how the requests implicate peace officer personnel records.

17  Second, the asserted "police officer personnel file" privilege is not absolute.  Further, to the

18  extent the protections of Cal. Pen. Code § 832.7[1] and "Public Safety Officers Procedural Bill of

19  Rights Act," Cal. Gov't Code §§ 3301-3310, apply in this case, they do not, per se, prohibit

20  disclosure of such records or of a peace officer's identity.  Moreover, the procedures regarding

21  disclosure of police officer personnel files (i.e., Cal. Pen. Code § 832.7; Cal. Evid. Code

22  §§ 1034, *et seq.*), do not supplant federal rules of procedure.  Where a request truly calls for

23

24       [1] Cal. Pen. Code § 832.7 provides that "peace officer or custodial officer personnel records and records maintained by any state or local agency pursuant to Section 832.5, or
25  information obtained from these records, are confidential and shall not be disclosed in any criminal or civil proceeding except by discovery pursuant to Sections 1043 and 1046 of the
26  Evidence Code."

1  information that is protected or private under state law, CUSA must specifically identify the

2  responsive documents in a privilege log consistent with Fed. R. Civ. P. 26(b)(5).  Upon a proper

3  assertion of a privilege accompanied by the required log, the court will engage in any necessary

4  balancing of the purported privacy interests with the needs of the litigation.  Where the

5  information is "needed," the court may order production, and if necessary, order that the

6  dissemination of the information produced be limited to the confines of the litigation.  However,

7  under no circumstances may CUSA unilaterally withhold documents on the basis of an

8  usupported boilerplate objection.  The court's ruling in this regard is applicable to each of the

9  CUSA defendants' objections on the basis of statutory rights regarding officer personnel records.

10         Accordingly, the court grants Dawe's motion to compel as to these requests, subject to

11  the same admonitions regarding the stipulated protective order and assertions of privilege.

12         **7.    Documents regarding CUSA Audit by Perry-Smith (CCPOA Request**
              **Nos. 28, 29, and 51; CUSA Request Nos. 28, 29, 51; Baiardi Request**
13            **No. 2)**

14         These requests seek documents relating to the 2006-2007 audit conducted by an

15  accounting firm on behalf of CUSA.  The audit purportedly covered only certain CUSA accounts

16  from 2003 to 2006.  The CUSA defendants assert that this audit was made with an eye toward

17  the present litigation.

18         Dawe argues that these documents are likely to reveal information relevant to CUSA's

19  accusations of fiscal impropriety against the three defendants.  Indeed, the motivations for and

20  the results of the audit are highly relevant to the claims and defenses in this consolidated action.

21  However, CUSA asserts that the documents relating to the audit are not discoverable because the

22  auditing firm was engaged as an expert "in anticipation of litigation," and that "facts known and

23  opinions held" by them are subject to discovery only in "exceptional circumstances."  *See* Fed.

24  R. Civ. P. 26(b)(4)(B) (protecting from disclosure facts and opinions knows to non-

25  ////

26  ////

1    testifying experts).[2]  CUSA also asserts that various responsive documents relating to the audit

2    are covered by the attorney-client privilege and work product protections.

3          CUSA undermines these assertions by also arguing that Dawe is prematurely seeking

4    "discovery of expert opinions."  This objection by CUSA suggests that it intends to call the

5    auditors as experts at trial, which would make documents relating to the audit discoverable by

6    the date identified in the pre-trial scheduling order.  *See* Fed. R. Civ. P. 26(b)(4)(A).  CUSA

7    further undermines its position by its submission of a wholly inadequate privilege log that fails

8    to identify specific documents and explain how the various, asserted privileges and protections

9    apply.

10         However, because the CUSA defendants did raise the asserted privileges in their initial

11   responses to the document requests, the court will not, at this point, find the privileges waived.

12   However, the court's denial of Dawe's motion with respect to these requests is without prejudice

13   to a renewed motion.  Unless the parties can reach an agreement regarding the documents

14   identified in the request, the CUSA defendants must provide an appropriate privilege log

15   identifying the documents withheld and the basis for withholding them.

