+

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

BRIAN DAWE; FLAT IRON
MOUNTAIN ASSOCIATES, LLC,
formerly known as FLAT
IRON MOUNTAIN ASSOCIATES,
a Partnership,

                               NO. CIV. S-07-1790 LKK/EFB

       Plaintiffs,

     v.

                               O R D E R

CORRECTIONS USA, a California
Corporation; CALIFORNIA
CORRECTIONAL PEACE OFFICERS'
ASSOCIATION, a California
Corporation; JAMES BAIARDI,
an individual; DONALD JOSEPH
BAUMANN, an individual,

       Defendants.
_____/
AND CONSOLIDATED ACTIONS &
RELATED COUNTERCLAIMS
_____/

    Plaintiff Brian Dawe and his company, plaintiff Flat Iron

Mountain Associates, have brought suit against Corrections USA,

the California Peace Officers Association, and some of their

employees, Board members, and chairman. Plaintiff alleges breach

of contract and related claims, defamation, and interference with

1

prospective contractual relations, seeking damages, declaratory relief, and attorneys' fees. Pending before the court is defendants' motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) and motion to strike under California's Anti-SLAPP statute. The court resolves the motions on the papers and after oral argument.

## I. BACKGROUND

### A.  Allegations of First Amended Complaint[1]

Plaintiff Dawe is a resident of Wyoming and plaintiff Flat Iron Mountain Associates ("Flat Iron") is a limited liability company under the laws of the State of Wyoming, formerly a partnership under Wyoming law. Defendants Corrections USA ("CUSA") and the California Peace Officers Association ("CCPOA") are California corporations. Defendant James Baiardi is the Chairman of CUSA and a resident of Florida. Defendant Donald Baumann is a Board Member of CUSA and an employee of CCPOA and a resident of California.

---

[1]The allegations described herein are taken from the First Amended Complaint (Doc. No. 134) and exhibits references therein. See Marder v. Lopez, 450 F.3d 445, 448 (9th Cir. 2006) (in resolving a motion to dismiss, court may consider evidence on which the complaint "necessarily relies" provided that no party questions its authenticity); United States v. Richie, 342 F.3d 903, 908 (9th Cir. 2003). The exhibits referenced are not attached to that complaint, but were attached to the initial complaint filed February 21, 2007 (Doc. No. 2). The allegations are taken as true for the purposes of resolution of the motion to dismiss only.

Both parties request the court take judicial notice of prior filings in this and related cases. It is proper for the court to take judicial notice of these and they have been supplied by the parties. See Fed. R. Evid. 201; Holder v. Holder, 305 F.3d 854, 866 (9th Cir. 2002). These requests are granted.

According to plaintiff, on July 1, 2006, Flat Iron and CUSA entered into an agreement whereby Flat Iron was to serve as CUSA's Executive Director and Member Benefits Administrator. Compl. Ex. B (Agreement) at 1. CUSA was identified as "a non-profit business with its principle office located at . . . Thayne, Wyoming." Id. The contract was executed in Rhode Island. Id. at 2. It was signed by "Richard Loud, President CUSA" and "Brian Dawe, Flat Iron Mountain Associates." Id.

Throughout the agreement, Flat Iron was identified as a consultant. Id. at 1-2. The agreement concludes with the following provision, "Status of Consultant. This contract calls for the performance of the services of consultant as an independent contractor and consultant will not be considered an employee of CUSA for any purpose." Id. at 2. The agreement was for a fixed term from July 1, 2006 to June 30, 2009, but could be terminated by any party with thirty days notice. Id. at 1. If CUSA terminated the contract, Flat Iron would be paid one year's compensation, identified as $111,000. Id.

Plaintiffs have also attached as an exhibit to the complaint a letter dated August 11, 2006 and addressed to plaintiff Dawe and signed by "Vito Dagnello, Chair, CUSA." Compl. Ex. C. It states, "Please be advised that the Board of Directors of CUSA took action today . . . to place you on suspension without pay pending further investigation and appropriate action of the Board of Directors of CUSA." Id. at 1. On September 7, 2006, the Board of Directors of CUSA voted to continue Dawe's suspension. Compl. Ex. D. On October

3

17, 2006, the Interim Administrator of CUSA sent a letter to Marilyn Dawe stating that the Board of Directors had resolved to terminate "any and all contracts entered into by Mr. Dawe, Mr. Loud, and/or Mr. Harkins." Compl. Ex. E. The letter continued, "It is my understanding that Flat Iron Mountain, which you own, may have entered into a contract with one or more of these individuals. Please understand that the Board of Directors of CUSA is terminating your contract immediately." Id.

Plaintiff alleges that at the time of filing of his complaint, he had not been paid per the Agreement nor had Flat Iron received any payments from CUSA. He seeks a declaratory judgment as to whether the Agreement was an employment contract. He also asserts causes of action against CUSA for breach of an independent contract and breach of an employment contract, in the alternative, and breach of the covenant of good faith and fair dealing under tort law and contract law.

Plaintiff Dawe also asserts causes of action against all of the defendants for defamation. According to the complaint, Dawe has "maintained a well known and respected reputation" in the "correctional personnel business for over 24 years." FAC ¶ 46. He alleges upon information and belief, the defendants have "commented, in writing and orally, to members of the corrections profession that the Plaintiff Dawe has committed illegal and unethical acts." Id. ¶ 47. By way of example, he has attached to his complaint an e-mail dated January 3, 2007 that contained a letter by defendant Baiardi, who was Chairman of CUSA. The e-mail

4

was allegedly sent from an address belonging to the CCPOA and used by defendant Baumann. The letter is addressed to "Fellow Correctional Officer." Compl. Ex. F (Jan. 3, 2007 e-mail). The letter makes several comments about plaintiff Dawe, including that he was "removed from Corrections U.S.A. for mismanaging the organization" and that "[w]hile private prison companies made major gains across the country . . . [Dawe] was driving across country, on road trip after road trip, falling off the wagon and padding his pocket." Id. at 1. The e-mail also stated that Dawe approved the expenses of another CUSA staff member, Richard Loud, while Loud "spent your hard earned dues money on purchasing a time share in Florida for personal use," going to casinos, buying a "top of the line" car, and flying to and from Florida. Id. The letter continued, "You will be pleased to know that CUSA's new leadership consists of active correctional officers who do not receive a CUSA paycheck." Id. It advised that Dawe and Loud "will ask you for money to support their new organization. . . . Do not let your dues money be wasted on ACO and to support Brian and Richard's lifestyle." Id. at 2.

