1   DAVID P. MASTAGNI, ESQ. (SBN 057721)
    PHILLIP R. A. MASTAGNI, ESQ. (SBN 238254)
2   JAMES B. CARR, ESQ. (SBN 53274)
    **MASTAGNI, HOLSTEDT, AMICK,**
3   **MILLER & JOHNSEN**
    *A Professional Corporation*
4   1912 "I" Street
    Sacramento, California  95811
5
    Telephone:    (916) 446-4692
6   Facsimile:    (916) 447-4614
7   Attorneys for Defendants
    CORRECTIONS USA, a California corporation;
8   CALIFORNIA CORRECTIONAL PEACE OFFICERS
    ASSOCIATION, a California corporation; JAMES
9   BAIARDI, an individual; and DONALD JOSEPH
    BAUMANN, an individual
10

11              UNITED STATES DISTRICT COURT

12              EASTERN DISTRICT OF CALIFORNIA

13

14  BRIAN DAWE; FLAT IRON                Case No.  07-CV01790 LKK EFB
    MOUNTAIN ASSOCIATION, LLC,           [Consolidated Master Case Number]
15  formerly known as Flat Iron Mountain
    Associates, a Partnership,           **JOINT STATEMENT REGARDING**
16                                       **DISCOVERY DISPUTE RE:**
                   Plaintiffs,           **CORRECTIONS USA'S MOTION TO**
17                                       **COMPEL FURTHER RESPONSES TO**
         v.                              **DOCUMENT PRODUCTION REQUESTS**
18                                       **AND FOR DOCUMENT PRODUCTION**
    CORRECTIONS USA, a California
19  corporation; CALIFORNIA              Date:      July 29, 2009
    CORRECTIONAL PEACE OFFICERS          Time:      10:00 a.m.
20  ASSOCIATION, a California corporation; Dept.:    Courtroom 25
    JAMES BAIARDI, an individual; and    Judge:     Hon. Edmund F. Brennan
21  DONALD JOSEPH BAUMANN, an            Trial:     July 27, 2010
    individual,
22
                   Defendants.
23

24  AND CONSOLIDATED ACTIONS AND
    RELATED COUNTERCLAIMS.
25

26

27

28

**TO THE HONORABLE COURT AND TO ALL PARTIES AND ATTORNEYS OF RECORD:**

The parties hereby submit the following Joint Discovery Dispute Statement relating to CUSA's Motion to Compel, filed previous on April 27, 2009, pursuant to the Court' Briefing Order issued on April 29, 2009.  [Docket Nos. 172 and 175].

**I.**

**STATEMENT OF RELEVANT FACTS**

A.      **Defendant Corrections USA's Details of Dispute:**

1.      **Requests for Production of Documents to Brian Dawe.**

Corrections USA (hereafter "CUSA") previously served Plaintiff Brian Dawe (hereafter "Dawe")  with Requests for Production of Documents, Set One and Set Two.  The Plaintiff Brian Dawe previously provided Responses to CUSA's Set One on July 28, 2008 and to Set Two on February 25, 2009, and he did produce some documents in response to these initial requests.  [JBC Supporting Declaration, Para. No. 4].

The parties have engaged in continuing meet and confer regarding further supplemental responses to CUSA's  Sets One and Two.  This includes: (a) the October 21, 2008 meet and confer session, which lasted  3 and ½ hours; (b) entry of a stipulation to extend the Court's Scheduling Order on November 5, 2008  [See: Docket No. 121]; (c) various written emails and letters during February  -  May 2009; (d) a meet and confer  telephone conference on May 5, 2005, which lasted one and one-half hours; (e) written letter exchanges after May 5, 2005; and, (f) a further telephone meet and confer meeting on June 10, 2009.  [James B. Carr  Supporting Declaration, Para. No. 5].

These  "meet and confer" meetings, conferences and correspondence dealt with the assertion of various privileges by Dawe, the failure to provide privilege logs, and CUSA's request that Dawe certify and verify his supplemental responses, including a further statement that he has made a reasonable and diligent search, and that there are no additional documents responsive to CUSA's Sets One and Two.  [James B. Carr Supporting Declaration, Para. No. 6].

On May 1, 2009, CUSA provided Dawe a written letter detailing the additional

1  (supplemental) responses and privilege logs requested as to each specific request contained in

2  Sets One and Two, which had been requested by Attorney Baxter.  A copy is attached as **Exhibit**

3  **A** to the James B. Carr Declaration, Para. No. 7, and incorporated herein by reference.   This

4  "meet and confer" conference on May 5, 2009,  resulted in Dawe providing Supplemental

5  Responses to CUSA's Set One and Set Two, together with a "quasi-privilege log (statement)"  on

6  June 5, 2009.   [James B. Carr Declaration, Para. No.7,  **Exhibit B**].

7        It is CUSA's position that the Supplemental Responses are inadequate and that the "quasi-

8  privilege log (statement)"  does not constitute a proper privilege log under the standards

9  previously articulated  by this Court in prior discovery rulings  or in compliance with the Court's

10  Briefing Order.  [Docket No. 175]  FRCP Rule 26(b)(5).  These issues remain to be decided by

11  the Court at the July 29, 2009 hearing on CUSA's discovery dispute motion to compel.

12        **2.       Dawe's Objections.**

13        Dawe has produced some documents in response to CUSA's Set One and Set Two.

14  However, Dawe has also objected to all of the requests based upon privilege (attorney-client

15  and/or attorney work product).  No previous privilege log(s) were provided by Dawe, despite

16  being requested several times by CUSA.  Privilege based upon privacy has been asserted  by

17  Dawe in his **Responses to Requests Nos. 29, 30, 34, 35, 36, 37, 38, 39 40 and 41**.  The Dawe

18  "quasi-privilege log (statement)"  set forth in **Exhibit B** at Page 3 does not constitute a proper

19  privilege log.   CUSA cannot determine from this privilege log what is being claimed as

20  privileged, since no specific documents have been identified in this privilege log.  [James B. Carr

21  Declaration, Para. No. 7,  **Exhibits A and B**].

22        Dawe has made these privilege objections, and he has made responses such as: (a)

23  *"Responding Party will produce all non-privileged documents;"* (b)  *"Responding Party retained*

24  *copies of some of these documents and will provide copies of what he retained upon request:"*

25  and (c)  *"Responding Party is unaware of any documents that are responsive to this request."*

26  CUSA cannot  determine from these types of responses what documents are being claimed as

27  privileged  and which ones are not, since no specific documents have been identified in this Dawe

28  privilege log.  [James B. Carr, Para. No. 7, **Exhibits A and B**].  Dawe has  the  burden of

1  establishing the existence of the privilege.

2        In addition, Dawe has made boilerplate objections that are overly broad and inept, contain

3  other non-meritorious objections, and assert invocations of other privileges, such as privacy,

4  without the provision of any proper privilege logs and/or the identification of any specific

5  documents.

