1

2

3

4

5

6

7

IN THE UNITED STATES DISTRICT COURT

8

FOR THE EASTERN DISTRICT OF CALIFORNIA

9

10  BRIAN DAWE, individually and d/b/a
    FLAT IRON MOUNTAIN ASSOCIATION,
11  formerly known as Flat Iron Mountain
    Associates, a Partnership,
12
            Plaintiffs,                    CIV-S-07-1790 LKK EFB
13
        vs.
14
    CORRECTIONS USA, a California
15  Corporation; CALIFORNIA
    CORRECTIONAL PEACE OFFICERS
16  ASSOCIATION, a California Corporation;
    JAMES BAIARDI, an individual;
17  DONALD JOSEPH BAUMANN, an
    individual,,
18
            Defendants.                    ORDER
19
    _____/
20
    AND RELATED COUNTERCLAIMS
21  _____/

22  ////

23  ////

24  ////

25  ////

26  ////

1

On July 29, 2009, this court heard the respective discovery motions[1] of plaintiffs and defendants.[2]  Attorney Daniel Baxter appeared on behalf of plaintiffs; Phillip Mastagni appeared on behalf of defendants.  For the reasons set forth herein and on the record, the court enters the following order.

I.    Plaintiffs' Motion to Compel Further Responses to Production Requests, and for Further Document Production

Plaintiffs seek, in pertinent part, further responses and production of documents in response to their Document Requests Nos. 31 and 52, propounded by plaintiff Brian Dawe on November 7, 2007 (Requests for Production of Documents, Set No. One), upon defendant Correction USA ("CUSA").  These requests sought the following:

> • **No. 31**: All documents reflecting communications by any CUSA representative to any other person or entity regarding Brian Dawe, Richard Loud, or Gary Harkins in relation to the claims at issue in this lawsuit.

> • **No. 52**: All documents evidencing any investigation of Brian Dawe, Richard Loud, or Gary Harkins by or at the behest of CUSA or CCPOA.

Defendants served their initial responses on December 20, 2007.  On April 23, 2008, pursuant to plaintiffs' motion to compel, the court issued an order which found these requests relevant to claims and defenses in this action, and directed defendants to respond to them fully. Dckt. No. 106, at 20.  On April 28, 2009, pursuant to a subsequent motion filed by plaintiffs, the court directed defendants' counsel to serve upon plaintiffs' counsel written certification that defendants had conducted a diligent search and produced all responsive documents within their custody and control.  The order further provided that, "[t]his certification shall include, when pertinent, reference to each responsive document, including Bates-stamped page numbers."

---

[1]  *See* Original Notices of Motions, Dckt. Nos. 172 and 181, consolidated and rescheduled several times, ultimately by a single amended motion, Dckt. No. 200; *see also* Jt. Stmts., Dckt. Nos. 203, 211.

[2]  For present purposes, the court does not further designate the parties based on their cross- and counter- pleadings.

1  Dckt. No. 173, at 2-4.

2  On May 21, 2009, defendants served an "Amended Certification of Responses to Request

3  for Production of Documents, Set One."  In response to Request Nos. 31 and 52, defendants'

4  certification broadly referenced every document produced by CUSA, as follows:

5  The responding party certifies, that after a diligent search, the responding party
   has produced all documents in the responding party's possession, control, and/or
6  custody. CUSA000001-CUSA 031456.

7  Dckt. No. 211 at 5.

8  Plaintiffs seek an order of this court compelling defendants to particularize this

9  certification.  Plaintiffs assert that defendants' current certification violates this court's April 28,

10 2009 order, and "affirmatively stymies Plaintiffs' efforts to ensure that its discovery efforts have

11 been satisfied."  Dckt. No. 211, at 6.  Defendants respond that their certification complies with

12 the court's order, given the "extreme breadth" of the requests and the fact that all documents

13 produced by CUSA are indeed responsive to the requests as framed.  *Id.* at 16-17.

14 The court's April 28, 2009 order was intended to ensure, and to provide assurances to

15 plaintiffs, that defendants had produced all documents responsive to plaintiffs' requests and, if

16 necessary, to provide a basis for challenging the later introduction of evidence not previously

17 disclosed through the discovery process.  The same principles govern plaintiffs' production of

18 documents to defendants.  The court's additional requirement – that defendants cite to

19 Bates-stamped page numbers "when pertinent" – was intended to reflect the court's statement at

20 the April 1, 2009 hearing that a clear record would advance the interests of *all* parties should

21 production later be challenged.[3]  *See*, e.g., Transcript of April 1, 2009 Hearing, Dckt. No. 170, at

22 8-10.

