1

2

3

4

5

6

7                    UNITED STATES DISTRICT COURT

8              FOR THE EASTERN DISTRICT OF CALIFORNIA

9
    BRIAN DAWE; FLAT IRON
10  MOUNTAIN ASSOCIATES, LLC,
    formerly known as FLAT
11  IRON MOUNTAIN ASSOCIATES,
    a Partnership,
12
                                    NO. CIV. S-07-1790 LKK/EFB
13          Plaintiffs,

14      v.
                                    O R D E R
15  CORRECTIONS USA, a California
    Corporation; CALIFORNIA
16  CORRECTIONAL PEACE OFFICERS'
    ASSOCIATION, a California
17  Corporation; JAMES BAIARDI,
    an individual; DONALD JOSEPH
18  BAUMANN, an individual,

19          Defendants.
    _____/
20  AND CONSOLIDATED ACTIONS &
    RELATED COUNTERCLAIMS
21  _____/

22      This case concerns plaintiffs'[1] relationship to defendant

23  _____

24      [1] Gary Harkins is a third party defendant to the consolidated
    actions at issue in this motion. Harkins brings counterclaims
    against defendants, which are at issue in this motion. Further,
25  Harkins is represented by the same counsel as plaintiffs Brian Dawe
    and Flat Iron Mountain Associates, LLC. Throughout the briefs in
26  this case, all parties conflate Harkins's arguments with those of

                                    1

Corrections USA and the termination of that relationship. Plaintiffs bring claims concerning breach of contract and defamation arising out of their removal from service with Corrections USA. Defendants have moved for summary judgment on all claims. Additionally, with their reply, defendants filed a "motion for relief from mistake, oversight and omissions re: inadvertent failure to attach copies of deposition testimony transcripts, excerpts and full copies of an exhibit." All parties also filed motions to strike evidence. For the reasons described below, all motions are denied.

## I. BACKGROUND

Defendants moved for summary judgment on December 14, 2009. Plaintiffs filed an opposition on January 11, 2010. Along with their opposition, plaintiffs filed a motion to strike defendants' evidence. Defendants filed a reply brief in support of summary judgment on January 18, 2010. Along with their reply, defendants filed a motion for relief from mistake, oversight and omissions concerning their failure to properly attach exhibits to their summary judgment motion and a motion to strike plaintiffs' evidence. Plaintiffs filed objections to these motions and moved to strike evidence submitted with defendants' reply.

This order addresses the most recent dispute between these

the actual plaintiffs. Thus, to avoid confusion in this order, the court will refer to Harkins as a co-plaintiff, while nonetheless acknowledging that his status is actually that of a third-party defendant.

parties in this protracted litigation. Currently, defendants moved for summary judgment largely on inadmissible or unsupported "facts." The court has exerted significant time and energy to review these so-called facts in order to issue a ruling on defendants' motion.

The defects in defendants' presentation of facts are multi-faceted. As an initial matter, defendants submitted two banker's boxes of documents with its motion. Only a few of these documents were actual exhibits to their motion. Defendants also included full copies of some deposition transcripts with their exhibits. Such submissions turned out to be beneficial in that defendants excerpts of deposition testimony attached as exhibits to the motion were far from complete. A week before the hearing, defendant submitted more deposition transcripts to the court.[2] Further, defendants attached numerous documents produced in discovery as exhibits "authenticated" by defendants' counsel. Such authentication is clearly improper because defendant's counsel has failed to demonstrate any personal knowledge as to

---

[2] Defendants moved with their reply for relief from mistake, oversight, and omissions concerning their inadvertent failure to attach copies of deposition testimony transcripts, excerpts and full copies of an exhibit pursuant to Fed. R. Civ. P. 60. Section A of rule 60 applies to "a mistake arising from oversight or omission whenever one is found in a judgment, order, or other part of the record." Id. Section b, as relied upon by defendants, only applies to relief from a final judgment, order or proceeding. Id. Defendants are not entitled to relief under either of these sections. Moreover, defendants have provided no explanation as to why they waited a week after learning they failed to properly attach documents to their motion to provide the court with the corrected exhibits. For these reasons, the motion for relief from mistake, oversight, and omissions is denied.

the authenticity of these documents,[3] and therefore the court has not considered them in this motion. See Fed. R. Civ. P. 56(e)(2) ("A supporting or opposing affidavit must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated."); Fed. R. Evid. 901 ("The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims.").

Of the few documents which could actually be considered on summary judgment, the court faced the time consuming difficulty of separating fact from assertion or supposition. Most of defendants' so-called undisputed facts, where they were complete sentences, were based on evidence that is completely inapposite. For example, defendants' evidentiary basis for the "fact" that plaintiff Brian Dawe ("Dawe") refused to turn over Corrections USA ("CUSA") property to CUSA after his removal from CUSA was Dawe's testimony that he did not refuse to turn over any property to CUSA. Such misrepresentations of evidence pervade defendants' motion. See Fed. R. Civ. P. 11(b) ("By presenting to the court . . . a . . . written motion . . . an attorney . . . is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable

---

[3] The fact that they were produced in discovery hardly demonstrates that they are authentic.

under the circumstances . . . the . . . factual contentions have evidentiary support . . . .") Even more common, defendants would cite evidence wholly irrelevant to its "facts."

