1              IN THE UNITED STATES DISTRICT COURT

2            FOR THE EASTERN DISTRICT OF CALIFORNIA

3                        ---O0O---

4     BEFORE THE HONORABLE LAWRENCE K. KARLTON, SENIOR JUDGE

5

6     BRIAN DAWE; FLAT IRON
      MOUNTAIN ASSOCIATE, LLC
7     formerly known as Flat
      Iron Mountain Associates,
8     a Partnership,

9          Plaintiffs,

10    Vs.                          CASE NO. CIV. S-07-1790 LKK

11    CORRECTIONS USA, a California
      Corporation; CALIFORNIA
12    CORRECTIONAL PEACE OFFICERS
      ASSOCIATION, a California
13    Corporation; JAMES BAIARDI,
      an individual; DONALD JOSEPH
14    BAUMANN, an individual,

15         Defendants.
      _____/
16    AND RELATED CLAIMS AND
      COUNTERCLAIMS
17    _____/

18

19                        ---o0o---

20                   REPORTER'S TRANSCRIPT

21               MONDAY, JUNE 21ST, 2010

22      RE:  MOTIONS IN LIMINE, MOTION TO ADD LATE WITNESS

23                        ---o0o---

24

25    Reported by:            CATHERINE E.F. BODENE,
                              CSR. No. 6926

CATHERINE E.F. BODENE, OFFICIAL COURT REPORTER, USDC
                    (916) 446-6360

```
1                          APPEARANCES

2                            ---o0o---

3

4    For the Plaintiffs:

5            WILKE FLEURY HOFFELT GOULD AND BIRNEY LLP
             400 Capitol Mal, 22nd Floor
6            Sacramento, California  95814

7            BY:  DANIEL LAWRENCE BAXTER, Attorney At Law

8

9

10

11   For the Defendants:

12            MASTAGNI HOLSTEDT AMICK MILLER & JOHNSEN
              1912 I Street
13            Sacramento, California  95811-3151

14            BY:  JAMES B. CARR, Attorney At Law
              BY:  PHILLIP R.A. MASTAGNI, Attorney At Law
15

16

17

18

19

20                           ---o0o---

21

22

23

24

25
```

1

<pre>
 1                    SACRAMENTO, CALIFORNIA

 2              MONDAY, JUNE 21ST, 2010 - 10:00 A.M.

 3                        ---o0o---

 4        THE CLERK:  Calling Civil Case S-07-1790, Dawe v.

 5   Corrections USA, et al.

 6        MR. BAXTER:  Good morning, Your Honor.  Dan Baxter

 7   for the plaintiffs.

 8        MR. MASTAGNI:  Good morning, Your Honor.  Phillip

 9   Mastagni on behalf of the defendants.

10        MR. CARR:  Good morning, Your Honor.  James B. Carr

11   on behalf of the defendants.

12        THE COURT:  What I intend to do -- I don't need

13   discussion on almost all of them.  There are two or three

14   that we've got to talk about; otherwise, we're just going to

15   go down the line.

16        We've got a problem with the adding of the late

17   witnesses, which we'll talk about as well, but let's just go

18   down the line.

19        Starting with the Defendant's Motions in Limine:

20        No. 1:  Exclusion of all evidence of emotional

21   distress damages for breach of contract claims.

22        None is sought.  Accordingly, it is denied as

23   irrelevant.

24        To the extent that it seeks to exclude all evidence

25   of emotional injury, denied, since some of the plaintiffs'
</pre>

2

1    causes of action are asserted torts.

2         Motion in Limine 2:  Exclusion of all evidence of

3    punitive damages for breach of contract.

4         Same as above.

5         No. 3:  Exclusion of all evidence of attorneys fees

6    and costs by the plaintiffs and the counterclaimant.

7         For the reasons set forth in the plaintiffs'

8    opposition, the motion is denied.

9         Motion in Limine No. 4:  Exclusion of all evidence

10   relating to corporate derivative claims against CUSA and/or

11   CCPOA.

12        Once again, the plaintiff is not bringing an action

13   under corporate derivative claims, but the evidence of

14   corporate losses are significant in that it is evidence --

15   according to plaintiff, I'm not saying it is true -- but

16   according to plaintiff it is evidence of motivation for all

17   of the events which occurred.

18        Thus, the evidence will be received, not for the

19   purpose of proving corporate derivatives, which the

20   plaintiffs have never asked for, but for the purposes which

21   the Court has just articulated.

22        MR. MASTAGNI:  May I ask one question on that motion,

23   Your Honor?

24        THE COURT:  Yes.

25        MR. MASTAGNI:  Plaintiffs' Exhibit list is replete

3

1   with multiple exhibits, and they clearly intend on

2   challenging just about every action of the corporation from

3   the first day in 1998.