16                **8.     Documents regarding information about and activities undertaken by
                   Sharon Parker relating to CUSA (CCPOA Request Nos. 4, 42; CUSA**
17                **Request Nos. 4, 42)**

18         These requests seek documents relating to alleged financial and other improprieties by

19   CCPOA and CUSA officials.  In particular, Dawe claims that these documents are relevant

20   inasmuch as they may show that certain officials misused CUSA funds on escort services.  The

21   isolated events identified in these requests have little or no bearing on the actual claims and

22   defenses in the lawsuit.  The tenor of these requests appear designed to harass various CUSA and

23   CCPOA officials.  Dawe will have the opportunity to examine CUSA financial records to defend

24

25          [2]  Rule 26(b)(4)(B) applies only to "non-testifying" experts.  Pursuant to that rule, a party
     many not discover facts known or opinions held by an expert who has been retained or specially
26   employed by another party in anticipation of litigation.  *Id.*

1  against the claims against him, and should be able to identify through those records whether

2  escort services were ever paid for with CUSA funds.  Accordingly, Dawe's motion to compel as

3  to these requests is denied.

4          **9.      Documents regarding CUSA Finances (CCPOA Request No. 30;**
               **CUSA Request No. 30)**

5

6          These requests seek "all CUSA financial books and records (including receipts, bank

7  statements, and similar documents necessary for a complete and full audit) from August 1,

8  2006," to present.

9          Dawe argues that these documents are necessary to show where the funds wrongly

10  claimed to have been misappropriated by him, Loud, and Harkins actually went.  The documents

11  are also relevant to determining the basis for and accuracy of CUSA's damages claims.  CUSA

12  again interposes boilerplate objections, and argues that Dawe is "not entitled to engage in a

13  fishing expedition" with regard to CUSA's financial information.  CUSA ignores the fact that it

14  has put its financial records at issue by virtue of its myriad claims against Dawe, Loud and

15  Harkins.  The court finds these requests to be calculated toward discovering information bearing

16  on the claims and defenses in the consolidated lawsuits.  CUSA's boilerplate objections are

17  improper, and its privilege log is inadequate, as discussed above.

18          CUSA's objection that responding to these requests is overly burdensome is unavailing.

19  They assert this objection with respect to several requests, arguing that it will be too difficult to

20  locate certain documents because they are in boxes that are not well-indexed and are not easily

21  searchable.  The parties are ordered to meet and confer regarding a method that is mutually

22  agreeable for obtaining the discoverable information, and may consider solutions such as cost-

23  sharing or supervised review and/or copying by opposing counsel.  This ruling applies equally to

24  both parties and for the remainder of the litigation.

25          In accordance with the foregoing, Dawe's motion is granted as to these requests, and

26  CUSA is ordered to make available all responsive documents.  The parties are, of course, free to

arrange production to comply with the terms of their stipulated confidentiality agreement.  The court will give CUSA an opportunity to preserve true claims of privilege by providing opposing counsel with a privilege log that complies with Fed. R. Civ. P.  26(b)(5).  Failure to do so may result in a waiver of the asserted privilege.

**10.**  **Documents regarding CUSA/CCPOA Investigation of Dawe, Loud & Harkins (CCPOA Request Nos. 31, 52; CUSA Request Nos. 31, 52)**

These requests seek documents "reflecting communications by any CUSA representative to any other person or entity regarding [Dawe, Loud and Harkins] in relation to the claims at issue in the lawsuit," as well as documents reflecting investigation of these individuals at the behest of CUSA and CCPOA.  Such documents are indisputably relevant to Dawe's claims of defamation, wrongful termination, and to his defenses against the claims asserted by CUSA.

CUSA interposes a litany of boilerplate objections and unsupported assertions of privileges.  The court does not doubt that there may well be attorney-client privileged items or documents protected by the work product doctrine among the documents responsive to these requests.  However, none have been properly listed in an appropriate privilege log.  Further, the court finds the objections on the basis of "trade secrets" and "personnel files" to be less compelling, as these asserted protections are not specifically explained or otherwise connected to specifically identified documents.