According to Dawe, these comments have hurt his reputation and caused him emotional and financial harm. As such, he alleges, they constituted defamation. He alleges that comments such as the January 3, 2007 letter demonstrated efforts by all defendants "to ruin Plaintiff's contractual and economic relationship with CUSA, and to ruin Plaintiff's opportunity to start up a new business in the corrections industry," thereby constituting intentional

interference with prospective contractual relations. FAC ¶ 65.

**B.    Facts Relevant to the Motion to Strike**

The contents of the January 3, 2007 e-mail are relevant to defendants' motion to strike, as defendants assert that they constituted protected speech under California's Anti-SLAPP statute. Defendants have supplemented their motion with several items of evidence. First, defendant Baumann has declared that CCPOA is a "large union representing public employee correctional officers in the State of California" and CUSA is a mutual benefit corporation that "is essentially a national umbrella advocacy group for corrections." Declaration of Donald Baumann In Support of Defs.' Mot. to Strike ("Baumann Decl.") ¶¶ 2, 6-7. According to Baumann, in June 2006, CUSA had 5,000 individual members and represented an additional 80,000 members through organizational memberships. Id. ¶ 6. Presently, it has approximately 2,700 individual members. Declaration of Nina Ashford in Support of Defs.' Mot. to Strike ("Ashford Decl.") ¶ 10.

Baumann has declared that in early 2006, plaintiff Dawe was the Director of Operations of CUSA and its Treasurer and was a member of its Board of Directors. Baumann Decl. ¶ 11. He had a prior consulting agreement with CUSA that expired on June 30, 2006. Id. On June 16, 2006, the Agreement described above was entered. In July 2006, Dawe was removed from the Board of Directors and the following month he was suspended as Director of Operations. Id. ¶ 13. In September 2006, he was removed from all positions at CUSA, purportedly for "breach of fiduciary duties to the corporation,

self-dealing, failing to turn over corporate records . . . and misappropriation." Id. ¶ 14. That month, CUSA's Directors filed a writ of mandamus for the records. Id. ¶ 16; see also Declaration of James Baiardi In Support of Defs.' Mot. to Strike ("Baiardi Decl.") ¶¶ 11-16.

Defendants have also tendered the declaration of Nina Ashford, CUSA's Administrator, in which she has declared that since September 2006, she has received complaints from members that they were being solicited for membership by the American Correction Officer entity. Ashford Decl. ¶ 7. According to Ashford, American Correction Officer is a d/b/a of Dawe and Flat Iron and "are now rival correctional officer advocacy organizations to CUSA." Id. Ashford has also declared that since September 2006, CUSA members have cancelled their membership "due to the activities of Plaintiff Brian Dawe." Id. ¶ 8.

**C.   Procedural History**

This action commenced on January 5, 2007, when Dawe "individually and d/b/a Flat Iron Mountain Associates" filed suit against the defendants in Wyoming state court. The suit was removed to federal district court, District of Wyoming, on February 21, 2007. On May 7, 2007, defendant CUSA answered, asserting counterclaims based on California law.

Meanwhile, on January 25, 2007, CUSA and Mike Jimenez filed suit against Dawe and other defendants in Sacramento County Superior Court. Dawe removed the suit to this court on April 4, 2007. There is currently another action pending in Sacramento

County Superior Court between Dawe and CUSA. It was brought in September 2006 and in it CUSA seeks a writ of mandamus for property purportedly held by Dawe.

On July 19, 2007, the parties in the Wyoming action (the instant suit) stipulated to transfer of the action to this district. The stipulation provides that it was made "pursuant to 28 U.S.C. § 1404(a)." Stipulated Mot. to Transfer Venue, Doc. No. 22, at 1, 5. In it, the parties asserted that they all had counsel in Sacramento and had litigated many issues relevant to the instant suit there. The stipulated motion further provided, "all parties to all actions are subject to personal jurisdiction in the Eastern District; whereas, in the immediate matter at least one Defendant disputes personal jurisdiction. . . ." Id. at 4. Moreover, most of the parties and witnesses were available in the Eastern District of California. Id. at 4-5, 7-8.

The parties contended that transfer was favored due to the convenience of the witnesses and in the interests of justice. As to the latter, the stipulation provided

> Many of the alleged breaches did not occur in Wyoming, but rather occurred by letter and e-mail which allegedly made have been sent to Wyoming, in one form or another. The Breach of Contract causes of action, on the other hand, do allege violations of Wyoming contract and employment law; however, the purported contract was allegedly executed in Rhode Island and was purportedly made with a non-profit corporation organized under the laws of California. . . . The immediate forum is not Plaintiff's forum of choice; rather, had Plaintiff known that diversity jurisdiction was available in the Eastern District of California he would have brought the action there.

Id. at 8. The stipulation further provided that although many of

plaintiffs' claims relied on Wyoming law, "as this matter involves a former officer of a California Corporation . . . and a non-profit corporation organized under California law the litigation may require greater application of California statute and common law. Consequently, the parties assert that the applicable law weighs in favor of transfer of venue." Id. at 8-9.

The Wyoming district court transferred the case to this court on July 26, 2007. In the transfer order, the court found that a related action was pending in this district and that all the parties, their attorneys and necessary witnesses reside in California or are subject to personal jurisdiction here. After the transfer, the instant suit was consolidated with the January 25, 2007 suit brought by CUSA and Jimenez. See Case No. 2:07-cv-00653-LKK-EFB.

## II. STANDARD FOR DISMISSAL PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)

In order to survive a motion to dismiss for failure to state a claim, plaintiffs must allege "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 569 (2007). While a complaint need not plead "detailed factual allegations," the factual allegations it does include "must be enough to raise a right to relief above the speculative level." Id. at 555.