6        **3.    Dawe's Refusal to Produce Documents.**

7        Likewise, Dawe has refused to produce any documents at all in response to **Requests**

8  **Nos. 29, 30, 36, 37, 38, 40 and 41 (RFPD Set One)**.  Dawe's responses state: *"Responding*

9  *Party will not produce documents in responses to this request."*  Dawe further states that *"no*

10  *documents will be produced"* in response to **Requests Nos. 106, 117, 118, 120 and 162  (RFPD**

11  **Set Two)**.  [ James B. Carr Declaration, Para. No. 7,  **Exhibits A and B**].

12        At the May 5, 2005 meet and confer telephone conference, which lasted one and one-half

13  hours, Attorney Baxter agreed to provide supplemental  responses and privilege logs for Mr.

14  Dawe and Flat Iron Mountain Associates LLC.  During this *meet and confer*, Attorney Baxter

15  also indicated that Brian Dawe did have *"additional documents"* in his possession but he

16  *"considered them privileged"*  and would not produce them.  The supplemental production on

17  June 5, 2009 does not clarify or answer this issue and no proper privilege log has been provided

18  identifying these particular documents.  [James B. Carr  Declaration, Para. 8].

19        The parties had a further Meet and Confer telephone conference on June 10, 2009, at

20  which time the CUSA Motion to Compel and the DAWE Motion to Compel were further

21  discussed; however, the parties were still unable to fully resolve their disputed issues.  [James B.

22  Carr Declaration, Para. No. 9].

23        As a direct result of the parties inability to resolve these issues, CUSA has been forced to

24  proceed with its Motion to Compel regarding the following issues:

25        (1)    Production of information as to the legal, corporate or other status of the American

26  Correctional Officer entity (hereafter "ACO").

27        (2)    Production of all relevant business documents as to Flat Iron Mountain Associates

28  LLC .

(3)     Production of all relevant documents as to the American Correctional Officer Intelligence Network (hereinafter "ACOIN").

(4)     The inadequate Supplemental Responses to Discovery Requests for Production of Documents,  Sets One and Two,  which contain *"grouped"* responses to said Requests, rather than "individual" supplemental responses, as required under FRCP, Rule 34(b)(2)(B).

(5)     Improper and inadequate *quasi*-Privilege Logs by Dawe.

(6)     Whether Dawe is withholding documents, which his attorney has stated exist but which Dawe claims are privileged, without the provision  of a Privilege Log that specifically identifies each of these documents.

(7)     Whether Dawe has in fact conducted a reasonable and diligent search for additional documents and provided a proper verified / certified statement that he has done so,  and there are no additional documents responsive to CUSA's RFPD Sets One and Two.  [James B. Carr Declaration, Para. No. 9 ]

### 4.     Requests for Production of Documents to Gary Harkins.

Defendant and Counter-Claimant Gary Harkins (hereafter "Harkins")  was previously served with CUSA's Requests for the Production of Documents, Sets One - Five, and he provided responses, including objections based upon privilege, without providing a privilege log.   Harkins has produced some documents, but refuses to produce his laptop computer for forensic inspection. [James B. Carr Declaration, Para. 10].

The parties have engaged in meet and confer relating to Harkins.   On May 1, 2009, CUSA provided detailed specific information to Attorney Baxter, which he had requested regarding discovery dispute issues relating to Gary Harkins.  At the May 5, 2009 telephone meet and confer conference, Harkins agreed to provide a *privilege log*, supplemental responses and a certification / verification of his responses; however, he still refuses to produce his laptop computer for forensic copying and inspection.  [Requests for Production of Documents, Set Three, Nos. 130-136. ] [JBC Declaration, Para. Nos. 11, 13 and 17, **Exhibit G**].

On June 1,  2009, Harkins provided supplemental responses and a verification / certification that he had no additional/supplemental documents relevant to CUSA' RFPD Sets 1 -

1    5. [James B. Carr Declaration, Para. No. 12, **Exhibit C**, Page 3, Exhibit 2]     He further indicated

2    that he would provide a privilege log.  On June 5, 2009 Harkins did provide a *"privilege log."*

3    [James B. Carr Declaration, Para. No. 12,  **Exhibit D**].  It is CUSA's contention that the Harkins'

4    *"privilege log"* is inadequate, and the items referenced therein are not privileged documents.

5         Therefore, the following issues remain relating to Harkins: (1)  his defective privilege log

6    and (2) the issue of forensic coping and inspection of Harkins' laptop computer.

7                    **(a)     The Harkins' Laptop Computer.**

8         In particular, the defendants have repeatedly requested that Harkins produce his laptop

9    computer for forensic inspection; however, Mr. Harkins has repeatedly refused to produce the

10   laptop for inspection.  He is claiming that his laptop is irrelevant.  [ James B. Carr Declaration,

11   Para No. 13]. This claim is belied by his prior attorney's written letters, which show that

12   information relating to CUSA was produced and stored on Harkins' laptop.  It is in fact relevant

13   to the issues (claims and defenses) in this consolidated litigation.  [James B. Carr Declaration,

14   Para. No. 13].

15        Further,  Defendants have stated to Mr. Harkins that they will have their computer experts

16   go to his residence and/or business address in Oregon and make a copy of the harddrive from the

17   laptop.

18        [James B. Carr Declaration, Para. No. 13].  This is a non-intrusive inspection and does not

19   require anything more of Mr. Harkins than to physically make his laptop available to CUSA's

20   expert.   The defendants have a right to this inspection under the FRCP Rules 34(a)(1)(A),

21   34(a)((2)(B) and 34(b)(2)(E).  *Columbia Pictures, Inc.,* 200 F.R.D. 443, 447 (CDCA 2007).   The

22   Court should enter an  order compelling the production of the Harkins' laptop computer for

23   forensic inspection by CUSA.

24                    **(b)     The Privilege Log.**

25         The assertions of privilege in Harkins' June 5, 2009 privilege log are not proper because

26   the documents claimed as privileged were sent between Harkins and Loud with a only a "cc" to

27   an attorney on August 21, 2006, and because the email of September 26, 2006 was sent between

28   Loud and Dawe.  Neither of these documents qualify as attorney-client privileged

1   communication, and are not between a client and an attorney.  Neither Loud, Harkins or Dawe are

2   attorneys and there is no such privilege between them.  Any disclosure of any allegedly privileged

3   information by any of them to each other is a waiver of any alleged privilege. Also, the privilege

4   does not protect  communications between one party and the attorney for another party.  *Martin*

5   *Marietta Materials, Inc. v. Bedford Reinforced Plastics, Inc.,* 227 F.R.D.  382, 392 (WDPA

6   2005).    Further, there are no assertion of privilege upon any basis, including privacy,  as to the

7   information contained in the Harkins' laptop computer.   [James B. Carr Declaration, Paras. No.

8   12 and 14, **Exhibit D**].