23 _____

24 [3]  For example, the court stated:  "[L]aw firms have different ways of doing this.  I [had]
   assumed that you took all of the documents that you've gone through and that you have
25 organized them in some way and Bates stamped them so that you have records of
   what it is that you've made available. . . . I'll leave it to you to figure out how you'll preserve
26 your records and organize your records in a way where you can show later that you've produced
   what you say you produced."  Transcript (Apr. 1, 2009), Dckt. No. 170, at 8,10.

The court has given due consideration to the parties' respective positions, as addressed at the hearing on this matter, and finds that defendants' certification in response to Request Nos. 31 and 52 is adequate. While the certification is broad, so are the requests. The court agrees with defendants that to require greater particularity at this time would reveal defendants' assessment of the relative importance of the various documents and thus defendants' litigation strategy, impinging on work product.

Accordingly, plaintiffs' motion to compel defendants' further responses and production of documents in response to Plaintiffs' Requests for Production of Documents, Nos. 31 and 52, is denied.

II.     Plaintiffs' Motion for Court Order to Prevent Spoilation of Evidence

Plaintiffs seek an order of this court requiring defendants to preserve and maintain all recordings and other memorializations of meetings convened by CUSA and CCPOA; requiring defendants to verify that no such items have been or will be destroyed, discarded, or altered during the pendency of this litigation; authorizing plaintiffs' inspection of audio and other recordings moved on April 21, 2009; and providing a mechanism for seeking sanctions in the event such order is violated. For the following reasons, this motion will be denied.

This motion was precipitated by the following. On April 18, 2009, CCPOA held a State Board meeting at the Red Lion Inn in Bakersfield, California. At that meeting, Donald Baumann, CCPOA Chapter President and State Board Member, made a motion ("resolution"), which passed (but was later amended), that endorsed the destruction of audio recordings of CCPOA meetings after approval of the written minutes. Thereafter, on April 21, 2009, CCPOA Chief Operating Officer (and General Counsel) David Sanders and CCPOA State Secretary Perry Speth moved CCPOA recordings from one warehouse, not controlled by CCPOA, to another warehouse that is controlled by CCPOA. The move was witnessed and assisted by Steve Fournier, a CCPOA member who was present at the April 18 meeting, and who managed storage at the first warehouse. Fournier states that he thereafter attended a meeting on April 25, 2009, of

1   retired correctional officers in Sacramento, where he was told by a third party that Sanders and

2   Speth had stated they were directed to destroy the recordings. *See* Fournier Decl, ¶¶ 4-9. This

3   hearsay led to plaintiffs' concern that defendants had destroyed, or intended to destroy, evidence

4   relevant to this litigation.

5          Defendants have responded, with several supporting declarations, stating that the primary

6   purpose of the April 21, 2009 motion was to protect union members from disclosure of private

7   grievances, and was prospective only. Sanders Decl., ¶¶ 10-11; Baumann Decl., ¶ 15.

8   Moreover, in response to the instant motion, CCPOA passed an amended resolution on July 13,

9   2009, at CCPOA's next regularly scheduled meeting, that expressly requires CCPOA to secure

10  and maintain the recordings of all its Board meetings, and to release no recordings unless

11  directed to do so by court order or a 3/4 majority vote of the Board. Sanders Decl., ¶ 39 and Ex.

12  "E" thereto. In addition, defendants state that the recordings were moved for the purpose of

13  bringing all recordings within CCPOA's control in order to conduct required discovery.

14  Pursuant to the declarations of Sanders and CCPOA employee Steven Barefoot, defendants state

15  that they spent over 90 hours listening to every recording, which date from the 1980s, in order to

16  respond fully and accurately to all of plaintiffs' discovery requests, thus providing all references

17  to CUSA, Dawe, Harkins, and Loud. Defendants represent that no recordings have been

18  destroyed, and all will remain secure pending resolution of this litigation.