After the time-consuming review of defendants' facts presented as support to defendants' motion for summary judgment, only a few actual facts remain. Below, the court has listed all the facts which have some evidentiary basis. Where relevant, the court has included plaintiffs' evidence of factual disputes in footnotes. Accordingly, only the facts included in the statement below can be considered to determine whether defendants have met their initial burden under summary judgment. Due to the flaws in defendants' presentation of evidence, often these facts are disjointed and lack logical connections. Because these facts are limited, and because most of defendants' arguments for summary judgment rely on claims for which defendant bears the burden of proof, defendants failed to meet their initial burden under Fed. R. Civ. P. 56 as a moving party for most of their arguments. For the few arguments where plaintiffs bear the burden of proof, plaintiffs have established material factual disputes, which preclude summary judgment.

**A.    Introduction of Parties and Organizational Structure**

       **1.    CUSA/CCPOA**

Defendant Corrections USA ("CUSA") is a California non-profit mutual benefit corporation representing, advocating, and lobbying for the interests of publicly employed correctional officers in California and across the nation. It has individual

members and organizational members nationwide. Defendant California Correctional Peace Officers Association (CCPOA) is one of its organizational members. CCPOA is a California public correctional officers union and a California non-profit corporation.

Richard Loud ("Loud") was the former president, consultant, and former member of the board of directors of CUSA. Plaintiff Gary Harkins ("Harkins") was the former recording secretary, former member of the board of directors, and former privatization committee chairman of CUSA. Defendant Joseph Baumann ("Baumann") is the recording secretary and a member of the board of directors of CUSA, and is also an employee and board member of CCPOA. Defendant James Baiardi ("Baiardi") is the current chairman of CUSA, board of directors member of CUSA, and the president of the Florida Police Benevolent Association, Florida State Correctional Officers Chapter.

Plaintiff Brian Dawe ("Dawe") was a member of the CUSA board of directors from 1998 until July 20, 2006. Dawe was not an employee of CUSA. There is no employment contract pursuant to Exhibit A to the first amended complaint. Harkins was also not an employee. They have both admitted that they were not employees.[4] CUSA paid Richard Loud $5,500.00 per month while he

---

[4] Plaintiffs have presented evidence to dispute the contention of defendants that plaintiffs were not employees. See Varisco v. Gateway Engineers, Inc., 116 Cal. App. 4th 1099, 1103-04 (2008). Specifically, plaintiffs have demonstrated that a reasonable jury could find that they were employees given that CUSA treated plaintiffs as if they were employed by CUSA. For example, both were

1  served as CEO.

2      The contract upon which Dawe bases his claims for breach of

3  contract was not discussed by the board of directors of CUSA.[5]

4  Dawe's contracts with CUSA were for three years with no

5  guarantee of renewal. Accordingly, Dawe was not guaranteed a job

6  until he was seventy years old. Further, the contract contained

7  explicit language that it was not an employment contract. Dawe

8  received 1099 miscellaneous tax forms from CUSA, and never

9  received any W-2s income tax forms from CUSA.

10     Dawe lacked authority to enter contracts on behalf of CUSA.

11  Dawe's responsibilities included recruiting for CUSA and

12  educating the public and politicians. He would involve the media

13  on occasion. This involvement included frequent interviews by

14  organizations and newspapers concerning corrections issues. On

15  at least two occasions Dawe was contacted from abroad. Dawe

16  would speak at conventions, rallies, and protests. Dawe has also

17  spoken at the University of Minnesota law school and Yale

18  University. Dawe admits to having been a leading expert on

19  private prisons both domestically and internationally. Harkins

20  attended many of these events, but was rarely, if ever, a

21  speaker.

22  _____

23  suspended without pay.

24      [5] Plaintiffs have presented evidence that indicates that a
    contract need not be discussed by the board to be approved. Rather,
    there is evidence that Loud's signature was all that was necessary
25  to bind the board. Additionally, plaintiffs have presented evidence
    that indicates that the only reason the board did not discuss this
26  contract was because no CUSA board meeting took place.

## 2. ACO/ACOAI/ACOIN

Plaintiff Brian Dawe ("Dawe") was the executive director of American Correction Officers' Intelligence Network ("ACOIN") and American Correction Officers ("ACO")[6] ACO is the same organization as the American Correctional Officers Association Inc. ("ACOAI"). Harkins was the secretary of ACO. Vito Dagnello ("Dagnello") was one of the initial directors of ACOAI. As Executive Director, Dawe runs the day-to-day operations of ACO, ACOIN, ACOAI, and ACO/ACOIN. Defendant has tendered evidence that there is no difference between ACOIN and ACO.[7] ACO, ACOIN, and ACOAI receive mail at a post office box in Thayne, WY and Dawe conducts business for ACO out of his home in Thayne, WY.[8]

ACO was founded on January 16, 2007 at the founding meeting of ACO in Long Island, NY. Harkins was involved in the development of ACO. Harkins was also the recording secretary and initial director of ACOAI. ACO was incorporated in New York as a not-for-profit corporation on July 24, 2009. Dagnello testified that ACOIN is an arm of ACO.[9] Dagnello also testified that

---

[6] Plaintiffs have demonstrated a dispute as to whether ACO and ACOIN are the same organization. Specifically, plaintiffs contend they are separate organizations, and defendants contend that they are the same organization.