4           We're just trying to exclude evidence of what would

5   appear to be challenging things on a derivative claim basis.

6   To the extent it is for motive, it would be cumulative.

7           THE COURT:  All right.  The Court has ruled.

8           No. 5:  Exclusion of all evidence relating to Michael

9   Machanich -- Is that his name?

10          MR. MASTAGNI:  Yes, Your Honor.

11          THE COURT:  -- and Michael Machanich lawsuit.

12          This one I don't have a tentative ruling on because

13  it is not clear to me who he is or what he's got to say.

14          You are the proponent of the evidence?

15          MR. BAXTER:  Yes.

16          Your Honor, again, I certainly don't intend to

17  introduce evidence of the lawsuit unless it becomes necessary

18  in a defensive capacity.

19          Relative to Mr. Machanich himself, he's going to

20  testify as to communications he had with individuals who have

21  knowledge of the defamation.

22          THE COURT:  I'm sorry.  Will you lift the microphone.

23          He's going to testify --

24          MR. BAXTER:  Testify about --

25          THE COURT:  -- about conversations that he had with

4

1    people who are aware of the --

2         MR. BAXTER:  Of the defamation, as well as some of

3    the people who undertook the defamation themselves, including

4    Michael Jimenez.

5         MR. MASTAGNI:  Your Honor, we brought copies --

6         THE COURT:  I just asked you to stop for a minute

7    because I'm trying to process what I was told.

8         (Brief pause.)

9         Yes, sir.

10        MR. MASTAGNI:  We brought copies of Plaintiffs'

11   Exhibit 916, 1044, 1086, 1087.  Those are basically the

12   Machanich lawsuit that was filed in Sacramento Superior Court

13   that alleges a breach of contract regarding -- amongst other

14   things, there are very scandalous, sexual connotations in

15   that lawsuit.

16        THE COURT:  Mr. Mastagni, you just object to those

17   exhibits, and they are not marked in to evidence.

18        Let me tell you how it goes with exhibits.  The

19   exhibits are very simple.  What we're trying to do is to

20   avoid proof of foundation and wasting everybody's time on

21   stuff that nobody disagrees with.

22        But if there is some reason for you to object that is

23   beyond that, then you just object.  And it is not marked in

24   to evidence.

25        If plaintiff seeks to move them, they're not marked

5

1    into evidence, you can raise your objection, and the Court

2    will rule on it.

3         Nonetheless, Mr. Baxter, it is troubling that you

4    listed the lawsuit as an exhibit.  I don't care why.  Well, I

5    do, but not enough to hear about it.  But that really takes

6    care of the exhibits, Mr. Mastagni.

7         Okay.

8         As to whether or not evidence relating to what he

9    heard from other people about the defamation or his own

10   responses to it, we'll wait for trial and see whether it's

11   admissible or not when it is offered.

12        MR. MASTAGNI:  All right.

13        THE COURT:  No. 8:  Exclusion of all evidence

14   relating to the Cohen, Volk and Drabkin -- I'm proud of

15   myself -- expert reports relating to the economic damages of

16   various plaintiffs.

17        That's deferred to trial.  Plaintiff must lay a

18   proper foundation.  If you can't, it won't come in.

19        MR. BAXTER:  Fair enough, Your Honor.

20        You skipped 6 and 7.

21        THE COURT:  I'm sorry, sir?

22        MR. BAXTER:  You skipped 6 and 7.

23        THE COURT:  Did I skip 6 and 7.  I'm sorry.

24        No. 6:  Exclusion of all evidence relating to

25   California State Bar complaints and California AG Office

6

1   complaints.

2          What in heaven's name is that about?

3          MR. BAXTER:  The only reason we listed them, again

4   Your Honor, is in a defensive capacity.  Should there be any

5   assertions from the defendants that our clients' stories

6   weren't consistent from the beginning to the end, we would

7   introduce them only in that capacity.

8          I would also point out that defendants themselves

9   have listed some of the very same exhibits.

10         THE COURT:  To the extent that somebody -- both sides

11  have listed it, I guess that nobody can object.

12         Again, that will be deferred to trial to see whether

13  there is any relevance to it at all.

14         MR. MASTAGNI:  I would only state, Your Honor, the

15  bar complaints happen to be against counsel in this case.

16  There is a bar complaint against me, one against my father,

17  one against another attorney involved in this case.

18         THE COURT:  It is highly unlikely that they'll come

19  in, Mr. Mastagni.  To say the least, it is highly unlikely.

20  But, you know, if he moves it, I'll have to worry about it

21  then.  I can't decide it in the abstract.

22         No. 7:  Exclusion of all evidence relating to

23  settlement discussions.

24         That's granted.

25         Exclusion of all evidence -- oh -- relating to the

7

1   expert testimony is deferred to trial.