CUSA has no right to withhold broad categories of documents based on an unsupported assertion that the document requests might encompass protected information.  The court orders production with regard to these requests, and to the extent any responsive documents are withheld on the basis of an asserted privilege, the documents must be identified in an adequate privilege log that complies with Fed. R. Civ. P. 26(b)(5).  The parties are, of course, free to work out a method of production consistent with the stipulated protective order.

////

////

20

1      **11.   Documents regarding Revocation of Dawe's Membership in CUSA
            (CCPOA Request Nos. 32-33; CUSA Request Nos. 32-33)**

2

3          These requests seek documents regarding CUSA's revocation of Dawe's membership in

4   CUSA.  Dawe argues that the revocation of his membership in CUSA, and CUSA's failure to

5   reimburse him therefor, is part and parcel of CUSA's "modus operandi" in "marginalizing and

6   excommunicating" him.  Again, he asserts that his discharge was a pretext to prevent his

7   imminent exposure of improprieties by CUSA and CCPOA officials.

8          While these requests may be somewhat attenuated from the legal claims and defenses

9   alleged in the pleadings, the CUSA defendants' response consists of the same boilerplate

10  objections and unsupported assertions of privilege that characterize their responses to nearly all

11  of these requests.  As with the other requests, notwithstanding Dawe's rather curious explanation

12  of relevance, these requests may lead to information regarding the reasons for Dawe's discharge

13  from CUSA, and as such, are discoverable.  Accordingly, Dawe's motion to compel as to these

14  requests is granted.  The same admonishments regarding the stipulated protective order and

15  privilege logs apply.

16     **12.   Documents regarding Dawe's Alleged Conversion of Property
            (CCPOA Request No. 34; CUSA Request No. 34)**

17

18         These requests seek documents evidencing the alleged conversion of CUSA property or

19  funds by Dawe.  CUSA's response to these requests states: "General objections.

20  Notwithstanding and without waiving said objections, the responding party will produce all non-

21  privileged, non-confidential documents responsive to this request."

22         This objection is wholly inadequate to state a grounds for withholding documents or to

23  properly assert a privilege.[3]  These requests are undeniably aimed at gathering information

24  related to CUSA's claims of conversion against Dawe, and as such, are relevant.  Accordingly,

25
        _____
26         [3]  *See Qualcomm Inc. v. Broadcom Corp.*, 2008 U.S. Dist. LEXIS 911 (S.D. Cal. 2008),
        as to the potentially disastrous consequences of responding to discovery requests in this manner.

1   Dawe's motion to compel as to these requests is granted.  The same admonishments regarding

2   the stipulated protective order and privilege logs apply.

3          **13.    Documents regarding CUSA Contracts with various persons (CCPOA Request No. 35; CUSA Request No. 35; Baumann Request No. 3; Baiardi Request No. 3)**

4

5          These requests seek documents relating to contracts between CUSA and a long list of

6   specifically identified individuals, all of whom are identified as witnesses either by CUSA or

7   Dawe.  Dawe claims that these documents will reveal who gained financially and professionally

8   from his removal, and will "disprove the notion that certain contracts between CUSA and

9   outside persons were unauthorized."  *See* "Further Joint Statement," Docket Entry no. 96, 20:19-

10  25.  He also states that these "documents also bear on the control that was wielded over CUSA

11  by CCPOA representatives and others."  *Id.*

12         The CUSA defendants object on the basis of vagueness and overbreadth, and make the

13  same boilerplate objections and unsupported assertions of privilege.  They also assert that Dawe

14  seeks this information for improper purposes, such as discovering CUSA's legislative agenda,

15  lobbying contacts, and other propriety information.

16         The requests are vague and overbroad in terms of the unspecified time period.  However,

17  at the hearing the parties agreed to modify and narrow these requests to pertain only to

18  documents from 1998 to present.  Again, the court finds unavailing Dawe's assertion that these

19  documents will "disprove the notion that certain contracts between CUSA and outside persons

20  were unauthorized."  CUSA alleges that Dawe and Loud entered into self-interested, undisclosed

21  contracts, not that either party lacked authority to bind CUSA.