The Supreme Court recently held that Federal Rule of Civil Procedure 8(a)(2) requires a "showing" that the plaintiff is entitled to relief, "rather than a blanket assertion" of

9

entitlement to relief. Id. at 555 n.3. Though such assertions may provide a defendant with the requisite "fair notice" of the nature of a plaintiff's claim, the Court opined that only factual allegations can clarify the "grounds" on which that claim rests. Id. "The pleading must contain something more. . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action." Id. at 555, quoting 5 Wright & Miller, Federal Practice and Procedure, § 1216, pp. 235-36 (3d ed. 2004).[2]

On a motion to dismiss, the allegations of the complaint must be accepted as true. See Cruz v. Beto, 405 U.S. 319, 322 (1972). The court is bound to give the plaintiff the benefit of every reasonable inference to be drawn from the "well-pleaded" allegations of the complaint. See Retail Clerks Int'l Ass'n v. Schermerhorn, 373 U.S. 746, 753 n.6 (1963). In general, the complaint is construed favorably to the pleader. See Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), overruled on other grounds by Harlow v. Fitzgerald, 457 U.S. 800 (1982). Nevertheless, the court does not accept as true unreasonable inferences or conclusory legal allegations cast in the form of factual allegations. W. Mining Council v. Watt, 643 F.2d 618, 624 (9th Cir. 1981).

### III. ANALYSIS

Defendants have moved to dismiss all of plaintiffs' causes of

_____

[2] The holding in Twombly explicitly abrogates the well established holding in Conley v. Gibson that, "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." 355 U.S. 41, 45-46 (1957); Twombly, 550 U.S. at 560.

action as failing to state claims upon which relief may be granted under Federal Rule of Civil Procedure 12(b)(6). Defendants also move to strike plaintiffs' claims by virtue of the California Anti-SLAPP statute. The court considers each motion in turn.

**A.    Choice of Law**

Before turning to defendants' arguments for dismissal as to each of plaintiffs' causes of action, the court first must consider which state's laws apply to the claims. Defendants assert that the court should apply California law, while plaintiffs contend that it should apply Wyoming substantive law.

A federal court sitting in diversity jurisdiction typically applies the substantive law of the forum state. Erie R.R. Co. v. Tompkins, 304 U.S. 64 (1938). When an action is transferred from one district to another under 28 U.S.C. § 1404(a), however, the transferee court applies the laws of the forum in which the action was originally filed. Van Dusen v. Barrack, 376 U.S. 612, 637-39 (1964). "A change in venue under § 1404(a) generally should be, with respect to state law, but a change in courtrooms." Id. at 639.

Here, plaintiffs' action was transferred to this court pursuant to § 1404(a), which permits transfer for the convenience of the parties and witnesses and in the interest of justice to another district where the action could have been brought. Although the District of Wyoming court did not state expressly under which statute it was ordering the transfer, the court's order granted the parties' stipulation to transfer under § 1404(a). Moreover, the court's order included findings describing the convenience of

parties and witnesses as justifying the transfer and also found
that this court had jurisdiction over all of the parties. These
findings echo the elements of § 1404(a), rather than the elements
of § 1406, which permit transfer of an action that has been filed
in the wrong district. As such, the Van Dusen rule applies.

Plaintiffs presume that under Van Dusen, the court is required
to apply the substantive law relative to each of their claims of
the state in which the action was originally filed. They are in
error. Instead, Van Dusen requires that the court apply the choice
of law rules of the original forum in determining which state's
substantive law governs plaintiffs' claims. Ferens v. John Deere
Co., 494 U.S. 516, 524-25 (1990). Here, because plaintiffs' action
was originally filed in a Wyoming court and then transferred under
28 U.S.C. § 1404(a), the court applies Wyoming's choice of law
rule.

Wyoming has adopted the choice of law rule set forth in the
Restatement (Second) of Conflict of Laws. Act I, LLC v. Davis, 60
P.3d 145 (Wyo. 2002). Under Wyoming law, the choice of law analysis
proceeds in two parts. Id. at 149. First it considers, on an issue-
by-issue basis, whether there is an actual conflict between the
laws of the interested states. Id., citing 15A Corpus Juris
Secundum Conflict of Laws § 27 (2002). If there is no conflict, the
court applies the law of the forum state. Id.

If there is a conflict, the court considers which state has
the most significant contacts with that issue, using the Second
Restatement's factors as guidance. Act I, 60 P.3d at 149, citing

12

Restatement (Second) of Conflict of Laws §§ 6, 142, 188. These factors include the intent of the respective legislatures, the needs of interstate systems, the relevant policies of interested states, protection of justified expectations, the policies underlying a particular field of law, and predictability and uniformity of result. Restatement (Second) of Conflict of Laws § 6 (1971). In tort cases, the court should consider where the injury occurred, where the conduct causing the injury occurred, the domicile of the parties, and the place were the parties' business relationship is centered. Id. § 145(2). In contract cases, the court should consider the places of contracting, of negotiation and of performance, the location of the subject matter of the contract, and the domicile of the parties. Id. § 188(2).

Here, the parties agree that as to most of plaintiffs' causes of action, either California or Wyoming law applies.[3] The only differences in those states' laws that the parties have identified relative to plaintiffs' claims are the following:

1.   Wyoming, unlike California, permits a claim for violation of the duty of good faith and fair dealing be brought in tort even if it is based only on a contractual relationship between the parties.

2.   California has enacted the "Anti-SLAPP (Strategic Lawsuit Against Public Participation)" statute that limits litigation

---

[3]Although defendant Baiardi is alleged to be currently a resident of Florida, there is no indication that Florida otherwise has any interest in resolution of the suit.

1    brought to discourage a defendant from exercising his or her
2    rights to free speech and petition of redress. Wyoming does
3    not have such a statute.

4   For the remaining causes of action, because there is no conflict
5   between the laws of California and Wyoming the court applies the
6   law of the forum state. <u>Act I</u>, 60 P.3d at 149.  After transfer,
7   this is the "forum" state.  Moreover, because the court and counsel
8   for all parties are based in California and are therefore much more
9   familiar with California law than Wyoming law, the court finds it
10  expeditious and appropriate to apply California law to those causes
11  of action for which there is no conflict between states' laws.

12       The court turns now to those claims for which there is a
13  conflict between Wyoming and California law.

14  **1.   Tort Liability for Breach of Contractual Duty of Good**
15  **     Faith and Fair Dealing**

16       The parties do not dispute that under California law, a
17  defendant may only be liable under tort for breach of a duty that
18  arises under the principles of tort law, not simply a contractual
19  relationship. <u>See</u> <u>Applied Equipment Corp. v. Litton Saudi Arabia</u>
20  <u>Ltd.</u>, 7 Cal. 4th 503, 514-15 (1994). Under Wyoming common law, in
21  contrast, a plaintiff may recover tort damages for breach of the
22  duty of good faith and fair dealing arising from an employment
23  contract. <u>Wilder v. Code Country Chamber of Commerce</u>, 868 P.2d 211,
24  220 (Wyo. 1994). Thus a conflict exists.