9           **5.       Requests for Production of Documents to Richard Loud.**

10          Through the meet and confer process and as a result of the May 5, 2009 meeting, the

11   parties have resolved most issues relating to Richard Loud  (hereafter "Loud").    On June 5,

12   2009, Loud  did provide Supplemental Responses and he has certified that he has no additional

13   *"non-privileged documents"* that have been withheld from his document productions. [James B.

14   Carr  Declaration, Para. No. 15, **Exhibit E**, Pages  1 — 5].  Loud has stated:

15                  "By this supplemental response, Responding Party indicates that no
               documents have been withheld from production other than (a) direct
16             communications between Responding Party and his attorneys, and
               (2) research, memoranda, and similar work product generated by
17             counsel." [**Exhibit E**, Page 3]

18          However, Loud has not provided any *actual privilege log* specifying and identifying any

19   documents that he is asserting as privileged.   It is CUSA's contention that this "generalized"

20   statement does not constitute a proper privilege log, pursuant to the Briefing Order [ Court

21   Docket No. 175],  or  FRCP Rule 26(b)(5).   It is CUSA's position that Loud has waived all

22   objections to the CUSA requests for documents based upon privilege, and that the Court should

23   enter an Order confirming Loud's waiver of all of his privilege objections.  [James B. Carr

24   Declaration, Para. No. 15].

25          **6.       Supplemental Production of Documents and Certifications.**

26          **(a)       Privileges Issues.**

27           CUSA  believes that Dawe has additional documents in his possession and control which

28   he has asserted are privileged, but for which he has refused to provide a proper privilege log.

CUSA asserts that the failure of the Plaintiffs to provide proper privilege logs constitutes a waiver of all such privileges; that the Court should make a determination that these "generalized and vague assertions of privilege" are without merit; and that the Court should order the Plaintiffs to produce all such documents which they have improperly claimed as privileged.

**(b)     Specific Responses.**

CUSA further contends that the Plaintiffs should be ordered to make their supplemental responses and certifications as to each "specific" document request, not in mass.  The Plaintiffs should be ordered to provide further Amended Supplemental Responses that are "specific" as to each request, and that the Plaintiffs should be ordered to provide Bates-Stamped Numbers when making these further Supplemental Responses and their certifications.

**7.     Sanctions and Attorneys Fees.**

Harkins has willfully and intentionally refused to produce his laptop computer for forensic inspection.  CUSA is entitled to an appropriate order requiring the physical production of the Gary Harkins' laptop computer for a forensic inspection at a reasonable and convenient time.  In addition, CUSA is entitled to sanctions, costs and attorneys fees against Harkins and his counsel due to their willful and intentional refusal to make his laptop computer available for forensic inspection when they are fully aware that there is relevant information on the Harkins' laptop computer.  [FRCP Rule 34(a)(1)(A) and (B) and 34(a)( 2)].

CUSA further requests that it should be awarded monetary sanctions and attorney fees and costs because the Plaintiffs have not meet and conferred in good faith over these issues, especially the production of the Harkins' laptop for forensic copying and inspection, and because they have provided inadequate and improper privilege logs and/or tardy inadequate privilege logs.  [See: Docket No. 175].   The court reminded the parties of their duty to meet and confer in good faith prior to filing their joint statement.  [Local Rule 37-251(b) and (c)(1)].   Further, privilege objections must comply with FRCP, Rule 26(b)(5), or they may be deemed waived.  [Court Docket No. 175].

**B.     Plaintiffs Dawe, Harkins and Loud's  Details of Dispute:**

*See Plaintiffs' Statement, infra.*

**C.      Defendant's Legal Contentions.**

   **1.      Business Documents Relating to Flat Iron Mountain Associates.**

   Unless otherwise limited by court order, the scope of discovery allows a party to obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense, including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identities of persons who know of any discoverable matter. Likewise, relevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.   FRCP, Rule 26(b)(1).

   In addition, a party may serve on any other party a request to produce and permit the inspection, copying, testing and sampling any electronically stored information and data compilations stored in any medium form which information can be obtained either directly or after the translation into a reasonably usable form, or of any designated tangible thing.   FRCP, Rule 34(a) (1)(A) and (B).   CUSA's position in this dispute is that Plaintiff Dawe has not produced all documents responsive to RFPD Sets One and Two, and in particular, he has not fully provided information relating to the new party plaintiff, Flat Iron Mountain Associates LLC, including the operating agreement, the list of assets, the membership list, the officers, agents and the dba's operated by Flat

   Iron Mountain Associates LLC (hereafter "FIMA LLC").   CUSA is entitled to obtain all of this information because Dawe has added FIMA LLC as a new party in this action and CUSA has cross-complained against FIMA LLC.    This information is totally relevant to claims and defenses in this litigation.  Federal Rules of Civil Procedure, Rule 26(b)(1).

   Likewise, all documents relating to the former Flat Iron Mountain Associates Partnership have not been fully produced by Plaintiff Brian Dawe.   The documents produced on June 12, 2009 are: (1) the tax filings for the former Flat Iron Mountain Associates Partnership, for FIMA LLC, and for Brian and Marilyn Dawe; (2) the Bank of Star Valley Accounts held by Dawe; and (3) the "Dawe" email list of CUSA members relating to Dawe's new organizations ACO and ACOIN.   However, no other relevant information as to ACO, ACOIN and FIMA LLC has been provided.   This information would include, for example, the operating agreement, membership

1    list, agents and officers, if any, correspondence, emails, letters, business plans and/or other

2    business related documents have been produced.

3          It is CUSA's position that if none of this information exists, then Dawe and/or FIMA LLC

4    and/or the former Flat Iron Mountain Associates Partnership, must clearly state that no such

5    documents exist and provide further certified /verified Supplemental Responses to that effect.

6          **2.    FIMA LLC / ACO / ACOIN  Documents.**

7          The  documents relating to the American Correctional Officer (hereafter "ACO")

8    and to the American Correctional Officer Intelligence Net (hereafter "ACOIN"),  both of which

9    appear to be dba's of Flat Iron Mountain Associates LLC, and/or of Flat Iron Mountain

10   Associates Partnership and/or of Brian Dawe, individually,  have not been fully produced by

11   Dawe.

12         It is CUSA's position that these "entities" and/or "dba's" were established and have been

13   operated by Dawe using misappropriated and stolen CUSA membership lists, trademarks, logos,

14   materials, and intellectual property previously owned and in the possession of CUSA.  This

15   information is directly relevant and pertinent to the claims and defenses asserted by CUSA in this

16   consolidated action against Brian Dawe, Richard Loud, Gary Harkins and/or FIMA LLC.

17         Further, on June 30, 2009,  Dawe  / Loud / FIMA filed an Answer to the CUSA cross-

18   complaint  that  contains Introductory  Section 1 — 1.202, which is 59 pages of materials, alleged

19   facts and information relating to the defense of the CUSA cross-claims.  [Docket No. 199, Pages

20   2-62].  The information alleged as to ACO and ACOIN has not been produced in prior discovery,

21   as well as the myriad  of other "facts" and referenced documents, have not been fully produced to

22   CUSA.

23         Therefore, the Court should order Dawe to produce all information related to ACO and

24   ACOIN, and all other responsive information supporting his "defenses" asserted in Section 1 —

25   1.202 of his Answer to the CUSA cross-complaint, and he should also be ordered to certify /

26   verify / identify by Bates-Stamped Numbers all such responsive documents have been produced

27   or that they do not exist.