19         At the hearing on this motion, the parties addressed the impact of CCPOA's new

20  resolution requiring a court order for further disclosure of responsive material. While plaintiffs

21  contend, appropriately, that they should not be required to obtain a court order to obtain

22  responsive, relevant discovery, defendants maintain that all nonprivileged responsive

23  information has already been disclosed. Defendants seek to avoid again going through every

24  recording since the 1980s, most of which are "totally irrelevant, [] involve privacy of third

25  parties, [] union grievances, [and] [] privileges of litigation, and they have nothing to do with this

26  case." Transcript of July 29, 2009 Hearing (hereafter, "Transcript"), Dckt. No. 224, at 26. As

this matter is not squarely presented to the court as a discovery dispute, the court does not reach it.  As the court stated at the hearing on this matter:

> I'm simply going to direct you -- both of you to comply with the Federal Rules of Civil Procedure as to preservation of evidence as well as discovery.  If there's an appropriate discovery request that's submitted or has been submitted for the recordings, then you'll need to respond to that request.  And if there is a proper basis for a privilege, you'll have to prepare a privilege log and be prepared to defend the assertion of the privilege.

Transcript, at 25.

Rather, as the court found at the hearing on this matter, passage of CCPOA's amended resolution, coupled with defendants' representation that no information has been destroyed, or will be destroyed during the pendency of this litigation, renders moot plaintiff's spoilation concerns.   Accordingly, plaintiffs' motion for a court order to prevent spoilation of evidence is denied.

III.    Defendants' Motion to Compel Further Responses to Production Requests, and for Further Document Production

A.  Brian Dawe

Defendants challenge plaintiff Dawe's responses to CUSA's Requests for Production, Sets One and Two.  Dawe provided responses to Set One on July 28, 2008, and to Set Two on February 25, 2009; Dawe then provided supplemental responses and production on June 12, 2009, including tax filings and other financial documents previously withheld on privacy grounds.  Defendants challenge Dawe's objections based on irrelevance and privilege, without providing a privilege log; and Dawe's failure to disclose responsive information from other organizations with which Dawe is affiliated – specifically, American Correctional Officer ("ACO"), which is a d/b/a of Dawe's, and American Correctional Officer Intelligence Network ("ACOIN"), for which, plaintiffs' counsel surmises, Dawe may be the executive director

////

////

pursuant to an independent contract.[4]  Defendants assert that these organizations have responsive

information, as demonstrated by CUSA's own production, in response to Dawe's discovery

requests, of Dawe's e-mails to ACO and ACOIN.

Plaintiffs contest each of these challenges, relying on the parties' agreement that no

privilege log would be required for documents withheld on the basis of attorney-client privilege

or work product doctrine; and asserting that none of the disputed discovery requests seek

information relative to ACO or ACOIN.

For the reasons stated on the record, the court granted defendants' motion in part, and

directed the parties as follows:

1.  Notwithstanding the parties' agreement to the contrary, from the date of the hearing

forward, any document withheld from discovery based on a claim of privilege, including

attorney-client privilege or work product doctrine, shall be specifically identified in a privilege

log that clearly sets forth the asserted basis for withholding the document.

2.  Defendants shall propound additional interrogatories and requests for production that

are precisely drafted to obtain all relevant information concerning ACO and ACOIN (e.g.,

including but not limited to their origin, purpose, structure and membership), as well as their

relationships and operating agreements with one another, Dawe, and/or Flat Iron Mountain

---

[4]   Plaintiffs' counsel explained at the hearing:

Flat Iron used to be a partnership.  It is now a Wyoming LLC. The principal of it
is essentially Brian Dawe.  ACOIN is a d/b/a/ of Flat Iron.  So essentially ACOIN
and Flat Iron can be viewed as one in the same.  We -- I do represent Flat Iron and
therefore I do represent ACOIN.  ACO is a separate entity.  ACO, I believe, is a
New York nonprofit organization.  It is not something that is run by Mr. Dawe.  I
believe he holds a position with ACO, but it is not his organization in the same
vein as ACOIN.  And again, I don't represent ACO. . . . [D]on't quote me on this,
but I think he's executive director in some capacity of ACO. . . . [H]e is not the
keeper of the documents.  It's not his organization.  He -- I believe he has an
independent contractor relationship so his position, which again I think is
executive director, is pursuant to an independent contract.

Transcript, at 41-42.

1   Associates LLC.[5]

2       3.  Dawe shall, within 20 days after service of these further discovery requests, respond

3   fully to the requests, and certify that he has produced, pursuant to a reasonable and diligent

4   search, all responsive documents within his possession, custody or control.