[7] Again, plaintiff's have demonstrated a dispute as to whether ACO and ACOIN are the same organization.

[8] Plaintiffs have presented evidence that ACO/ACOAI also has an address in Port Jefferson Station, NY.

[9] Plaintiffs have presented evidence that ACO and ACOIN were separate entities.

Dawe's signature on correspondence "Brian Dawe, Executive Director, ACO/ACOIN" indicates the position he holds for both organizations. Dawe recruits for ACO.

### 3. FIMA

Plaintiff Flat Iron Mountain Associates, LLC ("FIMA") became an LLC in October 2006, and Dawe makes decisions for FIMA. FIMA does not hold formal meetings, and has no by-laws. ACOIN is a doing business name for FIMA. FIMA is a partnership owned and controlled by Brian Dawe, his wife, Marilyn Dawe, and his daughter, Alyson Dawe. ACOIN is an arm of FIMA and does work for ACO.

### B. Alleged Bad Acts by Plaintiffs

### 1. Letter/Proposal

Dawe, Harkins, and Loud discussed a proposal "to take control of Corrections USA" and "keep the monies flowing from California."[10] Dawe, Harkins, and Loud met on August 10, 2006 at a hotel in Sacramento, CA, to discuss this proposal, and took several actions in furtherance of the proposal. One of Dawe's goals was to prevent an individual from seizing control of CUSA. He sought to achieve this goal by creating a more democratic process. He pursued this goal, in part, out of concern for his own livelihood.

---

[10] Plaintiffs have demonstrated a dispute concerning this statement. Specifically, they have presented evidence that Dawe clarified his quoted testimony to indicate that he was not trying to seize control, but rather to maintain control or prevent control from being seized. Dawe Dep. 346:15-21.

9

Dawe testified that he drafted a letter concerning a "plan to take over control of Corrections USA."[11] Dawe also testified that he discussed whether Corrections USA should pull out of California. Defendants have not presented evidence as to who was involved in these various discussions.

### 2. Bank Account

Dawe planned to have Dagnello move to replace Robert Dean ("Dean") and Mr. Martin as signatories on a West America bank account. Dawe's and Loud's names were added to the account in March 2006. Dean's and Martin's names were removed from the account in June 2006. Loud was subsequently replaced by Mr. Corcoran. Dawe intended to change the names on the account and actually did change the names.

Additionally, two signatures were required for CUSA checks over $1,000. On occasion, Dawe would sign a check for over $1,000 and then use a signature stamp for Loud's signature.

### 3. CUSA Logo

Dawe and Loud asked Harkins to trademark CUSA's name. CUSA's board was not informed of the actions to trademark CUSA's name.[12] On September 7, 2006, Harkins told CUSA's board that he owned the trademark of CUSA's name, even though he knew he did

---

[11] There is a dispute, as discussed above, as to whether plaintiffs sought to take control or simply to maintain control of CUSA.

[12] Plaintiffs have presented evidence that Dawe and Loud asked Harkins to trademark the CUSA because it should have been trademarked in 1998 and was not.

not really own the trademark. Dawe also told Harkins and Dean that Harkins owned the CUSA logo. Dawe mistakenly indicated on an email to Harkins that Harkins owned the CUSA name.

### 4. Timeshare

Dawe told Loud he could purchase a timeshare with CUSA's credit card. The purchase of the timeshare was not disclosed to the Board. Loud paid back the timeshare loan over 5 months, but did not pay interest for the timeshare loan, including, the interest charged to CUSA on the credit card used to purchase the timeshare.[13]

### 5. Van/SUV

CUSA's Board authorized Dawe and Loud to purchase a van for "about $24,000.00." However, Dawe and Loud bought an SUV and trailer for more than the amount the Board approved.[14]

### 6. Laptops

Dawe had a laptop, which was purchased by CUSA. Dawe testified that he was aware that the laptop was only to be used for CUSA purposes.[15]

Dawe also reimbursed Harkins with CUSA money for the

---

[13] Plaintiffs have presented evidence that the charge on the CUSA credit card was an advance on Loud's salary, and not a loan.

[14] Plaintiffs argue that there is no evidence that the board did not eventually approve the expense to purchase the SUV and trailer, but rather only that the expense of the SUV and trailer was greater than the amount the board initially approved.

[15] Plaintiffs have presented evidence that there is a dispute as to whether Dawe was prohibited from using the laptop for non-CUSA purposes.

purchase of a laptop and of a fax machine. Harkins told the CUSA
board that he would ship the laptop back to CUSA via FedEx after
his termination from CUSA.