2          No. 9:  Exclusion of evidence relating to

3   interference with Brian Dawe CUSA Contracts.

4          I've got a question mark, which means I don't know

5   what the issue is or it is not plainly enough.  Mr. Mastagni,

6   tell me what you are talking about.

7          MR. MASTAGNI:  To the extent in the Pretrial Order,

8   and in this case generally, and again in the opposition filed

9   by Mr. Baxter, Mr. Baxter seeks to put on evidence of

10  interference with Brian Dawe's contract with Corrections USA

11  by Corrections USA and by board members of Corrections USA.

12         We simply are stating that as a matter of law that's

13  a breach of contract, that's the case to put on there.

14  Interference with the contract has to be with third parties.

15         THE COURT:  I understand what you are saying.

16         MR. BAXTER:  It is just not true, Your Honor.  There

17  are two components of our interference with contract claim

18  and prospective economic claims.

19         As to the CUSA contract, it is Dawe's claim --

20         THE COURT:  You know, folks -- I'm sorry, Mr. Baxter.

21  Please, speak up.

22         MR. BAXTER:  I'm sorry.

23         There are two components of the interference claims.

24  As to the CUSA contract, the claim is by Mr. Dawe against the

25  defendants other than Corrections USA.  We recognize that you

8

1    can't interfere with your own contract.  We get that.

2         The second component, which extends to all the

3    defendants, is the defendants' interference with Mr. Dawe's

4    prospective economic relationships in the context of the new

5    business he was starting up after he was kicked out of

6    Corrections USA.

7         So this notion that it is interference with your own

8    contract has never been our argument.  We have indicated that

9    several times.

10        MR. MASTAGNI:  Your Honor, the case law we cited

11   states that if the board members and the board --

12        THE COURT:  Listen to what his argument is.  He's

13   saying you are concerned with something that we have -- we --

14   the plaintiffs have never asserted.

15        We are not asserting the interference is with -- is

16   interference with the contract between Dawe and CUSA.  It is

17   between Dawe and other contracts and Dawe and the new

18   business.

19        Now, go ahead.

20        MR. MASTAGNI:  We have no problem with Mr. Dawe and

21   the third-party contracts.  I do have a problem with dressing

22   up the defendants and saying that Mr. Baiardi, who is a board

23   member, who voted on a board in a certain way, is interfering

24   with the contract.

25        MR. BAXTER:  Your Honor, to the extent they ever come

9

1    back, which there's indications they will, and say, "Hey, we

2    did this in our individual capacity, we're hoisting ourselves

3    on our own petard for the benefit of the corporation, the

4    corporation didn't sign off on it," we should darn well be

5    able to present evidence on those claims.

6         THE COURT:  Well, that appears to be, again, a

7    question of what the evidence demonstrates.  And it may be,

8    sir, that you can't introduce such evidence in your

9    case-in-chief and you've got to wait to see what the

10   defendants assert in their defense.

11        And if it is, as you assert, that the corporation was

12   not guilty of anything because these people were acting as

13   individuals, then, of course, you can bring that in in

14   rebuttal.

15        It seems to me there is no way for me to know the

16   answer to that until we see where the case shakes out to.

17        MR. BAXTER:  I agree, Your Honor.

18        THE COURT:  All right.

19        MR. MASTAGNI:  Sure.

20        THE COURT:  No. 11:  Exclusion of all evidence

21   relating to the actual words to prove malice.

22        MR. BAXTER:  There's No. 10, your Honor.

23        THE COURT:  I'm sorry?

24        MR. BAXTER:  No. 10.

25        THE COURT:  Did I miss it?  I really want to get to

10

1    11.

2        No. 10:  Exclusion of all evidence that the CUSA

3    Membership List is not a trade secret.

4        Gentlemen, that's an issue of fact.  Mr. Dawe is

5    going to get up apparently -- I don't know -- but apparently

6    he is going to get up and say:  I did this year's ago.  It's

7    got nothing to do with CUSA.

8        And CUSA is going to say:  BS.  You did that because

9    you were working for us; and therefore, it belongs to us.

10   And then the jury will decide.  That's what trials are about.

11       MR. MASTAGNI:  Correct, Your Honor.  I would just

12   state that in regards to that and some of the other motions,

13   the arguments are basically that Mr. Dawe should be estopped

14   from putting on evidence because he's already admitted that

15   the membership list was his.

16       But that's the gist of it.  And if it is a disputed

17   fact, it can be put on at trial.

18       THE COURT:  That's what it is.

19       No. 11:  Exclusion of all evidence relating to the

20   actual words to prove malice.

21       Denied.

22       While the words alone are generally not sufficient to

23   prove malice, and that's only generally, they are clearly

24   relevant.  The jury has got to know what was said.