22         Further, Dawe's assertion that these documents will show who stood to gain from his

23  removal seems rather far-fetched.  He offers no explanation of who these people are and how

24  they were involved in his allegedly wrongful termination.  Accordingly, the court denies without

25  prejudice Dawe's motion to compel as to these documents.

26  ////

22

1

2

### 14.   Documents regarding CUSA's Membership Lists (CCPOA Request No. 36; CUSA Request No. 36)

3

These requests seek documents evidencing CUSA's membership lists in July 2006, July

4   2007, and October 2006.  Dawe argues that these lists will rebut CUSA's claim that it has lost

5   membership as a result of actions by Dawe, Loud, and Harkins.

6

In response, the CUSA defendants assert, again, boilerplate objections and unsupported

7   assertions of privilege.  They also argue that the membership lists are protected by the members'

8   freedom of association and privacy rights.  Citing *NAACP v. Alabama*, 357 U.S. 415 (1963), they

9   argue "that compelled disclosure of affiliation with groups engaged in advocacy may constitute

10  . . . a restraint on freedom of association."  *Id.*, at 462.  Courts have held that "the association

11  itself may assert the right of its members and contributors to withhold their connection with the

12  association." *Int'l Union v. Nat'l Right to Work Legal Defense & Educ. Found., Inc.,* 192 U.S.

13  App. D.C. 23, 37 (D.C. Cir. 1978) (citing *NAACP*, 357 U.S. at 459-60).

14

CUSA does not convincingly argue, however, that disclosure of its membership will chill

15  its members' exercise of their associational freedoms.  Indeed, CUSA ignores, that *it* has put its

16  membership lists at issue by virtue of its claims against Dawe, Loud and Harkins.  CUSA cannot

17  fairly allege that these defendants stole its membership lists and diminished its membership

18  numbers without allowing defendants the opportunity to rebut those claims with evidence.

19  Accordingly, CUSA's objections on this basis are unavailing and Dawe's motion to compel as to

20  these requests is granted.  However, in light of the privacy interests at stake, the court orders that

21  documents responsive to these request not be disseminated beyond the confines of the litigation.

22  To that extent, CUSA's motion for a protective order limiting the manner of production is

23  granted in part.

24  ////

25  ////

26  ////

23

**15.   Documents regarding Individuals Who Escorted Loud and Dawe from the August 11, 2006 CUSA Board Meeting (CCPOA Request Nos. 37-38, CUSA Request No. 37-38)**

These requests seek documents regarding the identity of the officers who escorted Loud and Dawe from the August 11, 2006, board meeting.  Dawe asserts that "these documents are relevant to determining the identity of the referenced individuals, to determine the orders under which those persons were acting, and to determine what, if anything, those persons were told about why Dawe and Loud were being removed, all of which bears on the veracity of Defendants' claims in this matter and the pretextual reasons for Defendants' termination of Mr. Dawe's contract."  *See* "Further Joint Statement," Docket Entry no. 96, 21:4-10.

The CUSA defendants responded to the requests with the same boilerplate objections and unsupported claims of privilege.  In particular, they object that the "identity of law enforcement officers" are protected under various state laws.  Again, the court admonishes the CUSA defendants regarding the applicability of the Federal Rules of Civil Procedure in federal court, even in diversity cases such as this.  *See* Fed. R. Civ. P. 1.  Dawe need not bring a motion under Cal. Evid. Code §§ 1040, *et seq.*, to obtain this information in a federal lawsuit.

That said, whether or not this information is likely to lead to admissible evidence bearing on the claims and defenses in either lawsuit is questionable.  Indeed, in his "Statement of Relevance," Dawe indicates he seeks this information in order to prepare a possible cause of action against the officer who escorted him out of the meeting.  This reveals that Dawe seeks the information, in part, for preparation of a completely separate lawsuit, rather than for defending or prosecuting the present one.