25       Wyoming conflict of law rule direct the court to consideration
26  of the factors provided in the Second Restatement of Conflict of

Laws to determine which state's laws should apply. See <u>Act I</u>, 60 P.3d at 149, citing Restatement (Second) of Conflict of Laws § 145. Section 145 of the Restatement instructs the court that the "rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties," based on the following factors: the place where the injury occurred, the place where the conduct causing the injury occurred, the domicile of the parties, and the place where the parties' relationship is "centered."

Here, plaintiff Dawe alleges in his fourth cause of action that the Agreement between Flat Iron and CUSA constituted an employment contract for Dawe and that CUSA breached the duty of good faith and fair dealing by terminating the contract "in an effort to avoid further obligations to Plaintiffs under [the] Agreement," by failing to pay plaintiff, and by otherwise failing to perform under the Agreement in good faith. FAC ¶¶ 39-40.

In applying the factors set forth in the Restatement, it appears that California has a more significant relationship to the issue raised in this cause of action. Only the first factor weighs in favor of application of Wyoming law. Dawe is a Wyoming resident and therefore the effects of defendant's purported misconduct of failing to pay Dawe and otherwise perform under the contract would be felt in Wyoming. Therefore, the location of the injury can fairly be said to be Wyoming.

The remaining factors, however, favor application of

15

California law. Defendant CUSA is a California corporation and its allegedly wrongful conduct occurred in California. Moreover, the parties' relationship is "centered" in California, as the stated purpose of the Agreement was for Flat Iron to provide services to CUSA, a California corporation.

Finally, the court considers generally each state's interest in application of its own laws to the issue. In Wyoming, the state supreme court has permitted recovery in tort for breach of the duty of good faith and fair dealing for "egregious conduct" and "serves to balance the inherently unequal relationship between an employer and an employee." Wilder, 868 P.2d at 220-21. It emphasized that the duty arose in "rare and exceptional cases" of a special relationship that "is not established merely by the employer-employee relationship." Id. at 221 (boldface and italics omitted). Instead, tort recovery was only allowed upon a showing that a "special relationship of trust and reliance" existed between the plaintiff employee and the defendant employer. Id.

In light of the exceptional and narrow application of its rule, it appears that Wyoming does not manifest a particularly compelling interest in permitting employees to recover in tort for breach of the covenant of good faith and fair dealing, particularly where the employee plaintiff could recover under contract law principles for the same conduct. This taken with the other factors lead the court to conclude that application of California's substantive law regarding plaintiff's fourth cause of action is appropriate.

## 2. Relevance of California's Anti-SLAPP Statute

Plaintiffs' sixth through ninth causes of action, for defamation and intentional interference with prospective contractual relations, are based on alleged unlawful conduct in the defendants' involvement in sending the January 3, 2007 e-mail. Defendants contend that the e-mail constituted constitutional conduct protected under the Anti-SLAPP statute.[4] As stated above, neither party disputes that Wyoming does not have an Anti-SLAPP statute or its equivalent.

The court again considers the factors in § 145 of the Second Restatement to determine which state has a great interest in plaintiffs' possible recovery in tort on these causes of action. As described above, plaintiffs were both domiciled in Wyoming and most of the defendants were domiciled in California. The e-mail directs readers to contact CUSA in California for more information about the e-mail's contents. Neither party has provided the court

---

[4]Defendants also contend that the Anti-SLAPP statute provides a basis for striking the complaint in its entirety. That position does not appear supported. The relevant portion of the Anti-SLAPP statute provides,

> A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States or California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim.

Cal. Code Civ. Proc. § 425.16(b)(1). Plainly, the statute only applies to "cause[s] of action" and "claim[s]," and therefore is only relevant for those causes of action premised on allegations regarding the January 3, 2007 e-mail, which are only plaintiffs' sixth through ninth causes of action.

with information about in what states the e-mail was published, nor is this alleged in plaintiffs' complaint. Although plaintiff Dawe has alleged that defendants' misconduct, through the e-mail, has injured him financially and hurt his opportunity to start a new business, it is not alleged where this business would be domiciled or operate.[5] Similarly, although plaintiffs allege that defendants' conduct interfered with their perspective contractual relationships, the only such relationship they have identified in their complaint is that with CUSA. Taken together, the facts presently before the court suggest that California has a significant relationship in adjudicating plaintiffs' sixth through ninth causes of action, though Wyoming's interest, as the site of the likely injury to plaintiffs, is significant as well.

Through enacting the Anti-SLAPP statute, however, California has indicated a stronger interest than Wyoming in adjudication of certain defamation and other claims, when they are brought against defendants who engage in Constitutionally-protected activity. The California legislature has identified this as an interest it seeks to advance, while the Wyoming legislature has not. This suggests application of California law to these claims, specifically as to the issue of whether the claims may be struck if they are held to violate California's Anti-SLAPP statute. See Act I, 60 P.3d at 149 (court applies the substantive law of the state with the most

---

[5]The e-mail refers to a business or organization named "ACO" although it is not clear from the e-mail itself whether this is a business venture operated by plaintiff Dawe and, if so, where it operates.

significant connection or interest in a particular issue of a claim).

**B.    Motion to Dismiss**

Having established which state's laws apply to the plaintiffs' causes of action, the court turns to defendants' specific arguments that plaintiffs' claims must be dismissed under Federal Rule of Civil Procedure 12(b)(6).

**1.    Causes of Action One Through Five**

Plaintiffs' first through fifth causes of action are based on the Agreement between Flat Iron and CUSA. In plaintiffs' first cause of action, they seek declaratory relief on the question of whether the contract is an employment contract. In their second and third causes of action, they assert breach of contract, pled in the alternative if the contract is an employment contract or if Flat Iron is an independent contractor. In their fourth and fifth causes of action, they allege that defendant CUSA breached the covenant of good faith and fair dealing.