28   ///

### 3.    Harkins' Computer Information.

The scope of Rule 34 includes electronically-stored information, which would include the information on Gary Harkins' laptop computer and the computer itself, as it is a tangible thing. FRCP, Rule 34(b)(1)(C) and (2)(D) and (E).  Electronically-stored information is a category of documents that must be produced, and is intended to be a broad and flexible term encompassing email and information stored in any medium. *Columbia Pictures, Inc. v. Bunnell*, 245 F.R.D. 443, 446-447 (CDCA 2007).  Metadata on a computer is discoverable. *Autotech Technologies Ltd. Partnership v. Automationdirect.com, Inc.*, 248 F. R. D. 556 (ND Illinois 2008); *D'Onofrio v. SFX Sports Group, Inc.*, 247 F.R.D. 43, 36 (DDC 2008).

In **Requests for Production of Documents, Set Three, Request No. 130**, Harkins is asked to produce his laptop for forensic inspection.   Harkins has objected to this request based upon relevancy, and that it is not reasonably calculated to lead to the discovery of admissible evidence.   The other **Requests Nos. 131—136** relating to the Harkins laptop are also objected to on the same basis as **No. 130**.  These are not valid objections because the laptop was used by Harkins while he was a Board Member, officer, director and/or agent of CUSA, and because there are pending disputes as to ownership of the computer, which have been raised in this litigation.  Thus, the objections articulated by Harkins as to relevance have been made in bad faith and should be overruled by the Court.

Defendant CUSA has a right to discover the information on Gary Harkins' laptop computer.  Said information is relevant to the claims and defenses in this complex consolidated litigation, including claims relating to Harkins' trademarking the CUSA name, logo and other proprietary information for his own account. [James B. Carr Declaration, Para. 18, **Exhibit H**, Letters of September 14 and 21, 2006 from CUSA to Crowell ing, LLP. ]  There is no basis for any objections based upon relevancy, which is what has been advanced and argued by Mr. Harkins' counsel in the parties' recent meet and confer conferences.  The information on the laptop computer relating to CUSA and to the other Defendants is relevant to the claims and defenses in this consolidated action.  There is also an issue relating to the ownership of the computer and alleged payments made by Harkins.

This computer was used by Harkins when he was an officer, director and/or agent acting for CUSA, and doing work for CUSA.  Rule 34(a).  Also, it is CUSA's position that there is information stored on said computer relating to the surreptitious trademarking of the CUSA name and logo by Mr. Harkins, and as such, it is relevant.  [James B. Carr Declaration, Para. No. 16, **Exhibit F**, VanderMay Letter of September 8, 2008, Pages 1 – 2].  In addition, CUSA has alleged a "Plan" (conspiracy) to take over CUSA and to convert it from a nonprofit corporation into a "for-profit" entity controlled and dominated by Plaintiffs Brian Dawe, his wife Marilyn, and FIMA LLC, and information related to the "Plan" is stored on the Harkins' laptop computer.  [Docket No. 188 and 189].

Further, Harkins has now filed an Answer to the CUSA Cross-Complaint that has 113 pages of supposed "denials and information" relating to the Harkins' defense of the CUSA cross-complaint. [Docket No. 197, Pages 2-113, Sections 1 — 1.350].  It is the position of CUSA that information relating to these allegations is stored upon the Harkins' laptop computer.  Therefore, the Court should immediately issue an order allowing the forensic inspection of the Harkins laptop computer.

The relevancy of this information has been admitted by Mr. Harkins's previous Counsel, Maureen VanderMay.  [JBC Declaration , **Exhibit F**, Page 1– 2].  In her September 8, 2008 letter to my office, she indicated that the computer has been used for both CUSA-related activities and other unrelated purposes.  She claims that a production of the laptop would result in a disclosure of personal information, and that Harkins will produce "any discoverable material."

Since the information on the Harkins' laptop has not been asserted as privileged in his privilege log, there remains no basis for refusing to produce the laptop for copying of the hard drive and forensic inspection by CUSA.  [James B. Carr Declaration, Para. No. 12, **Exhibit D**].  The burden was on Harkins to establish any claims of privilege.  *Healthman v. United States District Court for Central District of California*, 503 F.2d 1032, 1033 (9th Cir 1974).   He has failed to do so.

Despite repeated attempts to resolve this laptop computer inspection issue through the meet and confer process, Mr. Harkins and his counsel have adamantly refused to make his

1  laptop computer available.  His current counsel ,Mr. Baxter, told my office in writing on May 13,

2  2009,  to proceed with our Motion to Compel inspection of Mr. Harkins' laptop computer and

3  that all of the meet and confer obligations had been discharged. [James B. Carr Declaration, Para.

4  No. 17, **Exhibit G**].

5       CUSA has offered to have a forensic expert go to Mr. Harkins office and/or home in

6  Oregon and copy the hard-drive from his laptop computer so that a forensic inspection can be

7  conducted by CUSA.   This is a non-invasive means of accomplishing this discovery request and

8  is reasonable, and has been made in good faith pursuant to the Defendants' meet and confer

9  duties.  The Harkins laptop computer must be ordered produced for forensic inspection.

10      **4.      Dawe and Loud's Privilege Logs.**

11      Appropriate, proper and *adequate privilege logs* must be provided by Mr. Dawe and by

12  Mr. Loud, as well as the completion of further Supplemental Responses to the Requests for

13  Production of Documents that indicate a thorough, diligent  and reasonable search has in fact

14  been conducted, and that there are in fact no other documents responsive to these various Sets of

15  Requests for Production of Documents to Dawe and Loud.   Plaintiff Dawe and his Counsel have

16  made statements that there are no other responsive documents, except these statements have been

17  made with the proviso, implication and qualification that there are actually additional documents

18  that might be relevant  but that they are "privileged", without adequately identifying these

19  documents in an amended privilege  log.

20      The burden is upon the party raising a privilege to establish the existence of the privilege.

21  *Healthman v. United States District Court for Central District of California*, 503 F.2d 1032, 1033

22  (9th Cir 1974).   If Mr. Dawe does not want to provide an *adequate privilege log,* then the Court

23  must issue an order that all objections based upon privilege have been waived by Plaintiff Dawe,

24  and order him to immediately produce all documents to the Defendant CUSA.