5      B.  <u>GARY HARKINS</u>

6         1.  <u>Requests for Production, Including Laptop Inspection</u>

7      Defendants seek further responses and production from Gary Harkin, including

8   inspection of the laptop computer currently in his possession.  Harkin is a defendant (former

9   "officer, director and/or agent" of CUSA) and third-party plaintiff, alleging counterclaims

10   against CUSA and Baiardi.  *See* Dckt. No. 204-3, at 76-81.

11      While the ownership of the computer is not presently at issue before this court, plaintiffs

12   explain that "Mr. Harkins initially purchased the computer in December of 2005 on his own

13   dime, and Defendant CUSA subsequently reimbursed him (in April 2006) for the acquisition

14   since Mr. Harkins occasionally used the computer in connection with his work on behalf of

15   CUSA (specifically, Mr. Harkins used the computer in part for CUSA business from April 2006

16   to September 11, 2006).  After Mr. Harkins discontinued performing work for CUSA, he

17   reimbursed CUSA for the full initial payment amount. []" Jt. Stmt., Dckt. No. 203, at 23.

18      Defendants seek to inspect the computer and its contents pursuant their Request for

19   Production, Set Three, served upon Gary Harkins.  At issue are Request Nos. 130-136,[6] to which

20

21       [5]  The court will duly consider the reasonable request of any party for leave to serve additional interrogatories beyond the 25 authorized by Fed. R. Civ. P. 33(a)(1).

22

23       [6]  Defendants' Request No. 130 provides: "Please produce for forensic inspection and examination the Laptop Computer described above, referenced and identified in your letter of September 11, 2006, which is attached thereto as Attachment A."

24   Defendants' Request No. 131 seeks "in a reasonably usable electronic format . . . all electronically stored information with metadata intact contained on the laptop computer. . . ."

25   Defendants' Request No. 132 seeks "any and all documents that evidence, reflect, reference and/or relate to said laptop computer. . . ."

26   Defendants' Request No. 133 seeks "any and all documents that evidence, reflect, reference and/or relate to your personal ownership of said laptop computer, which is described,

1  Harkins objected.[7]  Defendants maintain that the computer contains information relevant to this

2  litigation, despite Harkins' declaration that he has produced all responsive, nonprivileged,

3  information.  However, it is defendants' (CUSA's) position that information remains on the

4  computer relative to Harkins' alleged surreptitious trademarking of the CUSA name and logo,

5  and relative to an alleged conspiracy, dominated by plaintiff Dawe, his wife, and Flat Iron, to

6  take over CUSA and convert it from a nonprofit, to a for-profit, entity.  *See, e.g.*, Carr Decl.,

7  Dckt. No. 204, and attached exhibits.

8      Plaintiffs respond asserting that "[t]he vast majority of any data on the computer has no

9  relation to Defendants or this litigation, and production of the computer would result in a

10  significant disclosure of personal information of Mr. Harkins and his family."  Moreover,

11  plaintiffs assert that Mr. Harkins has produced all responsive documents *except* "(a) the

12  documents listed in Mr. Harkins' privilege log [addressed *infra*]; (b) the documents containing

13  attorney-client communications and attorney work product [addressed supra regarding necessity

14  of providing a privilege log for documents withheld after the July 29, 2009 hearing]; and (c)

15  documents responsive to the categories for which Mr. Harkins specifically responded that he

16  _____

17  referenced and identified in your letter of September 11, 2006 . . . ."
        Defendants' Request No. 134 seeks "any and all documents that evidence, reflect,
18  reference and/or relate and/or identify to the purchase of said laptop computer. . . ."
        Defendants' Request No. 135 seeks "any and all documents that evidence, reflect,
19  reference and/or relate and/or identify [] the purchase of any and all upgrades for said laptop
    computer. . . ."
20      Defendants' Request No. 136 seeks "any and all documents that evidence, reflect,
    reference and/or relate and/or identify [] the reimbursements that you claim you received from
21  CUSA related to said laptop computer. . . ."

22      [7]  Harkins' responses to the disputed requests include his statement that he would not
    produce the computer because the request is overbroad, unduly burdensome, oppressive,
23  harassing, irrelevant, etc. (Response to Request No. 130)), and based on his own privacy rights
    and the privacy rights of third parties (Response to Request No. 131); that Harkins would not
24  disclose any related documents because they are in the possession of CUSA (Response to
    Request Nos. 131-136), and because "subject to privilege . . . including but not limited to
25  attorney-client privilege and work product doctrine"  (Response to Request Nos. 133-136), but
    that Harkin would nonetheless "comply with the unobjectionable portion of this request to the
26  extent that responding party is in possession, custody, and control of non-privileged responsive
    documents" (Response to Request Nos. 133-136).