### 7. Casino

Dawe made cash withdrawals from casino cash machines.[16]

### C. Collection of Dues Owed to CUSA by CCPOA

In 2006, Dawe wrote an email to Loud requesting that Loud
press CCPOA to pay CUSA dues that were owed to CUSA. CCPOA
contested the amount of dues owed to CUSA. Specifically, Dean
testified that Dawe and Loud sought $33,000 in dues, but Dean
had determined that CCPOA had already sent CUSA about half of
that amount.

### D. Audit of CUSA Financial Records

CUSA board of directors member, Mike Jimenez, requested
CUSA financial records from Dawe. On August 11, 2006, Board
Member Dagnello gave Dawe a letter stating: "Per the resolution
of the board of directors of CUSA dated August 11, 2006, you are
hereby directed to immediately deliver all financial books,
records, property and assets, specifically but not limited to,
membership lists, credit card, and inventory of property
belonging to CUSA. The board of directors directs that these
items be delivered to the law office of Nina Salarno-Ashford at
1400 Atwood Road, Auburn, California, 95603, no later than the

---

[16] Plaintiffs have presented evidence that these withdrawals
were to pay for incidentals related to CUSA meetings held in or
near casinos.

close of business on August 30th, 2006. In the alternative you are authorized to make arrangements for Gary Harkins to deliver the documents."

Dean testified that he began requesting documents from Dawe and Loud around January 2006.[17] Dean also indicated that Dawe and Loud stalled in their response to these requests. Further, Dean testified that when Dawe and Loud provided responses to his requests, they failed to completely answer his questions. On July 19, 2006, Dean received an email from Dawe, which indicated that Dawe was aware of Dean's demand concerning CUSA bills.

Harkins was sent by CUSA to Wyoming to collect documents in Dawe's possession for a financial audit. He was to bring these documents to California for the audit. He returned to California with some records, but did not immediately turn them over to CUSA because they needed to be photocopied. Harkins brought the records to Oregon, where they were photocopied. CUSA Board Member Robert Dean and Nina Salarno-Ashford met with Harkins in California after Harkins had picked up CUSA records from Dawe.

Prior to the submission of financial records from Dawe to CUSA, Dawe sought to have the Lincoln County Sheriff seize the records until CUSA appointed an independent auditor to conduct the audit. Attorney Barry Peak responded to inquiries by Jimenez requesting CUSA's financial records.

On September 29, 2006, CUSA and its Board of Directors

---

[17] Plaintiffs have presented testimony from Dawe that these requests were first made in late June or early July 2006.

filed a Petition for Writ of Mandamus against Dawe, Harkins, and
Loud, in Sacramento County Superior Court, Case No. 06CS01418,
to compel the inspection and return of CUSA business records,
accounting records, and for the return of all other CUSA
corporate property. On January 3, 2007, CUSA sent an email to
its members which stated, "Brian Dawe and Richard Loud . . .
desperately need your money to pay for their own personal legal
defense . . . ." Dawe solicited donations to fight the mandamus,
yet no donations were made for that purpose.[18]

### E. Emails Sent by Dawe to CUSA Members

Dawe has numerous email lists on his AOL email account,
which include over 6,000 email addresses of correctional
officers. Dawe sent Todd Delong a list of emails with which
Delong created a mail distribution list. Dawe claims that the
email contacts he acquired while working for CUSA since 1998
belong to him, and that he let CUSA use them.

Dawe sent a mass email to members of CUSA in California to
inform them the CCPOA committed some form of malfeasance. Dawe
emailed approximately 1500 people. Dawe sent out emails in
September 2006, before ACO existed, to CUSA members.

Dawe sent an email to everyone on his email list
challenging CUSA officials to take a polygraph test. Dawe also
sent a "'we the undersigned' document" to everyone on the list
sometime after September 30, 2006. CUSA's accountant, Bob

[18] Plaintiffs note that there is no testimony as to who Dawe
solicited for donations.

Underwood, sent a letter to members of CUSA's board of directors

after Dawe explained to Underwood what had happened around the

time of the audit. Dawe also sent a letter to Buffie McFayden.

**F.    Separation of Dawe from CUSA**

Also on August 11, 2006, Dawe and Loud were suspended at a

CUSA meeting by the CUSA board of directors. Harkins

investigated the contract between Dawe and CUSA. Harkins thought

that CUSA may be liable under the severance clause of this

contract and advocated that CUSA pay Dawe the money indicated in

the severance clause.

**G.    Separation of Harkins from CUSA**

On August 11, 2006, the CUSA Board of Directors voted that

Harkins was the chair of the restructure committee. At around

the same time, Harkins sent Nina Salarno-Ashford an email

indicating that she was the interim administrator.[19] Harkins was

"appointed" as a temporary interim administrator by the CUSA

Board, and he served at the pleasure of the Board of Directors.

Harkins was also appointed to the temporary interim

administrator position on August 11, 2006. He never received a

W-2 Tax Form from CUSA. Harkins testified that his arrangement

---

[19] Plaintiffs have presented evidence that demonstrates a
dispute as to who was the interim administrator as of August 11,
2006. Specifically, Harkins testified that he was the interim
administrator, and that he only sent Salarno-Ashford the email
indicating that she was the interim administrator because she
mistakenly believed that she was the interim administrator.

with CUSA was to sit on his butt and not do any work.[20] Harkins did not disclose an email from Dawe concerning protecting Dawe's livelihood to the CUSA board.