25       Moreover, some words are defamatory per se.  And then

11

1    we get into what is, I think -- You know, it's not like I

2    haven't done this work before, but this is the first time I

3    think, that I can remember anyhow, that we've had this

4    problem.

5            We've got two statutes, one of which says that

6    certain words are defamatory per se.  And we have certain --

7    and we have another statute which says that where malice is

8    required, and it is required apparently, at least in some of

9    the circumstances that are tendered here, to persons

10   interested, as an example, then you've got to show more than

11   the words themselves.

12           My guess and my golly, and that's all it is, but I

13   look forward to your brief on the subject, is that the malice

14   statute overcomes the defamation per se statute.  Because I

15   can see how that would probably work, but we'll have to wait

16   and see what that says.

17           But clearly the words are proper and will be admitted

18   in to evidence.

19           I don't know why we're having that sound.

20           (Microphone feedback.)

21           (Brief pause.)

22           No. 12:  Exclusion of all evidence relating to any

23   defamatory statements relating to Brian Dawe, Harkins and

24   FIMA LLC, based upon California Statutory Immunities and

25   Privileges.

12

1          The question is whether the assertedly defamatory

2     words were spoken in circumstances giving rise to the

3     privilege, which depends upon the resolution of the facts,

4     which also includes the question of malice.

5          Again, I want to make clear that, you know, I have

6     just taken a quick look at the cases, but the cases seem to

7     say that the words are not sufficient in and of themselves.

8          I don't know what this is.  Let me see if I can

9     figure it out.

10         (Microphone feedback continuing.)

11         THE CLERK:  Andre is on his way up.

12         THE COURT:  I'm going to keep on going, and we'll do

13    the best we can.  I don't know why it is scratching like

14    that.

15         So that malice, while even in those circumstances

16    where the words are insufficient, may be inferred from the

17    tone, the circumstances, et cetera.

18         So my guess and my golly, again, is that those will

19    come in, although I have put a question mark there.  It is

20    likely that they are all going to come in, and we'll explain

21    to the jury whether they have to find that there was malice

22    in those circumstances in which there was.

23         No. 13:  Exclusion of all evidence relating to any

24    defamation claims by Gary Harkins against CCPOA.

25         Denied.

13

1          No. 14.  Exclusion of all evidence relating to the

2     republication of alleged defamatory emails, et cetera,

3     pertaining to Gary Harkins and Brian Dawe.

4          Denied.

5          No. 15:  Exclusion of all evidence relating to Brian

6     Dawe's defamation claim based upon "on and off the wagon"

7     phrases.

8          While Dawe -- I believe this is the case.  If it is

9     not, you guys ought to tell me.

10          While Dawe does not seek to impose liability for the

11     phrase itself, as he states it is part of a communication

12     which he does contend, taken as a whole, is defamatory.

13          Is that the plaintiff's position?

14          MR. BAXTER:  That's absolutely the position.

15          MR. MASTAGNI:  Your Honor, I would just state that at

16     the deposition I provided the transcript.  Mr. Dawe's lawyer

17     called Mr. Baxter.  He came back after 20 minutes off the

18     record and said that he's not bringing that claim, he wants

19     to keep it private.

20          It is true.  And it is highly prejudicial to allow

21     something to come in that, one, he waived; and two, is, in

22     fact, true.  It is irrelevant and confusing to the jury.

23          THE COURT:  I'm going to say, again, that the jury

24     will be instructed.  And if you remind me at the time that

25     this evidence comes in of the ruling, I will tell the jury at

14

1    that time that the phrase dealing with his being "on and off

2    the wagon" is not claimed by the plaintiff as defamatory, but

3    that the statement taken as a whole is claimed by the

4    plaintiff to be defamatory.  And that's one of the things

5    they'll have to decide.

6         All right.

7         No. 16:  Exclusion of all evidence relating to sexual

8    harassment, sexual discrimination litigation, et cetera,

9    sexual harassment claims and/or other protected class

10   discrimination claims against the defendants.

11        As Judge Brennan said, the sexually inappropriate

12   behavior has little or nothing to do with the case.

13        What defendant's did in response to that behavior is

14   part of plaintiff's contentions as to defendants' motivations

15   towards the plaintiff.

16        Is that right?  Is that the plaintiffs' position?

17        MR. BAXTER:  That's generally right.

18        THE COURT:  Tell me what specifically.

19        MR. BAXTER:  No.  I mean, as we said, the fact that

20   these payouts were made, the fact that my clients were on the

21   precipice of discovering those payouts in conjunction with

22   their call for an audit, the fact when the defendants

23   realized what my clients were on the precipice of finding,

24   they terminated them and defamed them.

25        There you go.

1          Again, we do not intend to go in to chapter and verse

2     about who did what, who touched who, anything like that.