However, to the extent the officers have some information regarding the reasons for Dawe's discharge, that information is discoverable.  Accordingly, the court grants Dawe's motion to compel as to these requests, but orders that dissemination of the information be limited to the confines of this litigation.

////

1
2
3

**16.    Documents regarding Communications Involving Martin Aroian, Vicki Berg, Joseph Baumann, James Baiardi, MCOFU, SCCOA, and AOCE (CCPOA Nos. 59-60, 64-66; CUSA Nos. 59-60, 64-66; Baumann Nos. 4-6; Baiardi Nos. 4-5)**

4    These requests seek documents "evidencing communications" between CUSA and

5    various individuals.  Two individuals, Martin Arion and Vicki Berg, are identified as witnesses

6    in CUSA's initial disclosures, and thus, must have some information relating to the claims and

7    defenses in either lawsuit.  Accordingly, the court grants Dawe's motion as to request nos. 59

8    and 60.  The same admonitions regarding the stipulated protective order and privilege log apply.

9    Request nos. 64 through 66 (and nos. 4-6 as to Baumann and Baiardi), seek information

10   regarding communications between various CUSA and CCPOA officials and members, and are

11   purportedly aimed at seeking information relevant to the defamation claims asserted by Dawe.

12   Dawe's explanation of relevance includes a rather detailed account of the inner politics of

13   CUSA, CCPOA, and various other member organizations.

14   The CUSA defendants make the same boilerplate objections and assertions of privilege

15   and declare that "no documents will be produced at this time."  Again, these defendants are

16   admonished that objections and assertions of privilege in this manner are improper.  Moreover,

17   the requested documents appear to have some bearing on Dawe's defamation claims and are

18   therefore discoverable.  Dawe's motion to compel as to request nos. 64 through 66 is granted and

19   the same admonitions regarding the stipulated protective order and privilege log apply.

20
21

**17.    Documents regarding Defendants' Initial Disclosures and to Support/Deny Claims:(CCPOA Request No. 68; CUSA Request Nos. 53, 68, 69; Baumann Request No. 7; Baiardi Request No. 6)**

22   These requests seek documents identified in the CUSA defendants' initial disclosures, as

23   well as documents supporting the claims and defenses in the consolidated lawsuits.  While such

24   documents are undoubtedly relevant, Dawe's requests are overly broad.  Rule 34(b)(1)(A)

25   requires a request to "describe with reasonable particularity each item or category of items to be

26   inspected."  Fed. R. Civ. P. 34(b)(1)(A).  The requests at issue fail to do so.  Accordingly,

1  Dawe's motion to compel as to these requests is denied without prejudice.

2  **B.  <u>Fournier Deposition</u>**

3  The remaining issue is CUSA's previously pending motion for a protective order to limit

4  the scope of the deposition of non-party, Steven Fournier, and CUSA's subsequent *ex parte*

5  motion to seal the deposition transcript.  Both motions are denied.

6  Regrettably, the circumstances surrounding this deposition indicate both the acrimony

7  between the parties, and its infection of the discovery process.  Dawe noticed the deposition of

8  Fournier, a non-party witness, to occur on January 8, 2008.  CUSA strenuously objected to the

9  deposition, and sought to limit the scope of subjects inquired to, arguing that the topics Fournier

10  would discuss were confidential or privileged.  Counsel for CUSA further asserted that they

11  represented Fournier, and that the deposition could not occur without them.  Fournier denies,

12  strenuously, that he is represented by CUSA's counsel.  He so testified during his deposition,

13  swearing that he is no longer officially associated with either CUSA or CCPOA.

14  Although CUSA filed a motion for a protective order to prevent the deposition from

15  occurring, it noticed the motion for hearing on January 30, several weeks after the deposition

16  was to occur.  Surprisingly, Dawe's counsel and Harkins' counsel proceeded with the deposition

17  without having the dispute resolved.  While the pending motion did not stay the deposition or

18  automatically make it inappropriate, *see* Rutter Practice Guide, *Fed. Civ. Pro. Before Trial*,

19  ¶ 11:1166 (citing *Poche Mines Consol., Inc. v. Doman*, 333 F.2d 257, 269 (9th Cir. 1964)),

20  counsel knew that there was a pending motion to preclude the deposition at the time it occurred.