In moving to dismiss all of these claims, defendants argue that the contract is unenforceable. As plaintiffs have alleged in the complaint, CUSA's Standard Operating Procedures require that the Executive Director be an individual. <u>See</u> Compl. ¶ 27. As such, defendants argue, the Agreement constituted an *ultra vires* act by Richard Loud and Dawe in that the Agreement purported to establish Flat Iron as the CUSA Executive Director. Defendants also argue that the contract is "unlawful [and] void" under California law because it derived from corporate self-dealing that is against the

public policy of California. Moreover, defendants argue, it was never disclosed, authorized or ratified by the CUSA Board of Directors and therefore has no legal effect.

Defendants' arguments are not well-taken. At the pleading stage, a plaintiff need only plead facts that, if true, would entitle him to relief. <u>Twombly</u>, 550 U.S. at 569. The plaintiff need not anticipate affirmative defenses and plead that they are not applicable to his claim. <u>See</u>, <u>e.g.</u>, <u>Jones v. Bock</u>, 549 U.S. 199, 215-16 (2007). In some circumstances, a cause of action may be dismissed upon consideration of an affirmative defense, but only where the affirmative defense's applicability to the cause of action is apparent on the face of the complaint. <u>See</u> <u>Guam Investment Co. v. Central Building, Inc.</u>, 288 F.2d 19, 24 (9th Cir. 1961); <u>see also</u> <u>In re. Colonial Mortgage Bankers Corp.</u>, 324 F.3d 12, 16 (1st Cir. 2003); <u>Pani v. Empire Blue Cross Blue Shield</u>, 152 F.3d 67, 74 (2d Cir. 1998). Where the movant seeks that the court resolve the motion to dismiss based on evidence extrinsic to the complaint, the court may treat the motion as a motion for summary judgment and permit the parties to present further evidence on the issue. <u>See</u> <u>Guam Investment</u>, 288 F.2d at 24.

Here, that approach does not seem appropriate. Defendants' argument that the Agreement could not have made Flat Iron the Executive Director of CUSA because doing so would have violated CUSA's Standard Operating Procedures may render the contract an *ultra viries* act, but it may, as plaintiffs contend, be evidence that the Agreement was intended to set Dawe as the Executive

Director and thus is best understood as an employment contract. Moreover, the issues of whether the contract was authorized by the CUSA Board or resulted from actions that are against public policy are questions best resolved after the plaintiffs have had the opportunity to complete discovery. Accordingly, the court declines to treat defendants' motion as a motion for summary judgment and therefore denies the motion to the extent that it asserts affirmative defenses regarding the enforceability of the agreement.

As to plaintiffs' first cause of action for declaratory relief on the question of whether the Agreement is an employment contract, defendants argue that declaratory relief is not appropriate because the meaning of the Agreement is plain on its face. Under California law, a contract is to be interpreted according to the plain language of its terms, so long as the language is not ambiguous. Cal. Civil Code § 1638. Parol evidence of the parties' intent may be considered where the meaning of the contract is ambiguous, where the contract's terms may be supplemented by the course of dealing or course of performance, or to establish the existence of illegality, fraud or mistake.[6] Cal. Code Civ. Proc. § 1856.

Here, plaintiffs contend that while the language of the contract was unambiguous as to its intent to create a consultant, not employment, relationship, other evidence indicates that an

---

[6]Wyoming's law is substantially similar on the use of extrinsic evidence to interpret a contract. Belden v. Thorkildsen, 156 P.3d 320, 324 (Wyo. 2007); Burk v. Burzynski, 672 P.2d 419, 423 (Wyo. 1983).

employment relationship was created, such as the letter suspending Dawe without pay and the Standard Operating Procedure of CUSA. The court agrees that the Agreement is unambiguous in this regard. See Alling v. Universal Manufacturing Corp., 5 Cal. App. 4th 1412, 1434 (1992) (whether a contract is ambiguous is a question of law for the court); see also Cal. Civ. Proc. Code § 1856(d). If ambiguous, extrinsic evidence may be admissible, and thus, there are circumstances under which plaintiffs' parol evidence would be admissible. Therefore, defendants' motion must be denied.

Next, defendants argue that Dawe's claim for breach of employment contract must fail because he "has not alleged exhaustion of his administrative remedies, nor has he alleged the receipt of a right to sue letter." See Defs.' Mot. to Dismiss at 9. Defendants have directed the court to no authority that either of these are prerequisites under either California or Wyoming law to plaintiff Dawe's bringing this cause of action and the court has been unable to find any such authority. Accordingly, defendants' motion is denied in this regard.

As to plaintiffs' fourth cause of action, in which plaintiffs seek tort remedies for breach of the covenant of good faith and fair dealing inherent to the contract with defendants, the court has concluded, supra, that California law applies to this cause of action and that, under California law, the claim is barred. See Applied Equipment Corp., 7 Cal. 4th at 514-15. Defendants' motion is therefore granted as to plaintiffs' fourth cause of action.

Finally, defendants move to dismiss plaintiffs' fifth cause

22

of action alleging breach of the covenant of good faith and fair dealing. In this cause of action, plaintiffs allege that CUSA breached the covenant by placing Dawe on suspension without pay without any authority to do so, which led to CUSA failing to pay Dawe or Flat Iron as allegedly promised. FAC ¶ 43. Defendants argue that this is merely duplicative of plaintiffs' causes of action for breach of contract and should be dismissed.

The court disagrees. First, none of the cases cited by defendants discuss the duty of good faith and fair dealing that inheres in contracts. See <u>Korea Supply Co. v. Lockheed Martin Corp.</u>, 29 Cal. 4th 1134, 1153 (2003) (discussing the tort of intentional interference with prospective economic advantage); <u>Applied Equipment Corp. v. Litton Saudi Arabia Ltd.</u>, 7 Cal. 4th 503, 521 (1994) (discussing the tort of interference with contract). Instead, California adheres to the rule that "[t]here is an implied covenant of good faith and fair dealing in every contract that neither party will do anything which will injure the right of the other to receive the benefits of the agreement." <u>Comunale v. Traders & Gen. Ins. Co.</u>, 50 Cal. 2d 654, 658 (1958). The covenant of good faith and fair dealing "not only imposes upon each contracting party the duty to refrain from doing anything which would render performance of the contract impossible . . . but also the duty to do everything that the contract presupposes he will do to accomplish its purpose." <u>Harm v. Frasher</u>, 181 Cal. App.

2d 405, 417 (1960).[7]

Under this standard, plaintiffs' cause of action is adequately pled. They have pled that there was a valid contract between Dawe and/or Flat Iron and CUSA and that CUSA "committed certain acts which have injured Plaintiffs' right to receive benefits" under the contract and avoided its obligations under the contract. FAC ¶¶ 42-43. These acts include specifically CUSA's suspension of Dawe without pay. Id. ¶ 43. These allegations suffice to state a cause of action for breach of the implied covenant of good faith and fair dealing under both California and Wyoming law. Defendants' motion is therefore denied as to plaintiffs' fifth cause of action.

### 2. Causes of Action Six Through Eight

In his sixth, seventh, and eighth causes of action, plaintiff Dawe alleges that the defendants are liable for defamation for their involvement in the disbursement of the January 3, 2007 e-mail. Defendants level several arguments against all of these causes of action, none of which are persuasive.

First, defendants urge the court to disregard all of plaintiffs' allegations that state that they are based "upon information and belief," arguing that they "do not constitute material facts at all." See Defs.' Mot. to Dismiss at 11. In making this argument, it appears that defendants contend that because plaintiffs' First Amended Complaint is a verified complaint, its allegations must meet the standards for admissible affidavits under

---

[7]This rule mirrors that of Wyoming. See Wilder v. Cody County Chamber of Commerce, 868 P.2d 211, 220 (Wyo. 1994).

Federal Rule of Civil Procedure 56(e). Defendants cite no authority for this contention. Although a court may construe a motion to dismiss as a motion for summary judgment in certain circumstances, none of which defendants have argued or otherwise shown apply here, and although a verified complaint can be treated as evidence in opposition of a summary judgment motion, see McElyea v. Babbitt, 833 F.2d 196, 197-98 (9th Cir. 1987), defendants have directed the court to no authority that requires that it employ a Rule 56(b) standard when evaluating the sufficiency of plaintiffs' allegations under Rule 12(b)(6). The court similarly has been unable to discover any such authority through its own research.[8] Accordingly, defendants' motion is denied in this regard.

Next, defendants contend that the e-mail was a privileged communication "sent by an interested person to an interested group" and constituted a "proper exercise of corporate duty." Defs.' Mot. to Dismiss at 12. As was true of plaintiffs' contract claims, defendant here appears to be asserting affirmative defenses to the defamation causes of action. Under California law, in order to state a claim for defamation (libel), the plaintiff need only plead that the written communication was one that tended to "expose[] [the plaintiff] to hatred, contempt, ridicule, or obloquy, or which causes him to be shunned or avoided, or which has a tendency to

---

[8]To the extent that defendants intend to assert that defamation claims are subject to a heightened pleading standard, they offer no authority for this. See generally Fed. R. of Civ. Proc. 8; Doe v. See, 557 F.3d 1066, 1074 (9th Cir. 2009) (holding that heightened pleading only required where imposed by a statute or federal rule).

injure him in his occupation."[9] Cal. Civil Code §§ 44-45; Cal. Code Civ. Proc. § 460. Plaintiff has pled these elements in his sixth, seventh, and eighth causes of action. Defendants' affirmative defenses, even if they could be properly asserted in a 12(b)(6) motion, do not appear from the face of the complaint or its attached exhibits and therefore offer no basis to dismiss plaintiff's defamation claims.

Finally, defendants argue that because plaintiff is a public figure, he must plead "constitutional malice." In support of this, defendants offer plaintiff Dawe's deposition. Consideration of this extrinsic evidence is not proper for resolution of a 12(b)(6) motion. <u>See generally</u> <u>Retail Clerks Int'l Ass'n</u>, 373 U.S. at 753. Moreover, defendants have not directed the court to any authority for the proposition that a plaintiff must plead whether or not he is a public figure in order to state a claim for defamation, nor has the court discovered any such authority through its own research. Defendants' motion is therefore denied in this regard.

Accordingly, defendants' motion to dismiss is denied as to plaintiff Dawe's sixth, seventh, and eighth causes of action.

### 3. Ninth Cause of Action

In their ninth cause of action, plaintiffs assert that all defendants intentionally interfered with their prospective contractual relations. In it, they allege that through their involvement in sending the January 3, 2007 e-mail, the defendants

---

[9]These elements are substantially similar to those set forth under Wyoming law. <u>See</u> <u>Wilder</u>, 868 P.2d at 224.

"actively sought to ruin Plaintiffs' contractual and economic relationship with CUSA, and to ruin Plaintiffs' opportunity to start up a new business in the corrections industry." FAC ¶ 65.

Defendants argue, which plaintiffs concede, that this claim must fail if it asserts that CUSA improperly interfered with the extant Agreement between Flat Iron and/or Dawe and CUSA. Plaintiffs contend, however, that in this claim they are alleging that defendants CCPOA, Baiardi, and Baumann interfered with plaintiffs' continued contractual relationship with CUSA and that all of the defendants interfered with plaintiffs' potential future contractual relationships with third parties. This suffices to state a claim under California law for intentional interference with prospective economic relations, which requires plaintiff to show

> (1) [a]n economic relationship between the plaintiff and some third party, with the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3) intentional acts on the part of the defendant designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm to the plaintiff proximately caused by the acts of the defendant.[10]

Youst v. Longo, 43 Cal. 3d 64, 71 n. 6 (1987); see also Della Penna v. Toyota Motor Sales, U.S.A., Inc., 11 Cal. 4th 376 (1995) (intentional interference with prospective economic relations and intentional interference with prospective contractual relations describe essentially the same tort). Under this test, plaintiffs

---

[10]This rule resembles the tort of intentional interference with prospective contractual relations under Wyoming law. See Four Nines Gold, Inc. v. 71 Constr., Inc., 809 P.2d 236, 238 (Wyo. 1991).

have alleged sufficient facts to state a cause of action.

**4. Request for Indemnification**

Finally, defendants move to dismiss plaintiffs' "Request for Indemnification" on the grounds that the contract is not enforceable and, if it is, its indemnification provision only covers claims brought by third parties against the parties to the Agreement. As to the first argument, as the court has explained *supra*, defendants' arguments that the Agreement is unenforceable are unavailing at this stage of the proceedings. However, although the express language of the Agreement does not limit "indemnification" to actions brought by third parties, indemnification relates to obligations over to third parties. Accordingly, this cause of action does not lie and defendants' motion will be granted.[11]

**C. Motion to Strike Under California's Anti-SLAPP Statute**

Defendants move to strike plaintiffs' causes of action based on the defendants' alleged involvement in sending the January 3, 2007 e-mail on the basis that those claims are barred under California Anti-SLAPP statute.[12] The court denies the motion.

California's Anti-SLAPP was enacted to address the perception of the legislature that "there has been a disturbing increase in lawsuits brought primarily to chill the valid exercise of the

---

[11]This, of course, does not limit plaintiffs' ability to seek attorneys' fees from defendants under an alternative theory.

[12]As the court explained supra, the Anti-SLAPP statute would not be grounds for the court to strike the remaining causes of action alleged in the complaint.

constitutional rights of freedom of speech and petition for redress of grievances." Cal. Code Civ. Proc. § 425.16(a). Hence, the court may strike

> [a] cause of action against a person arising from any act of the person in furtherance of the person's right to petition or free speech under the United States or California Constitutions in connection with a public issue . . . unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim.

Id. § 425.16(b)(1). The court should rely on the pleadings and affidavits offered in support of and opposition to the motion. Id. § 425.16(b)(2). If the court determines that there is a probability that the plaintiff will succeed on his or her claim, that finding is not admissible as evidence later in the case or in a subsequent action nor does it alter plaintiff's burden of proof at a later stage in the action or a subsequent action. Id. § 425.16(b)(3). A plaintiff meets this standard by showing that he has stated a prima facie case of a legally sufficient claim. Navellier v. Sletten, 29 Cal. 4th 82, 88 (2002).

Acts protected under the statute are,

> (1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law;
> (2) any written or oral statement or writing made in connection with an issue under consideration of review by a legislative, executive, or judicial body, or any other official proceeding authorized by law;
> (3) any written or oral statement or writing make in a place open to the public or a public forum in connection with an issue of public interest;
> (4) or any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest.

Id. § 425.16(e).

The final category, which includes speech or petition connected to "a public issue or issue of public interest," has no statutory definition, although the California courts have established "a few guiding principles." Wienberg v. Feisel, 110 Cal. App. 1122, 1132 (2003). First, "public interest doe not equate with mere curiosity." Id. (citations omitted). Second, the matter must be of interest to a "substantial number of people" and not merely a "small, specific audience." Id. (citations omitted). Third, there must be close relationship between the asserted public interest and the statements made. Id. (citations omitted). Fourth, "the focus of the speaker's conduct should be the public interest rather than a mere effort to gather ammunition for another round of private controversy." Id. (citations omitted). Applying these principles, the California courts have found that matters of public interest include statements describing a lawsuit against a large, well-publicized church, Church of Scientology v. Wollersheim, 42 Cal. App. 4th 628, 651 (1996), allegations of domestic violence against a famous political consultant who had referenced domestic violence in political campaigns, Sipple v. Foundation for Nat. Progress, 71 Cal. App. 4th 226, 238-39 (1999), and statements regarding self-governance of a gated community of 3,000 people. Damon v. Ocean Hills Journalism Club, 85 Cal. App. 4th 479 (2000).

The California courts have been hesitant to use the Anti-SLAPP statute to strike defamation claims. See, e.g., Weinberd, 110 Cal. App. 4th 1122; Rivero v. Am. Federation of State, County and

30

Municipal Employees, AFL-CIO, 105 Cal. App. 4th 913 (2003). In Rivero, the plaintiff was a former supervisor of eight janitors at a public university. 105 Cal. App. 4th at 916. He alleged that three of his employees accused him of theft, extortion and favoritism and that the AFL-CIO and its Local 3299 had distributed three documents to its members stating that plaintiff had been suspended for soliciting bribes, engaging in nepotism, practicing favoritism, and harassing employees. Id. at 916-17. The documents urged the reader to "take action" and support the campus' local union. Id. at 917. According to the defendants, at the time the local union had approximately 17,000 members and was working to ensure a recent loss in membership would not recur. Id.

Plaintiff sued the union for libel, slander, conspiracy to libel, intentional infliction of emotional distress, and intentional and negligent interference with economic relations. Id. Defendants moved to strike under California's Anti-SLAPP statute on the basis that their conduct was protected speech "concerning a labor dispute." Id. The defendants also argued that the dispute concerned a labor union of 17,000 and the abusive or unlawful practices of a manager at the University were of interest to the union's members. Id. at 919. The defendants argued, finally, that because the University was a public institution, unlawful activity there is of particular public interest. Id. The court of appeals affirmed the trial court's denial of the motion. Id. at 915.

Reviewing the cases in which California courts had found that defendants' statements concerned an issue of public interest, the

court determined that issues meeting this standard were ones concerning a public figure or a person or entity who had received media coverage, issues that affect a large number of people "beyond the direct participants," or a topic of widespread interest among the general public (citing the example of child molestation in youth sports). Id. at 924. The statements defendants allegedly made against the plaintiff did not meet this standard. Id. Were the court to grant defendants' motion under the Anti-SLAPP statute, "discussion of nearly every workplace dispute would qualify as a matter of public interest." Id. Moreover, the fact of the University being a public institution could not alone meet this standard, as "under [defendants'] argument, every allegedly inappropriate use of public funds, no matter how minor, would constitute a matter of public interest." Id. at 924-25. Although the union's members may have found the information about the plaintiff useful in understanding the steps they could take in light of a supervisor's possible misconduct, this did not demonstrate that the information had intrinsic value to the members. Id. at 925. Finally, the use of the information to bolster the union's support among its members or to increase its membership could not be the basis for striking the claims, as virtually any private information could be used in this manner. Id. at 926.

The court recognized that statements made in the context of labor disputes have sometimes been held protected under the Anti-SLAPP statute. See, e.g., Monterey Plaza Hotel v. Hotel Employees & Restaurant Employees, 69 Cal. App. 4th 1057 (1999); Macias v.

Hartwell, 55 Cal. App. 4th 669 (1997). In those cases, the Rivero court observed, there had been significant attention to the labor dispute in the local media, the labor dispute was "major" in that it occurred at the regional and national levels, or the statements were made during a campaign for a union election. Rivero, 105 Cal. App. 4th at 927-29. In these cases, the disputes were either high-profile enough to be considered "public," in the case of Monterey Plaza Hotel, or concerned the quintessential rights of public political discourse protected under the First Amendment, as in Macias. Id. The Rivero court held that the dispute at issue there did not implicate similar concerns, affirming the denial of the motion to strike. Id. at 929-30.

The court reached a similar result in Du Charme v. International Brotherhood of Electrical Workers, Local 45, 110 Cal. App. 4th 107 (2003). There, plaintiff was an employee of the local union who was terminated from his position. Id. at 110. The union's trustee then posted on its website information that plaintiff had been "removed from office for financial mismanagement." Id. at 112. Plaintiff sued the union for defamation or libel, inter alia. Id. at 110. After reviewing the relevant case law, including Rivero and the cases discussed therein, the court held that defendant's act in posting the information to the website was not an issue of public interest under the Anti-SLAPP statute. It concluded that the statement posted on the site

> was presumably of interest to the membership (else why
> post it at all?), but unconnected to any discussion,
> debate, or controversy. Du Charme's termination was a

33

> *fait accompli*. . . . Members of the local were not being
> urged to take any position on the matter. In fact, no
> action on their part was called for or contemplated.

Id. at 118. The court affirmed the trial court's denial of the motion. Id. at 119; see also Weinberg, 110 Cal. App. 4th at 1134 (allegedly defamatory statements made by defendant against plaintiff in a hobby newsletter was simply "a private dispute between private parties. The fact that defendant allegedly was able to vilify plaintiff in the eyes of at least some people . . . does not establish that he was acting on a matter of public interest").

Here, defendants have similarly failed to show that the communications alleged in the complaint are of the type protected under the Anti-SLAPP statute. First, it is apparent that the first three categories of protected activities listed in the statute do not apply, as the January 3, 2007 communication was not made before a legislative, executive, or judicial proceeding or a proceeding otherwise authorized by law; was not made in connection to an issue under consideration in such a proceeding; and was not made in a place open to the public or a public forum. Cal. Code Civ. Proc. § 425.16(e); Weinberg, 110 Cal. App. 4th at 1130 ("Means of communication where access is selective, such as most newspapers, newsletters, and other media outlets, are not public forums."). Instead, in order for defendants' motion to succeed, they must show that their conduct was "in furtherance of the exercise of the constitutional right to petition or the constitutional right of free speech in connection with a public issue or an issue of public

interest."[13] Cal. Code Civ. Proc. § 425.16(e). This they have failed to do.

Defendants argue that the January 3, 2007 e-mail reflected defendants' exercise of the right of free speech "to express support for the election of members of the Board of Directors of CUSA and CCPOA, since there was an ongoing battle in July - October of 2006 as to who should be on the Board of Directors . . . ." Defs.' Mot. to Strike at 17. Defendants' argument is without merit, as defendants' own evidence establishes. Defendants appear not to dispute that the e-mail in question was sent in January 2007. See Baiardi Decl. ¶ 19. Defendants' own evidence is that Dawe was removed from all of his positions with CUSA in September 2006, Baumann Decl. ¶ 14, and defendants argue that the "ongoing battle" of CUSA's Board membership was resolved in October 2006. See Defs.' Mot. to Strike at 17. Therefore, it appears entirely unsupported that the January 3, 2007 e-mail was sent in the context of a Board of Director's election or should otherwise be properly considered speech in furtherance of political campaigning, even broadly defined. As in Du Charme, Dawe's termination was a "*fait accompli*" and the recipients of the e-mail were not asked to take any action on the matter except to choose not to support Dawe's new business venture. See Du Charme, 110 Cal. App. 4th at 118. As the Du Charme

---

[13]Defendants repeatedly reference their interest in exercising their associational rights, assuming these rights are encompassed by the statute. Even if that assumption were correct, it is difficult to see how those rights are affected by the instant communications. See generally Cal. Code Civ. Proc. § 425.16.

35

court explained, to grant protection of these types of statements "would in no way further the statute's purpose of encouraging participation in matters of public significance." Id. (italics omitted).

Moreover, defendants own evidence establishes that in September 2006 CUSA began losing members to Dawe's new business venture, which was a "rival" organization to CUSA. Ashford Decl. ¶¶ 7-8. This accords with the language of the e-mail itself, which urged readers to not support Dawe or his business entity, ACO. See Compl. Ex. F at 2. Put plainly, defendants' own evidence shows that the January 3, 2007 e-mail was simply an attempt by one organization to stave off competition from another, rival organization. There is no evidence that this dispute received public attention or attention from the media, or was otherwise of interest to anyone but a narrow group of private parties. See Weinberg, 110 Cal. App. 4th at 1133. As described above, it was unrelated to any political controversy or election. Although it might be true that a reader would find the information useful in deciding what organization to join, "[i]f the mere publication of information in a union newsletter distributed to its numerous members were sufficient to make that information a matter of public interest, the public-issue limitation would be substantially eroded. . . ." Rivero, 105 Cal. App. 4th at 926. Simply, the January 3, 2007 e-mail represents "a private dispute between private parties." See Weinberg, 110 Cal. App. 4th at 1134. Defendants therefore have failed to show that the e-mail

communication is the type that the California legislature intended to protect though the Anti-SLAPP statute.[14] Accordingly, defendants' motion to strike is denied.

### IV. CONCLUSION

For the reasons stated herein, the court ORDERS as follows:

1.  Defendants' motion to dismiss is GRANTED as to plaintiffs' fourth cause of action and as to plaintiffs' claim for indemnification. It is DENIED in all other respects.

2.  Defendants' special motion to strike is DENIED.

IT IS SO ORDERED.

DATED:  May 20, 2009.



_____
LAWRENCE K. KARLTON
SENIOR JUDGE
UNITED STATES DISTRICT COURT

---

[14]At oral argument, defendants for the first time raised the argument that the e-mail is protected because it is related to defendants' right to petition the courts through their involvement in the September 2006 writ of mandamus action. Despite defense counsel's representations to the contrary at oral argument, the e-mail does not reference, even obliquely or inferentially, the writ of mandamus action. Defendants offer no authority for the proposition that the Anti-SLAPP statute protects statements that happen to have been made several months after the filing of an action, but which otherwise appear to have no relationship to that action. Even if the court were inclined to consider arguments raised for the first time at oral argument, defendants' position is unpersuasive.