25      **5.      Failure to Meet and Confer in Good Faith.**

26       It is CUSA's further  position  that Dawe  and Harkins have violated this Court's prior

27  Briefing  Order of April 29, 2009 [Docket No. 175 ],  regarding their duty to meet and confer in

28  good faith to resolve these continuing discovery disputes and issues, especially Harkins' adamant

1  refusal to make his laptop computer available for forensic inspection prior to filing the Joint

2  Discovery Dispute Statement. CUSA has met and conferred in good faith relating to the

3  Harkins' laptop computer and Plaintiff has told CUSA to go pound sand. [James B. Carr

4  Declaration, Para. Nos. 11, 13, and 17, **Exhibit G**].

5  In addition, the Plaintiffs have willfully concealed and withheld responsive documents

6  and they have failed to produce all documents responsive to these Requests for Production of

7  Documents, in violation of the Federal Rules of Civil Procedure, Rules 26(b) and Rule 34(a). It

8  is the Defendants' position that CUSA is entitled to an order for sanctions, fees and costs for the

9  necessity of having to bring this Motion to Compel. CUSA hereby requests leave of this Court

10  to provide a supplemental declaration setting forth the time and hours expended in having to

11  prepare and bring this Motion to Compel.

12  **D.      Plaintiffs' Legal Contentions.**

13  *See Plaintiffs' Statement, infra.*

14

15  ***PLAINTIFFS' STATEMENT***

16  **I.**

17  **Introduction**

18  Defendants' motion misses the mark on so many levels that it is difficult to know where to

19  begin. Perhaps the most fundamental distillation of the problem is that Defendants—for all of

20  their arguments about ascribed shortcomings in Plaintiffs' discovery efforts—have failed to even

21  identify the requests to which they seek further responses, making it nearly impossible for

22  Plaintiffs to cogently respond to Defendants' various contentions.[1]  It is almost as though

23  Defendants believe that the basis for the various items of sought-after relief is so self-evident that

24  a discussion of the specific requests at issue is unnecessary. Unfortunately, such is not the case,

25  and neither Plaintiffs nor the Court should be put to the exercise of trying to divine which

26  requests are in play, which responses are allegedly improper, and which additional documents

27  

---

28  [1] The term "Plaintiffs" is used herein to collectively refer to Plaintiffs/Counter-Defendant BRIAN DAWE, Defendant/Counter-Plaintiff GARY HARKINS, and Defendant RICHARD LOUD.

1   should allegedly be produced.  Such is especially the case given that Plaintiffs have produced

2   thousands of documents in this litigation, including many documents that Defendants claim have

3   not been provided.

4          Defendants' presentation suffers from additional maladies, as well, inasmuch as it (a) is

5   founded on fundamentally erroneous factual predicates (including the notion that Defendants

6   have withheld numerous categories of documents on wide-ranging claims of privilege) and (b)

7   omits any particularized legal analysis regarding the requests and responses at issue.  As to the

8   latter, Defendants once again seem to think that by simply citing undifferentiated discovery

9   principals, it should be readily apparent to Plaintiffs and the Court as to how those principals

10  apply to the disputes at issue.  At the end of the day, however, Defendants have fundamentally

11  failed to establish the legitimacy of their production requests, the impropriety of any of Plaintiffs'

12  responses, or any reason why Plaintiffs should be called upon to provide further responses or

13  additional documentation.   In short, Plaintiffs have complied with their discovery obligations,

14  and Defendants have not shown otherwise.[2]

15                                    **II.**

16        **Defendants Have Failed to Appropriately Articulate The Issues In Dispute**

17         The undersigned is usually loath to begin a brief with a quasi-procedural grievance, but

18  because in this case that grievance touches on every facet of Defendants' motion and Plaintiffs'

19  ability to respond thereto, there is little choice.

20         The problem is simply this:  Although Defendants make occasional reference to bulk lists

21  of requests (see, e.g., the discussions under Defendants' Part I.A.2. ["Dawe's Objections"], I.A.3.

22  ["Dawe's Refusal to Produce Documents"], and I.C.3 ["Harkins Computer Information"][3]),

23  Defendants make no effort to explain why any particular request seeks relevant information and is

24  _____

25  [2] Note that defense counsel provided their portion of the within Statement to Plaintiffs' counsel on
    Friday, July 17 at 3:00 p.m., and Plaintiffs are—obviously—responding to the arguments made

26  therein.  Plaintiffs trust that Defendants will not add further "reply" facts and/or arguments into
    their statement without clearly delineating them as new.

27  [3] Note that because Defendants are filing the final version of the parties' joint statement, and the
    page and line numbers herein could change, Plaintiffs have referred to the sections of Defendants'

28  statement in which the various excerpts are found (as of the time, of course, that Defendants'
    portion of the joint statement was transmitted to Plaintiffs), rather than page and line numbers.

otherwise proper, why Plaintiffs' response is inappropriate, or otherwise why the instant motion should be granted.   Indeed, not until Section I.C. of their treatment ("Defendant's Legal Contentions") do Defendants even address *categories* of documents, and even then they fail to identify the relevant requests that allegedly seek the documents encompassed in those categories.

By proceeding in such manner, Defendants appear to have forgotten that it is the requests themselves that constitute the jumping-off point for each and every item of relief sought in their motion.   Even more importantly, however, Defendants' presentation has made it almost impossible for Plaintiffs to cogently assess the issues that Defendants seek to have reviewed. Without a legitimate, request-by-request presentation, or at least one that addresses each broader category at issue *with reference to the actual requests propounded*, Defendants have not provided an adequate basis for Plaintiffs to respond, or for this Court to make a reasoned determination of the issues.

For example, Defendants chide Plaintiff Brian Dawe for purportedly indicating that he will not produce documents in response to Request Nos. 29, 30, 36-38, 40-41, 106, 117-118, 120, and 162. (See Defendants' Part I.A.3., *supra*.)   However, in addition to the fact that Defendants' statement is factually wrong (as to various of those requests, Mr. Dawe did *not* make that indication), missing in action is any discussion of those requests (either individually or by reasonably digestible category) or Mr. Dawe's responses as they specifically pertain to those requests.   Instead, Defendants engage in advocacy by royal decree, essentially arguing that because Mr. Dawe indicated that he would not produce documents in response to those requests (again, as to some of the listed requests, such is not the case), those responses are ipso facto inappropriate.   Defendants provide no articulation of what the requests seek, no discussion of the particulars of Mr. Dawe's responses (including the objections contained therein), no legal analysis relative to the propriety/relevance of those responses; indeed, no substantive discussion of any kind.

In raising this issue, Plaintiffs are not just arguing how about how many angels can dance on the head of a pin.   Defendants' presentation is *so* lacking in specifics, *so* difficult to follow, and *so* poorly-tailored to any of the requests that have actually been propounded that Plaintiffs are

1   placed in the position of having to speculate as to what specific requests it should even be

2   discussing herein.  That position is particularly untenable inasmuch as a party resisting discovery

3   in the context of a motion to compel generally carries the burden of supporting the grounds for

4   objection. See, e.g., <u>DIRECTV, Inc. v. Puccinelli</u>, 224 F.R.D. 677, 681, fn. 1 (D. Kan. 2004.)

5   Without being provided a clear description of the request at issue, Plaintiffs cannot discuss and

6   defend their specific objections.  And, that circumstance does not even get to the fact Defendants

7   have failed to meet *their* burden of demonstrating any "actual and substantial" prejudice from the

8   denial of the additional discovery sought—<u>In re Sulfuric Acid Antitrust Litig.</u>, 231 F.R.D. 331,

9   333 (N.D. Ill. 2005); <u>Packman v. Chicago Tribune Co.</u>, 267 F.3d 628, 647 (7th Cir. 2001).)

10  Both Plaintiffs and the Court deserve better.

11  **III.**

12  **Defendants' Motion Should Be Denied As to the Requests Propounded to Brian Dawe**

13  Notwithstanding the above, Plaintiffs will attempt to respond in as accessible a manner as

14  the circumstances will allow.  Since separate requests were propounded to each of the Plaintiffs, it

15  seems to the undersigned that such accessibility is best accomplished by discussing the issues

16  specific to each.  We begin with Brian Dawe.

17  A.   **Other Than Direct Attorney-Client Privileged Documents and Attorney Work**

18       **Product, Mr. Dawe is Not Withholding Any Documents On Grounds of Privilege.**

19  A good portion of Defendants' presentation relative to Mr. Dawe is predicated on the

20  notion that Mr. Dawe has withheld various categories of documents on grounds of privilege. (See,

21  e.g., Defendants' Parts I.A.1-I.A.3.)  Specifically, Defendants state that (a) during one of the

22  parties' meet-and-confer sessions, "Attorney Baxter also indicated that Brian Dawe did have

23  '*additional documents*' in his possession but he '*considered them privileged*' and would not

24  produce them" and (b) Mr. Dawe provided a "quasi-privilege log (statement)" that inadequately

25  described the purportedly withheld documents, and (c)  (<u>Id</u>., Parts I.A.2 and I.A.3 [emphasis in

26  original].)

27  Defendants' discussion is incredibly misguided; and telling in its omissions.  Indeed, from

28  the beginning, Mr. Dawe made it abundantly clear that the only documents he ever withheld on

grounds of privilege were (a) private financial documents, such as tax returns, and (b) direct attorney-client communications and work product documents.  As the former group, Mr. Dawe ultimately determined that—given the claims at issue in this litigation—he could not legitimately assert financial privilege over the requested documents.  Thus, all documents over which Mr. Dawe previously asserted a right to privacy have been produced.  Mr. Dawe has provided certified responses indicating this.

As to the latter group, the parties long ago agreed (indeed, this agreement was reached at the beginning of the parties' meet-and-confer efforts relative to *both* parties' requests, including during a lengthy in-person meeting at defense counsel's offices on October 21, 2008) that no privilege logs needed to be exchanged relative to direct attorney-client communications and attorney work product such as memoranda, research, notes, and the like.  (This very agreement was noted during the parties' last appearance before this Court in April, with the undersigned indicating that—pursuant to that agreement—he did not seek a privilege log from Defendants in relation to those types of documents.) (Declaration of Daniel L. Baxter, ¶ 2.)

It is this latter group of documents that constitute the "additional documents" to which Defendants now refer.  To repeat what has now been told to defense counsel at least a half dozen times in the last few months, *Mr. Dawe has withheld no documents on grounds of privilege other than direct attorney-client privileged documents and attorney work-product.*  As for the "privacy" objection to which Defendants refer in relation to Request Nos. 29-30 and 34-41 (see Defendants' Part I.A.2, *supra*), that objection was interposed in relation to requests seeking the aforementioned financial documents; again, that objection has since been withdrawn, and no documents have been withheld on grounds of privilege.  Mr. Dawe has provided *verified* discovery responses indicating this.

Let it also be said that Plaintiffs have absolutely no idea what Defendants are referring to in their repeated mention of a "quasi-privilege log (statement)" ostensibly provided by Mr. Dawe. What makes Defendants' use of that term so maddening is that it is invariably quoted, leading one to believe that this is a designation *Plaintiffs* assigned to some document.  Such is not the case— the only privilege log that Plaintiffs have provided in this litigation is that pertaining to two

1  documents withheld by Gary Harkins on grounds of privilege (discussed in Part II, *infra*).  Once

2  again, except for attorney-client communications and attorney work product, Mr. Dawe has not

3  withheld *anything* on privilege grounds (nor has Richard Loud, for that matter).  So, what exactly

4  is it that Defendants are asking for?  A privilege log that identifies each communication between

5  the undersigned and his client, each phone note generated by the undersigned's office, each

6  research memo the undersigned has prepared, etc.?  Again, the parties have already agreed that

7  such is not necessary.

8  **B.     Mr. Dawe's Objections to Defendants' Requests Were Interposed With Careful**

9  **Consideration to Their Propriety in Relation to Each Request.**

10  Since Defendants do not indicate which requests are the subject of their motion, Mr. Dawe

11  is unable to go through the pertinent requests and discuss his individual objections.  He does wish

12  to make a brief statement on the matter, however.

13  One common source of frustration in connection with written discovery is the responding

14  party's interposition of identical, rotely-incanted objections in response to every request

15  propounded.  In their statement, Defendants have suggested that such is the case with respect to

16  the objections lodged by Mr. Dawe. (Defendants' Part I.A.2, *supra*, claiming that Mr. Dawe has

17  made "boilerplate" objections.)  In fact, nothing could be farther from the truth.

18  First, each objection was specifically thought through and considered prior to inclusion in

19  Mr. Dawe's responses.  Indeed, the only objection that is often not accompanied by any sort of

20  explanation or particularization is Mr. Dawe's objection on grounds of attorney-client privilege

21  and work product protection.  As to that objection, such was interposed as to the many requests

22  that asked for "all documents that reflect, reference, or relate to" a particular subject.   As

23  numerous communications have been transmitted by and between the undersigned (and his

24  colleagues) and Mr. Dawe "reflecting, referencing, or relating to" the various topics at issue, the

25  inclusion of such an objection is appropriate.  The remaining objections are accompanied by an

26  explanation of why they are interposed in relation to each request.

27  Second, while there is often a great deal of similarity between the objections interposed

28  from one request to another, that is because the requests themselves—and the deficiencies that

1  Mr. Dawe perceives in those requests—are often similar.  Thus, the Court should not view the

2  similarity of some of Mr. Dawe's objections as reflective of a rubber-stamp approach to

3  objections—such is not the case.

4  **C.**   **Defendants Have Failed to Establish an Entitlement to Any Further Responses By**

5  **Mr. Dawe.**

6  It is on this subject—the necessity/propriety of additional responses from Mr. Dawe—that

7  the vagueness of Defendants' motion comes home to roost.   In that vein, Plaintiffs have

8  absolutely no clue of the requests to which Defendants would have Mr. Dawe provide an

9  additional response, because Defendants simply never say.  Indeed, the only item that Defendants

10  mention as requiring a further response (and even then, it is not specifically put in such terms)

11  comes in relation to "[t]he inadequate Supplemental Responses to Discovery Requests for

12  Production of Documents, Sets One and Two, which contain *'grouped'* responses to said

13  Requests, rather than "individual" supplemental responses, as required under FRCP, Rule

14  34(b)(2)(B)." (Defendants' Part I.A.3, *supra* [emphasis in original].)  But even as to this issue,

15  Defendants err.

16  Mr. Dawe (and Messrs. Harkins and Loud) provided individualized, request-by-request

17  responses to each one of Defendants' production requests (see Exhibit "B" to Defendants'

18  Declaration of James B. Carr, Exhs. 1 and 2).   The only "grouped" responses were thereafter

19  provided in the context of the parties' meet-and-confer efforts, during which Defendants

20  professed confusion as to the scope of Mr. Dawe's production and what, if anything, was being

21  withheld on grounds of privilege.   Based on this ascribed confusion, Mr. Dawe provided a

22  supplemental response that attempted to meet, in a written form verified by Mr. Dawe,

23  Defendants' stated concerns.  In that verified response, Mr. Dawe indicated, *inter alia*, as follows:

24  
25  These supplemental responses are provided pursuant to a discovery meet-and-confer session held between counsel for the parties on or about May 5, 2009.  Responding Party believes that his initial responses fully comply with the requirements of the Federal Rules of Civil Procedure, and does not believe the supplemental responses provided herein are required under those rules.  However, as part of Responding Party's continuing efforts to avoid the necessity for law and motion practice relative to the requests and responses at issue, Responding Party provides these supplemental responses in the

hopes that they will satisfy Propounding Party's understanding . . . of what is required.

(Carr Declaration, Exh. "B", at 2:9-2:17.)

In a further effort to try address Defendants' concerns, Mr. Dawe also specifically reiterated the above-mentioned points regarding privilege, as follows:

> In response to many of Propounding Party's requests, Responding Party interposed objections based on the attorney-client privilege and attorney work product doctrine.   Those objections were interposed primarily because of the language repeated throughout the requests that the requests seek "all documents that reflect, reference, or relate to" the subject matter categories in question, which would include documents protected from discovery by the attorney-client privilege and/or attorney work product doctrine. *By this supplemental response, Responding Party indicates that no documents have been withheld from production other than (1) direct communications between Responding Party and his attorneys, and (2) research, memoranda, and similar work product generated by counsel.*

(Id. at 3:1-3:11 [emphasis added].)  Mr. Dawe than proceeded to list, *inter alia*, (a) the requests in response to which all non-privileged documents had been provided, (b) the requests in response to which all non-privileged documents had previously been provided, and for which Mr. Dawe had no additional documents, and (c) the requests in response to which he had no documents at all. (Id. at 3:18-4:14.)

Far from providing a legitimate description of the context in which Mr. Dawe's supplementation was provided—Defendants would apparently have the Court somehow evaluate that supplementation as a free-standing response, divorced from the original responses that they were designed to supplement. (See Defendants' Parts I.A.3 and I.A.6.(b), *supra*.)  Defendants' treatment of the issue proves once and for all that no good deed goes unpunished.

Mr. Dawe would also be remiss if he did not mention the other position staked by Defendants relative to Mr. Dawe's responses/production.  Well into their statement, Defendants, without reference to any particular request(s), state as follows:

> CUSA's position in this dispute is that Plaintiff Dawe has not produced all documents responsive to RFPD Sets One and Two, and in particular, he has not fully provided information relating to the new party plaintiff, Flat Iron Mountain Associates LLC, including the operating agreement, the list of assets, the membership list, the officers, agents and the dba's operated by Flat

1   Iron Mountain Associates LLC.

2   (Defendants' Part I.C., *supra*.)

3   In describing its position, Defendants omit mention of any particular request(s) at issue,

4   again making it impossible for Plaintiffs to cogently respond. For what it is worth, Mr. Dawe has

5   provided most of the documents encompassed within Defendants' description. However, certain

6   requests propounded by Defendants on these matters are wildly overbroad, including, for

7   example, Request No. 106, which seeks "ALL DOCUMENTS evidencing and shows [sic] the

8   names, addresses, telephone numbers and identities of all partners in FLAT IRON MOUNTAIN

9   ASSOCIATES, a partnership, from January 1, 1998 to the present." As to this request, Mr. Dawe

10  responded as follows:

11         Responding Party objects to this request on the ground that it seeks
           documentation protected from discovery by the attorney-client
12         privilege and/or attorney work-product doctrine. Responding Party
           also objects to this request on the ground that it is overbroad,
13         burdensome, and oppressive in that Responding Party has already
           furnished Propounding Party with the contact information for the
14         former partners in Flat Iron Mountain Associates, and this request,
           by its terms, seeks every piece of paper "evidencing and show[ing]"
15         the contact information for those persons. Subject to and without
           waiving the above objections, Responding Party answers this
16         request as follows: Once again, Responding Party has already
           provided Propounding Party with the information that is responsive
17         to this request. Responding Party will not produce "all documents"
           reflecting undisputed contact information that Propounding Party
18         already has.

19  Despite the overbreadth of their request, Defendants have made no effort to narrow or

20  otherwise particularize the request, and Mr. Dawe is thus bound to stand on his objections.

21  Having already provided the contact information for the former Flat Iron partners, Mr. Dawe

22  should not be forced to undertake a gratuitous project such as rooting through his records for

23  every document that "evidences and shows" contact information for the former partners of Flat

24  Iron.

25  Again, this is just an example. Because Defendants have declined to proffer any cohesive

26  discussion of the requests at issue, and why a further response should be compelled, Mr. Dawe is

27  hamstrung in his ability to address the various issues. In the final analysis, though, the fact of the

28  matter is that Mr. Dawe has complied with his discovery obligations in this matter—he has

1   produced documents in response to the vast majority of Defendants' requests, declined to produce

2   documents in response to a few, and clearly indicated the extent to which any documents have

3   been withheld on grounds of privilege (as discussed, above, only attorney-client and work product

4   documents).   He has also properly stated his objections.  Defendants have not shown otherwise.

5

**IV.**

6

**Defendants' Motion Should Be Denied As to the Requests Propounded to Gary Harkins**

7       Defendants' discussion of their claimed entitlement to an inspection of Gary Harkins'

8   laptop computer (Defendants' Part I.C.3., *supra*) is also confusing, incomplete, and misguided.

9       To begin, Defendants have again failed to provide any particularized discussion of the

10   requests at issue, or Mr. Harkins' responses thereto. (Instead, Defendants have simply presented

11   the issue as one of simple entitlement to Mr. Harkins' computer.)  That omission alone makes an

12   assessment of Defendants' entitlement to further responses very difficult, especially because

13   certain of Defendants' computer-related requests are—again—manifestly overbroad. (See, e.g.,

14   Request No. 131, demanding that Mr. Harkins "produce for forensic inspection, examination and

15   copying *all* electronically stored information with metadata intact contained on the laptop

16   computer" (emphasis added), without any subject matter limitation of any kind.)

17       As to the computer itself, the facts are undisputed.  Mr. Harkins initially purchased the

18   computer in December of 2005 on his own dime, and Defendant CUSA subsequently reimbursed

19   him (in April 2006) for the acquisition since Mr. Harkins occasionally used the computer in

20   connection with his work on behalf of CUSA (specifically, Mr. Harkins used the computer in part

21   for CUSA business from April 2006 to September 11, 2006).  After Mr. Harkins discontinued

22   performing work for CUSA, he reimbursed CUSA for the full initial payment amount.

23   (Declaration of Gary Harkins, at ¶ 2.)  The vast majority of any data on the computer has no

24   relation to Defendants or this litigation, and production of the computer would result in a

25   significant disclosure of personal information of Mr. Harkins and his family.  And, as to the

26   information that *is* responsive to the production requests Defendants have propounded, Mr.

27   Harkins has already produced the documents in his possession, custody, or control.  The only

28   exceptions to this are (a) the documents listed in Mr. Harkins' privilege log; (b) the documents

1   containing attorney-client communications and attorney work product; and (c) documents

2   responsive to the categories for which Mr. Harkins specifically responded that he would not

3   produce responsive documents, or for which Mr. Harkins interposed objections only (which

4   requests Defendants have failed to identify or discuss). (Id. at ¶ 3.)  Accordingly, there is simply

5   no reason for the production of Mr. Harkins' computer itself, or the scope of information sought,

6   for instance, in the aforementioned Request No. 131.

7           Defendants' legal analysis, such as it is, fares no better.  There is, of course, *no dispute*

8   that "[e]lectronically-stored information is a category of documents must be produced, and is

9   intended to be a broad and flexible term encompassing email and information stored in any

10  medium." (Defendants Part I.C.3., *supra*.)  However, the fact of the matter is that Mr. Harkins has

11  already produced his non-privileged documentation, both electronically-preserved and otherwise,

12  that is responsive to the requests propounded by Defendants to Mr. Harkins.   There is no

13  discovery principal—whether embodied in Rule 34(b) or otherwise—that entitles Defendants to

14  inspect Mr. Harkins' computer for its own sake, especially in light of the totally unconfined

15  nature of Defendants' contemplated inspection.

16          Bizarrely, Defendants assert (for the first time—this issue was not raised during the meet-

17  and-confer process) that Mr. Harkins should be made to turn over his computer because he did

18  not provide a privilege log relative to personal information on his computer. (Defendants' Part

19  I.A.4. and I.C.3., *supra*.)  Of course, we are talking about Mr. Harkins' personal computer, used

20  by Mr. Harkins and his family on an everyday basis.  To force Mr. Harkins to prepare a privilege

21  log regarding the information on the computer would be the ultimate in makework assignments.

22  The bottom line is that any documentation unrelated to the subject matter of this litigation is off

23  the table, and Defendants should not be able to inspect the totality of Mr. Harkins' computer,

24  especially when there is no dispute that Mr. Harkins has produced the non-privileged

25  documentation sought via Defendants' various requests.

26          Finally, with respect to the two documents listed in Mr. Harkins' privilege log (attached as

27  Exhibit "D" to Defendants' Declaration of James Carr), Mr. Harkins believes those documents

28  are in fact privileged, as they transmitted information specifically provided by attorneys being

1  jointly consulted for purposes of possible litigation by and against CUSA.  Mr. Harkins is happy

2  to provide those two documents to the Court for an in camera review so that the Court can

3  determine whether the attorney-client privilege has been properly invoked.  Obviously, if the

4  Court disagrees with that invocation, Mr. Harkins will produce the documents to Defendants.

5  **V.**

6  **Defendants' Motion Should Be Denied As to the Requests Propounded to Richard Loud**

7  It appears that Defendants' only complaint relative to Mr. Loud's responses is one of

8  those already discussed in relation to Mr. Dawe; specifically, Mr. Loud's not providing a

9  privilege log.  However, like Mr. Dawe, Mr. Loud has withheld no documents on grounds of

10  privilege other than direct communications between Mr. Loud and his attorneys and research,

11  notes, memoranda, and similar attorney work product.  As Defendants themselves acknowledge

12  (Defendants' Part I.A.5, *supra*), Mr. Loud specifically made this indication has in his verified

13  responses. (Defendants' Declaration of James Carr, Exh. "E," at 3:1-3:11.)  Pursuant to the

14  parties' prior agreement, Mr. Loud has not provided a privilege log identifying those numerous

15  documents.

16  **VI.**

17  **Plaintiffs Have Discharged Their Meet-and-Confer Obligations**

18  Defendants close their discussion by claiming that Plaintiffs' "fail[ed] to meet and confer

19  in good faith." (Defendants' Part I.C.5, *supra*.)  In fact, Defendants' argument simply amounts to

20  a complaint that because Plaintiffs do not agree with certain positions adopted by Defendants, and

21  will not accede to those positions, there has been a failure to meet and confer.  Of course, trying

22  to agree and actually *reaching* agreement are two different things, and Defendants' claim of a

23  derogation in meet-and-confer duties is belied by the acknowledgment earlier in Defendants'

24  statement that "[t]he parties have engaged in continuing meet and confer" efforts. (Id. at Part

25  I.A.1, *supra*, and see additional references to the parties' meet-and-confer efforts, *passim*.)  While

26  it is unfortunate that the parties could not reach agreement, it was not for lack of trying.  The

27  parties engaged in extensive meet-and-confer efforts relative to the motions presented by both

28  sides, and have in fact been able to reach agreement on some items.  They were unable to come to

1   a full resolution, however, and are forced to bring certain matters to the attention of the Court.

2   There is nothing sinister in this, nor is that circumstance indicative of "bad faith" by either side.

3

4   DATED:       July 22, 2009              Respectfully submitted,

5                                          MASTAGNI, HOLSTEDT, AMICK,
                                           MILLER & JOHNSEN

6

7                                          By:  /s/ Philip R.A. Mastagni

8                                                PHILIP R.A. MASTAGNI
                                                 Attorneys for Defendants
9                                          CORRECTIONS USA, A CALIFORNIA
                                                 CORPORATION; CALIFORNIA
10                                         CORRECTIONAL PEACE OFFICERS
                                             ASSOCIATION, A CALIFORNIA
11                                         CORPORATION; JAMES BAIARDI, AN
                                           INDIVIDUAL; AND DONALD JOSEPH
12                                             BAUMANN, AN INDIVIDUAL

13  DATED:       July 22, 2009              WILKE, FLEURY, HOFFELT,
                                           GOULD & BIRNEY, LLP

14

15

16                                         By: /s/ Daniel L. Baxter
                                                 DANIEL L. BAXTER
17                                               Attorneys for Plaintiffs
                                              BRIAN DAWE; FLAT IRON
18                                         MOUNTAIN ASSOCIATION, LLC,
                                           FORMERLY KNOWN AS FLAT IRON
19                                             MOUNTAIN ASSOCIATES, A
                                                     PARTNERSHIP
20

21

22

23

24

25

26

27

28