1  would not produce responsive documents [addressed presently]."  Jt. Stmt., Dckt. No. 203, at 23-

2  24; Harkins Decl., at 2.

3          For the reasons stated at the hearing, and set forth more fully herein, the court grants

4  defendants' motion to compel inspection of the computer and its electronically stored

5  information ("ESI"), including metadata, subject to defendants bearing the initial costs

6  associated with retaining a forensic computer expert, and subject to plaintiffs' threshold review

7  of the information and data in order to identify privileged information and prepare a privilege

8  log.  However, if the inspection demonstrates that relevant, nonprivileged information has been

9  improperly withheld, defendants may move the court for an order shifting some or all of the

10  costs of inspection to plaintiffs.

11          The court is persuaded that relevant information, not previously disclosed, may be

12  obtained pursuant to inspection of the computer, including but not limited to documents and

13  communications contained therein.  *See* Fed. R. Civ. P. 26(b)(1) ("[p]arties may obtain discovery

14  regarding any nonprivileged matter that is relevant to any party's claim or defense"),[8] Fed. R.

15  Civ. P. 34(a)(1)(A), (b)(2)(E) (discoverable information includes electronically stored

16  information).[9]  Most persuasive is the level of contention and distrust that permeates this

17  litigation, and Harkins' adamant refusal to permit even a limited inspection of the computer.

18  ////

19

20          [8]  Fed. R. Civ. P. 26(b)(1) provides in full: "Unless otherwise limited by court order, the
    scope of discovery is as follows:  Parties may obtain discovery regarding any nonprivileged
21  matter that is relevant to any party's claim or defense--including the existence, description,
    nature, custody, condition, and location of any documents or other tangible things and the
22  identity and location of persons who know of any discoverable matter.  For good cause, the court
    may order discovery of any matter relevant to the subject matter involved in the action.  Relevant
23  information need not be admissible at the trial if the discovery appears reasonably calculated to
    lead to the discovery of admissible evidence.  All discovery is subject to the limitations imposed
24  by Rule 26(b)(2)(C)."

25          [9]  "Rule 34(a)(1) is expansive and includes any type of information that is stored
    electronically."  Advisory Notes to 2006 Amendments, Rule 34.  "Rule 34 applies to information
26  that is fixed in a tangible form and to information that is stored in a medium from which it can be
    retrieved and examined."  *Id.*

Also persuasive is defendants' representation that plaintiff Loud's computer had been "forensically cleaned" prior to defendants' inspection.  Transcript, at 59.  Inspection intended to reveal the computer's metadata is particularly important here, as it will likely include information that may demonstrate whether there has been any transfer or deletion of information, or other efforts to minimize, hinder or prevent access to information; and should provide a record of all sites that have been accessed.

As with other forms of discovery, the inspection and production of electronically stored information remains subject to considerations of burden, expense, and intrusiveness.  *See* Fed. R. Civ. P. 26(b)(2), 26(c).  Balancing these factors, the court concludes that defendants should initially bear the costs of inspection and retaining the forensic computer expert.  However, this allocation should be subject to a motion by defendants to shift some or all of these expenses in the event the inspection demonstrates that relevant, nonprivileged, information has been unreasonably withheld.  The balancing of the parties' respective interests also requires that plaintiffs be accorded, in the first instance, the opportunity to review the expert's data in order to identify any privileged information and to prepare a privilege log specifying what information plaintiffs seek to withhold, and on what basis.  The expert shall verify by separate affidavit that plaintiffs' privilege log accurately identifies the information sought to be withheld.  The expert shall then disclose to defendants all remaining information.

The parties shall agree upon the date, time, and place of inspection, and are free to prepare, and stipulate to, a protective order pursuant to which the expert's search will be conducted and the resulting information shared among the parties, including deadlines. Following inspection of the subject computer, Mr. Harkin shall, contemporaneously with serving his privilege log relative to the inspection, serve upon defendants his further supplemental responses and any related production responsive to defendants' Request for Production, Set Three, Request Nos. 130-136.

////

2. <u>Harkins' Privilege Log</u>

Defendants challenge the following privilege log provided by Mr. Harkins which, as amended, provides in full:

| DATE | DESCRIPTION | AUTHOR | PRIVILEGES |
|------|-------------|--------|------------|
| 8/21/06 | Email exchange between Gary Harkins and attorney Barry Peek, with prior email exchange between Mr. Harkins and Richard Loud (cc to Mr. Peek) re issues to address with corporate and employment attorneys and advice provided by California corporate attorney re. removal and replacement of Board of Directors' members. | Gary Harkins/ Richard Loud | Attorney-client Privilege |
| 9/26/06 | Email to Richard Loud and Brian Dawe re information provided by attorney related to potential claims by and against CUSA and representatives thereof | Gary Harkins | Attorney-client Privilege |

*See* Carr Decl., Ex. D, Dckt. No. 204-4, at 3; and August 19, 2009 letter to the court from plaintiffs' counsel.[10]

Defendants contend that attorney-client privilege does not protect communications between parties, even if an attorney is "copied," and even if the communications include legal advice; they argue that the disclosure constitutes a waiver of any privilege that may originally have existed between attorney and client.  Plaintiffs respond that these documents are privileged because they transmit information provided by attorneys who have been jointly consulted regarding possible litigation by and against CUSA.

The court has reviewed each of these documents *in camera*.  California privilege law guides the court's analysis in this diversity litigation.  *See, e.g., First Pacific Networks, Inc. v.*

---

[10]  The description of the first matter reflects the amended version submitted to the court by plaintiffs' counsel on August 19, 2009; the letter accompanying the amendment states that a copy of the revised privilege log was served on opposing counsel.  As previously worded, the description provided:

Email exchange between Gary Hawkins and Richard Loud (cc to attorney Barry Peck) re issues to address with corporate and employment attorneys and advice provided by California corporate attorney re removal and replacement of Board of Directors' members.

*Atlantic Mutual Ins. Co.*, 163 F.R.D. 576, 576  (N.D. Cal. 1995).[11]  Privileges under California law are narrowly construed because they prevent the admission of relevant and otherwise admissible evidence.  *People v. Sinohui*, 28 Cal.4th 205, 212 (2004).  Communications between a lawyer and client which are intended to be confidential are protected from disclosure pursuant to the attorney-client privilege.[12]

The first privilege log entry is a four-message e-mail string that is fairly described by the privilege log.  The initial (earliest in time/last in string) message, from Loud to Harkins, sets forth several questions to be asked, respectively, of a "corporate attorney" and an "employment attorney."  The message is a communication between parties, does not contain legal advice, and is not subject to attorney-client privilege.

The second message, from Harkins to Loud, with a "cc" to Barry Peek (described to the court as "another lawyer in this case," Transcript, at 62, recounts Harkins' discussion "with Mr. May, a ca corporate attorney," and the legal advice conveyed therein.  This, again, is a communication among parties.  While the subject information was clearly protected when

---

[11]  Federal courts sitting in diversity look to the law of the forum state in making a choice of law determination, *Klaxon Co. v. Stentor Electric Manufacturing Co.*, 313 U.S. 487, 496 (1941); *Theme Promotions, Inc. v. News America Marketing FSI*, 546 F.3d 991, 1007 (9th Cir. 2008), including privileges for which state law supplies an element of a claim or defense, Fed. R. Evid. 501; *In re Geothermal Resources Intern., Inc.*, 93 F.3d 648, 653, n. 4 (9th Cir. 1996).

[12]  Cal. Evid. Code § 954 provides in pertinent part: "Subject to Section 912 (waiver of privilege) . . . the client, whether or not a party, has a privilege to refuse to disclose, and to prevent another from disclosing, a confidential communication between client and lawyer . . . ."
Cal. Evid. Code § 952 defines "confidential communication between client and lawyer" as "information transmitted between a client and his or her lawyer in the course of that relationship and in confidence by a means which, so far as the client is aware, discloses the information to no third persons other than those who are present to further the interest of the client in the consultation or those to whom disclosure is reasonably necessary for the transmission of the information or the accomplishment of the purpose for which the lawyer is consulted, and includes a legal opinion formed and the advice given by the lawyer in the course of that relationship."
Cal. Evid. Code § 912 provides that the right to claim a privilege is waived "with respect to a communication protected by the privilege if any holder of the privilege, without coercion, has disclosed a significant part of the communication or has consented to disclosure made by anyone."

1  conveyed by "Mr. May" to Harkins, Harkin's communication (in which he transmits that

2  information) to third parties Dawe and Loud, notwithstanding that the information was

3  simultaneously "cc'd" to attorney Peek, has not been shown to be a privileged communication.

4  *See, e.g., United States v. ChevronTexaco Corp.*, 241 F. Supp.2d 1065, 1075 (N.D. Cal. 2002)

5  ("[t]he mere fact that outside counsel was copied with the e-mail will not shield communications

6  not made for the purpose of securing legal advice").

7          The court need not, however, reach these issues since the initial messages in the e-mail

8  string were, essentially, "attachments" to the final message between client and attorney.  The

9  third message is a single question posed by Peek to Harkins, concerning the advice given by Mr.

10 May, while the fourth and last (most recent in time/first in string) e-mail message is Harkins'

11 response to Peek, responding to the question.  These last two messages are clearly protected by

12 attorney-client privilege, and while the application of privileges to email communications

13 remains an evolving area of the law, it appears that the current weight of authority favors

14 examination of the most recent communication as the means for characterizing the entire e-mail

15 string.

16         As the court found in *United States v. ChevronTexaco Corp.*, 241 F.Supp.2d at  1075, n.

17 6: "Each e-mail /communication consists of the text of the sender's message as well as all of the

18 prior e-mails that are attached to it.  Therefore, [] assertion that each separate e-mail stands as an

19 independent communication is inaccurate.  What is communicated with each e-mail is the text of

20 the e-mail and all the e-mails forwarded along with it.  [However,] [i]f an e-mail with otherwise

21 privileged attachments is sent to a third party, . . . the privilege [is lost] with respect to that

22 e-mail and all of the attached e-mails."  *See also Muro v. Target Corp.*,  250 F.R.D. 350, 363

23 (N.D. Ill. 2007) (citing *ChevronTexaco*, and finding that Fed. R. Civ. P. Rule 26(b)(5)(A) does

24 not require separate itemization of e-mails in a privilege log.  The court reasoned: "As *Upjohn*

25 *Co. v. United States* makes clear, the fact that non-privileged information was communicated to

26 an attorney may be privileged, even if the underlying information remains unprotected.  449 U.S.

383, 395-96 [](1981)).  As applied in the e-mail discovery context, the court understands *Upjohn* to mean that even though one e-mail is not privileged, a second e-mail which forwards that prior e-mail to counsel might be privileged in its entirety.  In this respect, the forwarded material is similar to prior conversations or documents that are quoted verbatim in a letter to a party's attorney."  *Id.* (fn. omitted).

Pursuant to these authorities, the court concludes that the first entry in Harkin's privilege log is indeed privileged and should remain confidential.

The second entry, also fairly described by the privilege log, is a single e-mail message from Gary Harkins, to Brian Dawe and Richard Loud, repeating legal advice Harkins received from his attorney.  The legal information is specific to Harkins, even to the possible detriment of Dawe and Loud.  While the information contained therein was clearly protected by the attorney-client privilege when transmitted from Harkins' attorney to Harkins, the essential question is whether Harkins waived the privilege by transmitting it to third parties Dawe and Loud.

Plaintiffs argue that a "joint defense" privilege should apply, but fail to cite any authority, do not identify the lawyer(s) consulted, nor demonstrate the absence of adverse interests among these parties sharing the information in this complex litigation.  However, "[t]here is no statute providing for a common interest privilege in California.  To the extent there exists a common interest doctrine in this state, it is based generally upon waiver analysis or specifically upon interpretation of the provisions of sections 952 [defining confidential communication between client and lawyer] and 912, subdivision (d) [privilege not waived if disclosure is reasonably necessary to accomplish the purpose for which the lawyer was consulted].  California Evidence Code section 962 recognizes that a "joint client" privilege may apply to "two or more clients have retained or consulted a lawyer upon a matter of common interest," but the statute is intended to emphasize that no such client "nor the successor in interest of any of them, may claim a privilege under this article as to a communication made in the course of that relationship when such communication is offered in a civil proceeding between one of such clients (or his

1  successor in interest) and another of such clients (or his successor in interest)."  Cal. Evid. Code

2  § 962.  Thus, parties may share privileged information when it furthers the attorney-client

3  relationship.  But sharing the information destroys the privilege where the parties simply have

4  "overlapping interests."  *Roush v. Seagate Technology, LLC,* 150 Cal.App.4th 210, 223-224 (6th

5  Dist. 2007) (citations omitted).  "An expectation of confidentiality . . . is not enough to avoid

6  waiver. "  *OXY Resources California LLC v. Superior Court*, 115 Cal.App.4th 874, 889, 891 (1st

7  Dist. 2004) (emphasis added).

8         The "common interest privilege" was addressed by Magistrate Judge Hollows in *DeFazio*

9  *v. Hollister, Inc.*, 2008 WL 4952481, *1-2 (E.D. Cal. 2008), which is instructive here.

10             Plaintiff has provided citations to a number of cases to support his argument for
          protection of communications between co-plaintiffs in this case.  Most of the cited
11             cases involve situations where the attorneys were present during the allegedly
          protected communications.  *See United States v. Bergonzi*, 216 F.R.D. 487, 496
12             (N.D.Cal.2003) (acknowledging that attorneys and clients working together can
          exchange information among themselves without waiving the privilege); *Imperial*
13             *Corporation of America v. Shields,* 179 F.R.D. 286, 288 (S.D. Cal. 1998) (noting
          communications at issue were between attorneys and creditors' committee);
14             *Avocent Redmond Corp. v. Rose Electronics, Inc.*, 516 F.Supp.2d 1199, 1202
          (W.D. Wash. 2007) (involving protection of communications between attorneys
15             and another party); *In re Mortgage & Realty Trust*, 212 B.R. 649, 651
          (Bankr.C.D.Cal.1997) (communication at issue was between individual and
16             attorneys); *Berger v. Seyfarth Shaw*, 2008 WL 4681834, *1 (N.D.Cal.2008)
          (meeting at issue between third party, defendants and attorneys).  *But see*
17             *Hewlett-Packard Co. v. Bausch & Lomb Inc.*, 115 F.R.D. 308 (N.D.Cal.1987)
          (finding common interest protection without discussing whether attorney present
18             at communications); *Nidec v. Victor Company of Japan*, 249 F.R.D. 575 (N.D.
          Cal. 2007) (not clear if attorney present but failing to find common interest
19             protection, and noting other courts' disagreement with Hewlett-Packard to extent
          that it protected commercial interest rather than legal advantage).

20
             Based on these aforementioned cases, the court finds that *the common interest*
21             *privilege does not extend to communications between co-plaintiffs where counsel*
          *is not present, or at the very least, where the specific conversations of the*
22             *co-parties at issue was not expressly directed by counsel*.

23  *DeFazio v. Hollister, Inc.*, *1-2 (emphasis added).

24         For these same reasons, Harkins waived the confidentiality of the information he

25  obtained from his attorney when he then conveyed that information to Dawe and Loud.  The

26  court concludes, therefore, that the second entry in Harkins' privilege log is not privileged.

16

1  Plaintiffs shall provide a copy of this e-mail to defendants within five days after this order is

2  filed.

3          C. Richard Loud

4          For the reasons stated on the record, plaintiffs were directed to produce, within two

5  weeks from the date of the hearing (or by August 12, 2009) all nonprivileged documents

6  responsive to defendants' discovery requests served upon Mr. Loud.  As to the documents

7  withheld, plaintiffs are required to provide a privilege log consistent with the instructions

8  provided in this order.

9  IV.    Parties' Respective Motions for Sanctions

10         The parties' respective requests for monetary sanctions are denied.  As the undersigned

11  stated at the hearing:

12         [N]ow as to sanctions, it brings me back to where I started this hearing this
           morning.  It's – the level of animosity in this case is truly dismaying.  If I were to
13         start imposing sanctions on these motions, everybody would end up being
           sanctioned. . . . I think the appropriate sanction here is for each of you to have to
14         go explain to your clients why they're being billed for all of this time in a
           discovery war rather than litigating this case.  So all requests for sanctions are
15         denied.

16  Transcript, at 65.

17  CONCLUSION

18         For the foregoing reasons, and pursuant to the terms set forth above, the parties'

19  respective motions for discovery and sanctions, consolidated in the amended motion at Docket

20  No. 200, are granted in part and denied in part.

21         SO ORDERED.

22  Dated:  October 1, 2009.

23                                          EDMUND F. BRENNAN
                                            UNITED STATES MAGISTRATE JUDGE
24

25

26