Harkins seconded a motion to remove himself as chairman of the CUSA restructuring committee after Dawe and Loud were suspended.[21]

## H. Post-Separation Facts

Harkins was not physically restrained by people affiliated with CUSA who were searching his bags for CUSA property at a hotel.[22] He was not touched. He was in a public lobby of a hotel.

Dawe consulted an attorney after he was suspended concerning whether he could challenge the CUSA board of directors under CUSA's by-laws and California corporate law.

After his termination, Harkins did not utilize any procedures of CUSA, if such procedures exist, to challenge his termination internally. Dawe similarly did not utilize any internal administrative procedures to challenge his

---

[20] Plaintiffs have presented evidence that these circumstances with CUSA only followed his indication that Dawe should be paid under the severance clause of his contract with CUSA.

[21] Plaintiffs have presented evidence that Harkins was not paid for his service as interim administrator.

[22] Plaintiffs have presented evidence that Harkins was confronted by two Sergeants-at-Arms who insisted on searching his luggage. Harkins testified that they stood "directly in [his] face, and that when [he] backed up a little bit, they came forward and closed that space up." Harkins also testified that he felt he could not go anywhere.

termination.[23] Harkins and Dawe also did not file any claims with a government agency concerning their terminations.

Since his separation with CUSA, Dawe has not sought employment with another organization. Rather, Dawe has worked to create his own businesses, including ACOIN and FIMA.

## II. STANDARDS

### A.    Fed. R. Civ. P. 56 Motion for Summary Judgment

Summary judgment is appropriate when there exists no genuine issue as to any material fact. Such circumstances entitle the moving party to judgment as a matter of law. Fed. R. Civ. P. 56(c); see also Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970); Secor Ltd. v. Cetus Corp., 51 F.3d 848, 853 (9th Cir. 1995). Under summary judgment practice, the moving party

> always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish the

---

[23] Plaintiffs have presented evidence that both Harkins and Dawe did not believe such procedures existed. Defendants have not provided any admissible evidence from which the court can ascertain whether CUSA had complaint procedures through which Harkins and Dawe could have challenged their terminations.

existence of a genuine issue of material fact. <u>Matsushita Elec.</u>
<u>Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 585-86 (1986);
<u>see also</u> <u>First Nat'l Bank of Ariz. v. Cities Serv. Co.</u>, 391 U.S.
253, 288-89 (1968); <u>Secor Ltd.</u>, 51 F.3d at 853. In doing so, the
opposing party may not rely upon the denials of its pleadings,
but must tender evidence of specific facts in the form of
affidavits and/or other admissible materials in support of its
contention that the dispute exists. Fed. R. Civ. P. 56(e); <u>see</u>
<u>also</u> <u>First Nat'l Bank</u>, 391 U.S. at 289. In evaluating the
evidence, the court draws all reasonable inferences from the
facts before it in favor of the opposing party. <u>Matsushita</u>, 475
U.S. at 587-88 (citing <u>United States v. Diebold, Inc.</u>, 369 U.S.
654, 655 (1962) (<u>per</u> <u>curiam</u>)); <u>County of Tuolumme v. Sonora</u>
<u>Cmty. Hosp.</u>, 236 F.3d 1148, 1154 (9th Cir. 2001). Nevertheless,
it is the opposing party's obligation to produce a factual
predicate as a basis for such inferences. <u>See</u> <u>Richards v.</u>
<u>Nielsen Freight Lines</u>, 810 F.2d 898, 902 (9th Cir. 1987). The
opposing party "must do more than simply show that there is some
metaphysical doubt as to the material facts . . . . Where the
record taken as a whole could not lead a rational trier of fact
to find for the nonmoving party, there is no 'genuine issue for
trial.'" <u>Matsushita</u>, 475 U.S. at 586-87 (citations omitted).

**B. Fed. R. Civ. P. 12(f) Motion to Strike**

Rule 12(f) authorizes the court to order stricken from any
pleading "any redundant, immaterial, impertinent, or scandalous
matter." A party may bring on a motion to strike within 20 days

after the filing of the pleading under attack.  The court, however, may make appropriate orders to strike under the rule at any time on its own initiative.  Thus, the court may consider and grant an untimely motion to strike where it seems proper to do so.  <u>See</u> 5A Wright and Miller, <u>Federal Practice and Procedure</u>: Civil 2d § 1380.

Motions to strike are generally viewed with disfavor, and will usually be denied unless the allegations in the pleading have no possible relation to the controversy, and may cause prejudice to one of the parties. <u>See</u> 5A C. Wright & A. Miller, <u>Federal Practice and Procedure</u>: Civil 2d § 1380;  <u>See also</u> <u>Hanna v. Lane</u>, 610 F. Supp. 32, 34 (N.D. Ill. 1985).  If the court is in doubt as to whether the challenged matter may raise an issue of fact or law, the motion to strike should be denied, leaving an assessment of the sufficiency of the allegations for adjudication on the merits. <u>See</u> 5A Wright & Miller, <u>supra</u>, at § 1380.

### III. ANALYSIS[24]

### A.    Claims for Which Defendants Bear the Burden of Proof[25]

### 1.    Whether Plaintiffs Have Unclean Hands

The affirmative defense of unclean hands "demands that a plaintiff act fairly in the matter for which he seeks a remedy." <u>Kendall-Jackson Winery, Ltd. v. Superior Court</u>, 76 Cal. App. 4th

---

[24] On May 20, 2009, this court held that California law applies to plaintiffs' complaint. Doc. No. 183.

[25] Defendants move for summary judgment on sexual harassment and/or sex discrimination. However, no such claims are in plaintiffs' verified first amended complaint. As such, the court disregards this argument.

970, 978 (1999). This defense applies "in legal as well as equitable actions." Id. Of particular importance in considering a motion is that whether "the doctrine of unclean hands applies is a question of fact." Id. In order to prove unclean hands, a defendant must show that plaintiff engaged in misconduct that directly relates to the claim(s) brought by plaintiff. Id. at 979.

Defendants argue that plaintiffs have unclean hands because of their involvement in a "plan" to take over CUSA and for various actions which demonstrate misuse of CUSA tangible and intellectual property. However, defendants have not met their initial burden of establishing undisputed evidence that plaintiffs engaged in any misconduct directly related to their claims. Specifically, they have not presented any evidence that any of the actions taken by plaintiffs was wrongful. For this reason, defendants' motion for summary judgment is denied as to all claims relying on the defense of unclean hands.

### 2. Whether Plaintiffs Dawe and FIMA's Contract With Defendants is Illegal

A number of defendants' arguments for summary judgment concern Dawe and FIMA's contract with defendants, that is attached to their first amended complaint as Exhibit A. This contract is related to Dawe's work for CUSA. Plaintiffs allege that this contracts was breached when defendants removed plaintiff Dawe from his roles within CUSA and/or failed to pay him for work performed. Defendants challenge that they cannot be

held liable under this contracts because the contract was unenforceable by virtue of violations involving corporate law and explicit or implied conflicts of interest. Specifically, defendants argue that the contract is unenforceable because it involved an ultra vires interested transaction. "[U]nder general contract rules, the burden of establishing a particular contract is illegal is on the party claiming the illegality." <u>In re Marriage of Iverson</u>, 11 Cal. App. 4th 1495, 1502 (1992) (citing <u>Fellom v. Adams</u>, 274 Cal. App. 2d 855, 863 (1969); other citation omitted). Defendants, however, have not presented any admissible evidence demonstrating this defense. Accordingly, defendants' motion for summary judgment of plaintiffs' breach of contract claims is denied. Because defendants argument for summary judgment on plaintiffs' claims for breach of the implied covenant of good faith and fair dealing also only concern the purported illegality of the contract, defendants's motion is also denied as to these claims.

### 3. Whether Plaintiffs Claims for Defamation[26] are Barred by California Privileges and Immunities

Dawe and Harkins both bring defamation claims based upon an email sent by defendants to CUSA membership indicating that they

---

[26] Defendants also seem to make some arguments under Fed. R. Civ. P. 12(b)(6) in that plaintiffs did not comply with <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544 (2007) in failing to identify all the alleged defamatory statements in their complaints. As an initial matter, these arguments are improper on a motion to dismiss under Fed. R. Civ. P. 56. Further, defamation is not a claim subject to heightened pleading standards under Fed. R. Civ. P. 9. Accordingly, even if the court were to address this procedurally improper argument, it would fail.

committed illegal and unethical acts. Defendants make several
arguments concerning these causes of action. Here, defendants
seek to assert privileges to all "supposedly defamatory
statements, including Exhibit E to the FAC and/or otherwise
alleged" by plaintiffs. However, defendants have only provided
evidence or analysis as to two statements: (1) an email dated
January 3, 2007, which was attached as Exhibit E to Dawe's and
FIMA's first amended complaint and (2) an email dated October 3,
2006, which was quoted in Harkins' amended crossclaim.
Plaintiffs have provided evidence of numerous other allegedly
defamatory statements made by defendants.  However, because
defendants have only presented arguments as to these two emails,
the court construes defendants's motion for summary judgment on
plaintiffs' defamation claims to be limited to their claims
insofar as they rise out of these two emails.

     First, defendants argue that the email is protected by the
absolute litigation privilege. The privilege "applies to any
publication required or permitted by law in the course of a
judicial proceeding to achieve the objects of the litigation,
even [if] the publication is made outside the courtroom and no
function of the court or its officers is involved." Rusheen v.
Cohen, 37 Cal. 4th 1048, 1057 (2006) (internal quotation
omitted). Specifically, "the privilege applies to any
communication (1) made [concerning] judicial or quasi-judicial
proceedings; (2) by litigants or other participants authorized
by law; (3) to achieve the objects of the litigation; and (4)

that have some connection or logical relation to the action."
Id. Accordingly, communications that bear some relation to
judicial proceedings are absolutely immune to liability in tort.
Id. (internal quotations omitted).

 Defendants contend that these emails are covered by the
absolute litigation privilege because they had filed a petition
for a writ of mandamus to compel plaintiffs to turn over CUSA
records and property on September 29, 2006. The January 3, 2007
email made numerous accusations about plaintiffs' misuse of CUSA
funds while in office as well as insinuations about Dawe being
an alcoholic. At the end of the email, CUSA stated that Dawe and
Loud "desperately need your money to pay for their own legal
defense." Apparently, defendants contend that this language
indicates that the email was sent to achieve the objects of the
litigation. This court has previously held that this "email does
not reference, even obliquely or inferentially, the writ of
mandamus action." May 20, 2009 Order, Doc. 183, p. 37 n. 14. The
court continued to state that other than having been sent
several months after the filing of the mandamus action, the
email otherwise appears to have no relationship to that action.
Id. Based on this reasoning, the court held that the email was
not protected under the Anti-SLAPP statute as it was not related
to "defendants' right to petition the courts." Id. Defendants
have not presented any evidence beyond the email that was
considered in this court's previous order as to the relationship
between the email and the mandamus action. Nor have defendants

presented any arguments as to why this court should reconsider its analysis of the email in its previous email. As an email which has no apparent relationship to the mandamus action, it does not appear to have been sent to achieve the objects of the mandamus action, defendants have not met their initial burden as to showing that they are entitled to the absolute litigation privilege with respect to this email.

The October 3, 2006 email was also sent to CUSA members. It is addressed to Harkins, and states that "You are a documented liar and thief. Your opinions of any act or decision of the Board of Directors or the Interim Administrator are irrelevant. You stole CUSA property and lied in the process. [¶] You have forfeited any and all rights or responsibilities you ever held in CUSA. Talk to the DA." This email bears even less of a connection to the mandamus action. The final line, "Talk to the DA," appears to concern litigation, but does not concern defendants' petition for a writ of mandamus actions - district attorneys are not involved in such actions. Accordingly, defendants have also not met their initial burden as to showing that they are entitled to the absolute litigation privilege in this email.

Second, defendants argue that the emails are protected by common interest privilege. This privilege applies where a communication is "made without malice, to a person interested therein, . . . by one who is also interested." Mamou v. Trendwest Resorts, Inc., 165 Cal App. 4th 686, 729 (2008)

(internal quotations omitted). Defendant bears the burden of proof as to both elements of this privilege. Id. Specifically, "the defendant bears the burden of showing in the first instance that there is no triable issue of fact as to either issue-that the statement was made on a privileged occasion, and that it was made 'without malice.'" Id. Malice is "a state of mind arising from hatred or ill will, evidencing a willingness to vex, annoy or injure another person." Id. (internal citation omitted). This "privilege is lost if the publication is motivated by hatred or ill will toward plaintiff . . . , or by any cause other than the desire to protect the interest for the protection of which the privilege is given . . . ." Id. quoting Agarwal v. Johnson 25 Cal. 3d 932, 944-945 (1979), abrogated on other grounds White v. Ultramar, Inc. 21 Cal. 4th 563, 574 n.4 (1999). While defendants likely have met their burden that the CUSA board shares a common interest with CUSA members as to misuse of CUSA funds, defendants have not provided sufficient evidence that these statements were not motivated by malice. For example, in the letter discussed above, defendants stated that Dawe was "falling off the wagon and padding his pocket" without providing any evidence as to Dawe abusing alcohol or narcotics. Specifically, in a statement that appears on its face to be malicious, defendants have not provided any evidence that such a statement was made without malice, including, but not limited to, testimony of the persons who made the allegedly defamatory statements. Moreover, even if defendants had met their burden to

evidence the absence of malice, malice raises a subjective

issue, which is not properly decided on summary judgment.

Accordingly, defendants have not met their burden as to this

defense.

Third, defendants argue that plaintiffs are public figures

or limited public figures, and therefore must prove

constitutional malice. Defendants "bear[] the burden of proving

the plaintiff's public figure status." Carr v. Forbes, Inc., 259

F.3d 273, 278 (4th Cir. 2001). There are two type of public

figures. "The first is the all purpose public figure who has

achiev[ed] such pervasive fame or notoriety that he becomes a

public figure for all purposes and in all contexts. The second .

. . is that of the limited purpose . . . public figure, an

individual who voluntarily injects himself or is drawn into a

particular public controversy and thereby becomes a public

figure for a limited range of issues." McGarry v. Univ. of San

Diego, 154 Cal. App. 4th 97, 113 (2007) (quoting Gertz v. Robert

Welch, Inc. 418 U.S. 323, 351,(1974)).

Here, defendants have presented no evidence that Harkins is

a public figure or a limited public figure. Rather, all they

have shown is that Harkins attended events on corrections

issues. However, defendants have met their initial burden as to

Dawe being at least a limited public figure in that he has

spoken at numerous events and was well-known expert or advocate

with respect to issues affecting correctional officers.

Nonetheless, while plaintiff bears the burden at trial to prove

constitutional malice, on summary judgment, defendants must

first show that there is no triable issue as to whether they

exhibited such malice in publishing allegedly defamatory

statements about Dawe. Specifically, defendants must show that

there is no triable fact as to whether they knew the statements

they made about Dawe were false or that they acted with reckless

disregard as to the truth of these statements. Id. at 114

(internal quotation omitted). "The test is a subjective test,

under which the defendant's actual belief concerning the

truthfulness of the publication is the crucial issue." Id.

(internal quotation omitted). Defendants, however, have

presented no evidence as to their subjective beliefs as to the

truthfulness of the publications they made. Thus, defendants

have not met their burden as moving party as to this argument as

well.

Fourth, defendants argue that the statements made were

true. However, as demonstrated above, defendants have not

provided evidence to support their claim that the statements

made were true. In particular, defendants have not provided

admissible evidence as to any undisputed facts of the content of

any of the statements plaintiffs allege were defamatory.

////

////

////

////

////

### B.   Claims for Which Plaintiffs Bear the Burden of Proof

#### 1.   Whether There is a Triable Fact as to Plaintiffs' Statuses as Employees of CUSA

Plaintiffs have demonstrated a triable question of fact as to whether they were employees of CUSA. While the contracts at issue indicate that they were not employees, CUSA's treatment of plaintiffs as if they were employees by, *inter alia*, suspending plaintiffs without pay, is sufficient evidence of a triable question of fact. See Varisco v. Gateway Science & Engineering, Inc., 116 Cal. App. 4th 1099, 1103-04 (2008). Thus, defendants' motion for summary judgment on this ground is denied.

#### 2.   Whether Harkins was Falsely Imprisoned

"The elements of a tortious claim of false imprisonment are: (1) the nonconsensual, intentional confinement of a person, (2) without lawful privilege, and (3) for an appreciable period of time, however brief." Lyons v. Fire Ins. Exchange, 161 Cal. App. 4th 880, 888 (2008) (internal quotation omitted). "A person is falsely imprisoned if he is wrongfully deprived of his freedom to leave a particular place by the conduct of another" regardless of whether the person is physically restrained. Schanafelt v. Seaboard Finance Co., 108 Cal. App. 2d 420, 422-23 (1951). In Schanafelt, the court held that defendant's parking a car such that plaintiffs' driveway was blocked, and they were unable to leave their home, may constitute the tort of false imprisonment depending on defendant's state of mind. Id. at 423. Here, the undisputed evidence is that Harkins was not physically

restrained by people affiliated with CUSA who were searching his
bags for CUSA property at a hotel. Specifically, Harkins was not
touched when approached in the lobby of a hotel. Plaintiffs have
provided the testimony of Harkins, where he stated that, after a
CUSA meeting, he was confronted by two Sergeants-at-Arms who
insisted on searching his luggage. They stood "directly in [his]
face, and that when [he] backed up a little bit, they came
forward and closed that space up." Harkins continued to say
that, "there really wasn't anywhere [he] could go unless [he]
wanted to go running through the lobby and leave [his] luggage
behind." While Harkins's testimony appears to indicate that he
was free to leave, and thereby would defeat a claim for false
imprisonment, Harkins argues that the statement about running
through the lobby was made sarcastically. Based on this
evidence, a reasonable jury could find that the actions of the
Sergeants-in-Arms were sufficient to confine Harkins without his
consent. Particularly, a jury could find that as a realistic
matter Harkins was not free to leave the area in the hotel
lobby. For this reason, defendants' motion for summary judgment
on this claim is also denied.

> **3. Whether Plaintiffs Have Demonstrated a Triable
> Issue as to Their Claims for Interference of
> Contract**

Defendants raised two arguments as to plaintiffs'
interference of contract claims. The first depends upon the
court granting summary judgment as to plaintiffs' defamation
claims. However, as discussed above, the court does not grant

summary judgment on those claims. The second argument is that there cannot be an interference of contract claim against a party to contract. While plaintiffs bear the burden of proof as to this claim, it need not be addressed because defendants' argument misconstrues plaintiffs' claims. Plaintiffs claims do not concern a contract to which they entered with defendants but rather contracts plaintiffs sought to enter with third parties. As defendants have not raised an argument relevant to plaintiffs' actual claims, their motion for summary judgment is denied as to plaintiffs' interference of contract claim.

### C.   Motions to Strike

Plaintiffs have filed a motion to strike and a supplemental motion to strike sections of the declarations and exhibits submitted in support of defendants' motion for summary judgment. Defendants also moved to strike evidence submitted by plaintiffs in opposition to their motion. The court need not address these claim in detail. It is suffice to say the only facts necessary or proper for consideration of defendants' motion are those discussed in the opinion, and those need not be stricken.

### IV. CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment, Doc. No. 254, plaintiffs' motion to strike, Doc. No. 267, and defendants' motion for relief from mistake, Doc. No. 274, and defendants motion to strike, Doc. No. 279, and
////
////

1  plaintiffs' supplemental motion to strike, Doc. No. 281, are all
2  DENIED.

3      IT IS SO ORDERED.

4      DATED:  February 24, 2010.

5

6

7                              _____
                                LAWRENCE K. KARLTON
8                               SENIOR JUDGE
                                UNITED STATES DISTRICT COURT
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

                              31