3          MR. MASTAGNI:  Your Honor, I'm confused.

4          THE COURT:  I promise you.  I'll come back to you in

5     a minute.

6          Mr. Baxter, the problem is this is highly prejudicial

7     stuff.  Your clients didn't know about it, and you're arguing

8     that they would have discovered it and that's what exercised

9     the board.

10          MR. BAXTER:  Your Honor, actually they did know about

11     it.  What happened is they did find out about it and were in

12     the process of commissioning an audit.

13          THE COURT:  Okay.  Okay.

14          I thought this was to be denied because it's part of

15     the motivation.

16          Yes, Mr. Mastagni.

17          MR. MASTAGNI:  I'm simply confused.  It is difficult

18     to prepare for this case when one looks at their exhibit list

19     and the pleadings that have been submitted.

20          In his oppositions regarding Dawe's laptop and Tim

21     Bryan's report, they state, "The claims at issue in this

22     action have nothing to do with sexual misconduct or sexual

23     practice."  And they also state, "We're not bringing

24     employment discrimination or a similar wrongful termination

25     claim."  That's at Docket No. 362.

16

1      I don't know which it is.  Are we trying Shannon

2   Lahey's lawsuit or are we trying Brian Dawe's lawsuit?

3      THE COURT:  No, sir.  Again, I'm a little concerned

4   that either the plaintiff is not reading it correctly because

5   what you point out is precisely what Mr. Baxter has just

6   said, which is it isn't the underlying acts which matter.

7   What matters is that you were motivated to discharge whoever

8   you discharged because they were about to discover all of

9   that and it would become public.  That to me, again, is a

10  question of motivation.

11      And whether or not any of those things happened,

12  whether or not there was, in fact, any sexually inappropriate

13  behavior, the fact that these lawsuits had been brought or

14  that people had made complaints which had resulted in

15  settlements and payouts, and that plaintiffs claim that those

16  were a factor in the decision to discharge is clearly

17  relevant.

18      I quite agree with you that detailed explanations --

19  I mean a detailed examination of who did what to whom is

20  probably not appropriate, unless you want to bring it out as

21  it's all BS and we weren't motivated because it is not true.

22      That's up to you whether you want to do that.

23      MR. MASTAGNI:  We're going to have to put that case

24  on, which I think will be a sideshow and a circus and a

25  distraction.  But I think that's the point of tendering that

17

1    evidence from plaintiff.

2            (Sound equipment being tested.)

3            THE COURT:  It is entirely up to you what you do in

4    response to it, but I can't say --

5            (Reporter requests the statement be repeated.)

6            THE COURT:  Yeah.  There is too much going on here.

7            Go ahead.

8            MR. MASTAGNI:  On the one hand, Mr. Dawe says the

9    case isn't about sex and it's not wrongful termination so we

10   can't put on after-acquired evidence of what he is doing with

11   his computer.

12           On the other hand, DFEH complaints were filed against

13   Mr. Dawe, and Miss Lahey filed a lawsuit against Mr. Dawe for

14   sexual harassment.  Mr. Baxter represented her in that

15   lawsuit.

16           This is not going to be great evidence for Mr. Dawe,

17   but if we have to put on this circus that has nothing to do

18   with the defamation or breach of contract, it will just

19   prolong the case.

20           THE COURT:  Mr. Mastagni, that's the point that you

21   folks disagree upon.  It is a question of fact.  Did it have

22   anything to do with the contractual -- the asserted

23   contractual termination.

24           All right.  That's denied.

25           No. 17:  Whistleblower status.

18

1          I am perplexed again.  Mr. Dawe does not bring -- as

2     I understand it, does not bring a whistleblower cause of

3     action.  He's bringing an defamation cause of action.  But

4     his defamation cause of action is -- and his termination

5     cause of action are premised, at least in part, upon what he

6     asserts would have been discovered had the audit gone

7     forward.

8          Now, there is no way of your avoiding that

9     contention.  The fact that he might have -- I'm not saying he

10    could, but he might have brought a whistleblower statute but

11    didn't is simply not relevant.

12         All right.  Denied.

13         No. 18:  Exclusion of all evidence pertaining to

14    Shannon Lahey which relates to Brian Dawe's justification

15    defense.

16         Denied.

17         No. 19:  Exclusion of all evidence relating to

18    Shannon Lahey.

19         Denied.

20         No. 20:  Exclusion of all evidence that Flat Iron

21    Mountain Associates, LLC, could function as CUSA executive

22    director and that there was any contract between FIMA LLC and

23    CUSA.

24         Now, Mr. Baxter, I don't know what to make of this.

25    You have a contract which apparently says that you will

19

1    act -- I don't mean you personally -- that your client will

2    act as the CUSA executive director.

3          And apparently you want to put on evidence -- maybe I

4    misunderstand -- evidence that Flat Iron Mountain was acting

5    as executive director; is that right?

6          MR. BAXTER:  No.  Mr. Dawe acted as executive

7    director.  The Flat Iron Mountain contract with CUSA covered

8    both executive director and membership benefits coordinator.

9          So Mr. Dawe acted as the executive director.  Marilyn

10   Dawe, his wife, acted as the membership benefits coordinator.

11   And the contract was between Flat Iron Mountain, their

12   company, and Corrections USA.

13         THE COURT:  As to the later, but not as to the

14   former.

15         MR. BAXTER:  Actually, no.  Miss Dawe worked under

16   the Flat Iron auspice as well.

17         THE COURT:  No.  I understand.  But the contract --

18         MR. BAXTER:  I'm sorry.

19         THE COURT:  But the contract -- I'll get to you in a

20   moment.  I'm trying to understand what plaintiff is saying.

21         Did the contract permit Flat Iron to act either as --

22   this is a "yes" or "no" question -- either as the executive

23   director or the personnel person or whatever?

24         MR. BAXTER:  Yes.  Both.

25         THE COURT:  All right.

20

1          Mr. Mastagni?

2          MR. MASTAGNI:  Corrections USA has a standard

3  operating procedure.  It states that they can contract for an

4  individual to perform the services of executive director.  It

5  says the board can do that, and it says the board can set the

6  salary.

7          We're just asking for evidence that that SOP can

8  basically be rewritten by Mr. Dawe be excluded.

9          The way I understood the argument from Mr. Baxter's

10  opposition is, even though Flat Iron Mountain is a company

11  and didn't come into existence until after the contract came

12  into existence, et cetera, et cetera, it qualifies as an

13  individual under this SOP.

14          MR. BAXTER:  I'm happy to respond, Your Honor, if you

15  would like?

16          THE COURT:  Yes.

17          MR. BAXTER:  Okay.  First of all, the company did

18  exist.  It was simply in a different form, but Flat Iron,

19  during all relevant times, has been in existence.

20          The contract -- The SOPs do say that the executive

21  director shall be an individual.  The executive director was

22  an individual.  The executive director was Brian Dawe.

23          He contracted for that position pursuant to a series

24  of contracts that ultimately culminated in the 2006 agreement

25  that's the subject of this litigation.

21

1      That agreement specified an executive director and a

2   membership benefits coordinator.  Mr. Dawe, pursuant to that

3   agreement, served as the executive director.

4      THE COURT:  Let's assume for a moment -- I didn't

5   realize how confused this was.  Let's assume for a moment

6   that the SOP requires an individual.  If the corporation

7   enters into a contract, and I understand now there is a

8   dispute about whether it did or didn't, but if the

9   corporation entered into a contract which violated the SOP,

10   what is the consequence of that?

11      Plaintiff?

12      MR. MASTAGNI:  All of the prior contracts where

13   Mr. Dawe had served as the executive director were between

14   Brian Dawe and Corrections USA.  This Flat Iron Mountain came

15   up as a new deal.  And we're just saying that under the SOPs,

16   amongst other reasons --

17      THE COURT:  No, sir.  Please answer my question.

18      I want you to assume for a moment, what I think you

19   are arguing, which is that the last contract entered into was

20   Flat Iron Mountain instead of Dawe individually, and that

21   that violated the SOP.  But if the corporation entered into a

22   contract which violated the SOP, what is the effect of that?

23      MR. MASTAGNI:  We believe the effect of it would be

24   that the contract is void because it doesn't comply with the

25   SOP.

22

1              THE COURT:  But if the corporation -- I'm asking you

2       because I don't know.  If the corporation entered into a

3       contract which it -- I mean, you know, it is free to say:

4       Well, that was the SOP, but we think we've got a better deal

5       here this way so we'll enter into the contract.

6              Your view is that the SOP precludes the corporation

7       from making that judgment; is that right?

8              I don't know.  Is that right?

9              MR. MASTAGNI:  Yes, Your Honor, but more than that --

10             THE COURT:  Go ahead.

11             MR. MASTAGNI:  What we're trying is to preclude

12      rewriting the SOP.  Mr. Baxter is arguing an individual can

13      include an entity or partnership or dba or whatever else.

14             THE COURT:  Whatever Mr. Baxter's argument is, I'll

15      get from Mr. Baxter when we get there.  I'm just trying to

16      understand.

17             Is it your position that an SOP defines what a

18      corporation can do so that it is not free to enter into a

19      contract in violation of the SOP?

20             And if so, what is your basis for that?

21             MR. MASTAGNI:  The basis is the California

22      Corporations Code that describes how a board of directors can

23      enter into an interested contract with an uninterested vote

24      majority of the board.  And this SOP is important to the way

25      this whole contract came about because not only does the SOP

23

1    state he has to be an individual, it also says the majority

2    of the board has to contract out this position as executive

3    director.  None of that happened so...

4         THE COURT:  That's an entirely different set of

5    questions, which, you know, it doesn't involve what you're

6    talking about.

7         Mr. Baxter, let me ask you, if you know.  Somebody

8    has got to know by the time we get to trial.  I understand

9    you say it didn't, but if the contract violated the SOP, was

10   the board -- was the corporation free to violate it should it

11   decide that there's good reason to do so?

12        MR. BAXTER:  The short answer is I don't know, but I

13   believe the answer -- I don't want you to go to the bank with

14   this -- but I believe the answer is that a corporation has

15   the ability to act in derogation of a standard operating

16   procedure under certain circumstances, and that in this case

17   it would be an evidentiary issue.

18        THE COURT:  Well, I don't know that.  And we have a

19   question of law, which you folks will have to brief in your

20   trial brief, because I don't know the answer to that.

21        As to whether or not other issues -- other

22   requirements were met, that's what the trial is about

23   apparently.

24        All right.

25        No. 21:  Exclusion of all evidence modifying the

24

1    Dawe/FIMA LLC contract.  That's the same question.

2              23:  Exclusion of all evidence modifying the Gary

3    Hawkins oral contract.

4              Denied.

5              24:  Exclusion of all evidence that Brian Dawe/FIMA

6    were employees of CUSA.

7              Denied.

8              Exclusion of all evidence -- I mean, those are all

9    questions that have got to be resolved at trial.

10             26:  Exclusion of all evidence of false imprisonment.

11             Denied.

12             27:  Exclusion of all evidence relating to the

13   individual liability of James Baiardi and Joseph Baumann.

14             The plaintiff's position is that everything that

15   these two defendants did, I think, was in their corporate

16   capacity?

17             Is that your position, sir?

18             MR. BAXTER:  That's certainly our belief, Your Honor.

19   I don't know, to be honest with you, whether or not they're

20   going to try --

21             THE COURT:  That's why I was asking Mr. Mastagni

22   because he's the one that brought the motion.

23             MR. MASTAGNI:  Yes, Your Honor.

24             THE COURT:  Your position is that everything they did

25   was in their corporate capacity, and there is no

25

1   individual -- no individual action?

2          MR. MASTAGNI:  Yes, Your Honor.

3          There has been no discovery that has elicited that

4   anything was done individual --

5          THE COURT:  I don't care about what discovery shows

6   or doesn't show.  I want to know what your position is.

7          Your position is that these two defendants, Baiardi

8   and Baumann, acted only in their corporate capacity?

9          MR. MASTAGNI:  Correct.  Mr. Baiardi and Mr. Baumann.

10  Any individuals -- There's only two individuals named in the

11  lawsuit.

12         THE COURT:  All right.

13         Now, look, if one of these individuals commits a tort

14  that had nothing to do with their corporate capacity, no

15  question.

16         They're driving their own individual car.  They

17  aren't driving on corporate business.  They're going to the

18  ball game, and they run into somebody.  There is no question

19  that that person can sue them, doesn't have to sue the

20  corporation?

21         MR. MASTAGNI:  Correct.

22         THE COURT:  Okay.  So it then becomes -- I'm asking

23  the plaintiff.  It becomes a question of fact.  Either they

24  were on corporate business or they weren't.

25         Do you assert that there is a disputed issue of fact,

26

1   or will you accept the plaintiffs' representation to the

2   Court that everything they did was corporate?

3           MR. BAXTER:  I'll accept his representation.  But I

4   would also point out too, Your Honor, that one who makes a

5   defamatory communication is liable both in their individual

6   and representative capacity.

7           THE COURT:  All right.  You'll have to brief that

8   because -- I think that is true too, but I don't know.

9           All right.  So that issue is deferred to trial

10  because there is an argument about, yes, that's -- Well,

11  there is an argument about it.

12          28:  Exclusion of all evidence that Flat Iron

13  Mountain Associates LLC, ACOIN, ACO and ACOAI are not the

14  alter ego of plaintiff Brian Dawe.

15          How would you exclude that evidence?

16          I mean, that's, again, going to be an issue of fact

17  in the trial, isn't it?

18          MR. BAXTER:  Yes.

19          MR. MASTAGNI:  As I said, Your Honor, these were

20  basically premised on waivers and admissions that were made

21  in discovery.  But if it is a question of fact, then we'll

22  have to play the clip of him saying that.

23          THE COURT:  29:  Exclusion of all evidence at trial

24  by ACO and its alter egos, blah, blah, blah.

25          I'm sorry.  I think I misread 29.  What is 29?

27

1          MR. BAXTER:  It is all evidence Re:  ACO and its

2    alter egos Brian Dawe, Flat Iron Mountain Associates LLC,

3    ACOIN.

4          THE COURT:  All evidence concerning any of those

5    people?

6          Are you serious?

7          Denied.

8          Okay.  Plaintiffs' Motion in Limine:  Exclude

9    evidence of Bruce Dravis.

10          That is granted.

11          Motion in Limine No. 2:  Exclude testimony of Tim L.

12    Bryan.

13          That is deferred to trial, but what is going to have

14    to happen, Mr. Baxter, I am sorry to say, is that I'm going

15    to have to hear that outside of the presence of the jury

16    first to be sure that it is admissible evidence.

17          MR. BAXTER:  Fair enough.

18          THE COURT:  I have no desire to hear that evidence

19    twice, but I don't see how else I can do it.

20          All right.  That will be the orders.

21          Thank you, gentlemen.  Stand in recess.

22          MR. MASTAGNI:  Your Honor, are we going to address

23    the motions?

24          THE COURT:  Thank you.  I had completely forgotten

25    about it.  Thank you very much, Mr. Mastagni.

28

1        I don't know what to do with this.  Let me tell you

2   what started this, and now I'm just perplexed.

3        You wrote us a letter that said:  Yes, we were

4   negligent, but we really need Jeffrey Rogers.  You know, it

5   is really important to our case.

6        What I was about to say, you know, is you say he is

7   the most important witness, and I'm sure that's not true, but

8   he's important to your case.

9        What I told my law clerk was it's clearly untimely,

10  it is clearly inappropriate, but, you know, we're not going

11  to cripple defendants' case because of that so permit him to

12  amend to include Mr. Rogers and sanction him $250, $300 and

13  we'll get on with it.

14       And then the next day we get yet another letter, and

15  now yet another letter.  You're just asking me to say:  You

16  folks are incompetent.  And if I permitted this, it would go

17  on all the way through the trial, and I can't permit that to

18  happen.

19       I don't understand why in an important case you can't

20  figure -- My apologies, Mr. Mastagni.  Excuse me.

21       Today has been a day in which lawyers have just

22  behaved in ways that are incomprehensible to the Court.  When

23  I was lawyer in this court, if I can come to Judge Halbert

24  suggesting that I screwed up and he should save my fanny, he

25  would probably put me in jail.

29

```
1              Let me compose myself.

2              Probably would put me in jail?  My fanny.  He would

3    have put me in jail because those were the days when the

4    federal judge was the law West of the Pecos.

5              This is just awful.

6              Shannon Lahey is apparently a witness on the

7    plaintiffs' witness list so you can call her.

8              I don't know who John Dyer is, nor have you told me.

9              Portions of Brian Dawe's deposition.

10             Are you using that?

11             I mean, is it a part of your case-in-chief or just

12   for impeachment?

13             MR. MASTAGNI:  It is both, Your Honor, but I don't

14   believe those are even due until July 20th.

15             THE COURT:  Okay.  Well, if it is not due until July

16   20th, you don't have to worry about it, right?

17             MR. MASTAGNI:  But we sent them over.  I was

18   unclear -- It was supposed to be on there.  The other depo

19   transcripts were on there.

20             THE COURT:  And an exhibit detailing receipts,

21   expenses and email exchanges between plaintiff and Richard

22   Loud.

23             I have no idea what the heck that is.

24             You know, I just can't do this.  You just -- I mean,

25   either the Court means it isn't kidding when it issues
```

30

1    orders, or it is just wasting its time.

2           It is like your suggestion that just because, you

3    know, we shouldn't read the facts which are not disputed to

4    the jury.  It is just unbelievable stuff.

5           MR. MASTAGNI:  Your Honor, Jeff Rogers is the most

6    important all of those things.  It was truly a mistake.

7           THE COURT:  I will permit Jeffrey Rogers, and you

8    will pay $300 in sanctions.  The rest of it the answer is no.

9           MR. MASTAGNI:  Thank you, Your Honor.

10          THE COURT:  Stand in recess.

11          (Off the record at 11:30 a.m.)

12                          ---o0o---

13

14

15

16

17

18

19

20

21

22

23

24

25

1                    REPORTER'S CERTIFICATE

2                         ---o0o---

3
     STATE OF CALIFORNIA  )
4    COUNTY OF SACRAMENTO )

5

6
            I certify that the foregoing is a correct transcript
7
     from the record of proceedings in the above-entitled matter.
8

9

10              IN WITNESS WHEREOF, I subscribe this
     certificate at Sacramento, California on this 28TH day of
11   JUNE, 2010.

12

13

14    /S/_Catherine E.F. Bodene_____
            CATHERINE E.F. BODENE, CSR NO. 6926
15          Official United States District Court Reporter

16

17

18

19

20

21

22

23

24

25