21  Moreover, counsel not only proceeded with the deposition over the objections of CUSA's

22  counsel, they did so outside of their presence.  While the court does not approve of the manner in

23  which the deposition occurred, those circumstances do not, in and of themselves, justify sealing

24  the deposition transcript.

25  Generally, two standards govern motions to seal documents.  *Pintos v. Pacific Creditors*

26  *Ass'n*, 504 F.3d 792, 801 (9th Cir. 2007).  "First, a compelling reasons standard applies to most

26

1 judicial records.  This standard derives from the common law right to inspect and copy public

2 records and documents, including judicial records and documents." *Id.* (internal citations and

3 quotations omitted).  "[A] party seeking to seal judicial records must show that compelling

4 reasons supported by specific factual findings outweigh the general history of access and the

5 public policies favoring disclosure." *Id.* (internal citations and quotations omitted).

6 However, "private materials unearthed during discovery are not part of the judicial

7 record. *Id.* (quoting *Kamakana v. City and County of Honolulu*, 447 F.3d 1172, 1180 (9th Cir.

8 2006)).  "A different standard applies to that category from Rule 26(c) of the Federal Rules of

9 Civil Procedure, which provides that a trial court may grant a protective order 'which justice

10 requires to protect a party or person from annoyance, embarrassment, oppression, or undue

11 burden or expense.'" *Pintos*, 504 F.3d at 801 (quoting Fed. R. Civ. P. 26(c)).  "The relevant

12 standard for purposes of Rule 26(c) is whether 'good cause' exists to protect the information

13 from being disclosed to the public by balancing the needs for discovery against the need for

14 confidentiality." *Id.* (internal citations and quotations omitted).

15 Here, it is not entirely clear whether the information discussed during the Fournier

16 deposition is wholly public or private.  The court has reviewed the testimony, and notes that it

17 does indeed contain personal information that is potentially embarrassing to the individuals

18 discussed therein.  However, that alone does not constitute good cause or compelling reasons for

19 sealing the entire transcript.

20 Much of the information, though likely inadmissable and of dubious relevance to this

21 case, relates, if at all, to Dawe's theory regarding his wrongful termination.  As discussed above,

22 the court has determined that a broad range of information supporting that theory is discoverable,

23 including some of the Fournier testimony.  Significantly, many of the allegations contained in

24 the Fournier deposition have already been rehashed (by both sides) in the public papers filed in

25 connection with the pending motions.  In light of this, much of the "private" information has

26 already become "public."  Under either standard concerning public or private information, the

27

CUSA defendants have failed to meet their burden to justify a sealing order.  The need of discovery as to some of the testimony outweighs the need for confidentiality.

However, in light of the salacious nature of much of the testimony, and the concerns expressed (and certified) by CUSA's counsel that some this information may be used for improper purposes, CUSA's request for a protective order is granted and the parties shall limit dissemination of the deposition transcript to the confines of the litigation.  Accordingly, the motion to seal is denied.

**III.  CONCLUSION**

In accordance with the foregoing, IT IS ORDERED:

1.  As set forth above, Brian Dawe's motion to compel is granted in part, and denied in part;

2.  As set forth above, the CUSA defendants' motion for a protective order is granted in part, and denied in part;

3.  The CUSA defendants' motion to seal the deposition transcript of Steve Fournier is denied.  However, the parties shall limit their dissemination of the transcript to the confines of the litigation;

4.  All requests for sanctions are denied, s*ee* Fed. R. Civ. P. 37(a)(5)(C); and,

5.  Counsel are cautioned that should they bring a discovery motion similar to the ones disposed of here, requiring instruction on each and every propounded discovery item, sanctions may be imposed for failure to meet and confer in good faith to narrow the scope of the disputes in accordance with the federal and local rules.

DATED:  April 23, 2008.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE