UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

BRIAN DAWE; FLAT IRON MOUNTAIN ASSOCIATES, LLC, formerly known as FLAT IRON MOUNTAIN ASSOCIATES, a Partnership,

        Plaintiffs,

   v.

CORRECTIONS USA, a California Corporation; CALIFORNIA CORRECTIONAL PEACE OFFICERS' ASSOCIATION, a California Corporation; JAMES BAIARDI, an individual; DONALD JOSEPH BAUMANN, an individual,

        Defendants.
_____/
AND CONSOLIDATED ACTIONS & RELATED COUNTERCLAIMS
_____/

NO. CIV. S-07-1790 LKK/EFB

O R D E R

Defendants have moved for a new trial and renewed their motions for judgment as a matter of law. Only two questions raise serious questions: (1) whether the punitive damage award is unconstitutionally excessive and violates defendants' due process

1

rights[1] and (2) whether FIMA's verdict for intentional interference with contract fails as a matter of law because CCPOA cannot be liable for interfering with the CUSA contract. The motions are denied as to all other arguments.

## I. Constitutionality of Punitive Damages Award

After awarding plaintiffs significant compensatory damages, the jury also awarded plaintiffs very large punitive damages awards from two of the four defendants. The court summarizes the relevant awards below:

|  | Claim | Compensatory Award | Punitive Award | Ratio of Punitive Award to Compensatory Award |
|---|---|---|---|---|
| Brian Dawe's ("Dawe") Claims Against Corrections USA ("CUSA") | Defamation | $100,000 | $25,000 | 0.25:1 |
| Flat Iron Mountain Associates, LLC's ("FIMA") Claims Against CUSA | Breach of Contract | $111,000 |  |  |
|  | Breach of the Implied Covenant of Good Faith and Fair Dealing[2] | $0 |  |  |

---

[1] The court only addresses whether the award must be remitted to comport with due process. There is sufficient evidence in the record from which the jury could have reasonably concluded that defendants' conduct was reprehensible.

[2] The jury found in favor of FIMA, yet awarded no compensatory damages.

2

| | | | | |
|---|---|---|---|---|
| | Intentional Interference with Prospective Economic Relations[3] | $1 | $25,000 | 25,000:1 |
| | TOTAL | $111,001 | $25,000 | 0.23:1 |
| Dawe and FIMA's Claims Against CUSA | TOTAL (including breach of contract claims) | $211,001 | $50,000 | 0.24:1 |
| | TOTAL (excluding breach of contract claims) | $100,001 | $50,000 | 0.50:1 |
| Gary Harkins' ("Harkins") Claims Against CUSA | Breach of Contract | $6,000 | | |
| | Defamation | $28,000 | $25,000 | 0.89:1 |
| | False Imprisonment | $2,000 | $10,000 | 5:1 |
| | TOTAL (including breach of contract claim) | $36,000 | $35,000 | 0.97:1 |
| | TOTAL (excluding breach of contract claim) | $30,000 | $35,000 | 1.17:1 |

---

[3] The verdict form headings indicated that the claim applied to FIMA and Dawe's claim for intentional interference with prospective economic relations. The jury, however, was only given the opportunity to choose between finding in favor of FIMA and against CUSA or finding in favor of CUSA and against FIMA. For this reason, the court only considers this jury award as for FIMA.

3

| | | | | |
|---|---|---|---|---|
| Dawe's Claims Against California Correctional Peace Officers' Association ("CCPOA") | Defamation | $1,639,405 | $3,000,000 | 1.83:1 |
| FIMA's Claims Against CCPOA | Intentional Interference with Contractual Relations | $333,000 | $3,000,000 | 9.01:1 |
| | Intentional Interference with Prospective Economic Relations[4] | $1 | $3,000,000 | 3,000,000:1 |
| | TOTAL | $333,001 | $6,000,000 | 18.02:1 |
| Harkins' Claims Against CCPOA | Defamation | $315,000 | $1,000,000 | 3.17:1 |

While the Supreme Court has not set "concrete constitutional limits on the ratio between harm, or potential harm, to the plaintiff and the punitive damages award," it has announced a principle that, "in practice, few awards exceeding a single-digit ratio between punitive and compensatory damages, to a significant degree, will satisfy due process." State Farm Mut. Auto Ins. Co. v. Campbell, 538 U.S. 408, 425 (2003). The Court has further suggested that a 4-to-1 ratio "might be close to the line of constitutional impropriety." Id. (internal citation omitted). "Nonetheless, because there are no rigid benchmarks that a punitive damages award

---

[4] Same issue as to FIMA's claim against CUSA.

4

1  may not surpass, ratios greater than those we have previously
2  upheld may comport with due process where a particularly egregious
3  act has resulted in only a small amount of economic damages. Id.
4  (internal quotation omitted). For example, the Ninth Circuit found
5  that a punitive damages award of $5,000 was appropriate where a
6  plaintiff was awarded $3 in nominal damages. Mendez v. County of
7  San Bernadino, 540 F.3d 1109, 1122-23 (9th Cir. 2008) (affirming
8  district court's remittur of punitive damage award of $250,000 to
9  $5,000). However, "When compensatory damages are substantial, then
10 a lesser ratio, perhaps only equal to compensatory damages, can
11 reach the outermost limit of the due process guarantee. The precise
12 award in any case, of course, must be based upon the facts and
13 circumstances of the defendant's conduct and the harm to the
14 plaintiff." State Farm, 538 U.S. at 419.

15      This case involved numerous plaintiffs, defendants, and causes
16 of action. As an initial matter, the court must determine which
17 ratios to consider before it concludes whether those ratios are
18 excessive. Defendants argue that each cause of action should be
19 separately considered. Plaintiffs contend that the damages should
20 be considered as awarded against each defendant. There is little
21 authority on this question. However, in Bains LLC v. ARCO Products
22 Comp., 405 F.3d 764, 775-76 (9th Cir. 2005), the Ninth Circuit
23 evaluated the issue. It found that, "On the facts of this case, in
24 determining the correct amount of punitive damages, the jury could
25 properly consider not only the one dollar in nominal damages
26 awarded for discrimination under § 1981, but also the $50,000 in

5

1  compensatory damages awarded for breach of contract . . . ."
2  because the conduct supporting both claims was "intertwined." Id.
3  The Circuit did not set forth a test, but rather noted that in the
4  case before it the proper ratio was the total amount of punitive
5  damages compared with the total amount of compensatory damages
6  where the conduct underlying both claims was related. Defendants
7  argue that the verdict form issued in this case prohibits
8  consolidation. Under the terms of Bains LLC, however, that is
9  simply not the case. A claim for breach of contract can never
10 support an award of punitive damages, yet the Ninth Circuit
11 considered the compensatory damages awarded for breach of contract
12 when determining the proper award of punitive damages. Defendants
13 cited Bains LLC numerous times, yet did not address this finding
14 in their briefs.

15        Defendants also raised for the first time in reply that a
16 punitive award that is 10% of the net worth of an entity is
17 presumptively unconstitutional. Plaintiffs contend that the
18 argument is waived, or alternatively not an accurate statement of
19 the law. In support of the net worth argument, defendants rely on
20 the following analysis in a district court opinion:

> [Defendant] contends that the punitive damages award was excessive because most California courts have stated that punitive damages should not be allowed to exceed 10% of the defendant's net worth. Storage Services v. Oosterbaan, 214 Cal. App. 498 (1989), citing Devlin v. Kearny Mesa AMC/Jeep/Renault, Inc., 155 Cal. App. 3d 381, 393-96 (1984) (Survey of punitive damages as percentages of net worth in a sampling of 15 cases from 1950-1984 indicates that punitive damage awards are generally about 10% of the defendant's net worth).

6

1  Eldorado Stone, LLC v. Renaissance Stone, Inc., 2007 U.S. Dist.
2  LEXIS 60885 (S.D. Cal. 2007). I begin by noting that El Dorado is
3  based upon a survey where the reasons for a particular result are
4  neither articulated or known. It does not appear to this court to
5  be of any value in considering the instant case.
6       In Southern Union Co. v. Irvin, 563 F.3d 788 (9th Cir. 2009),
7  however, which was issued after State Farm, the Ninth Circuit
8  considered the value that a defendant's net worth should have in
9  determining whether a punitive damages award was unconstitutionally
10 excessive.  Judge Reinhardt's concurrence is helpful on this
11 question, even though ultimately firm answers are not to be found.
12 In any event, Judge Reinhardt explains,

> If punitive damages are to achieve the twin purposes of
> deterrence and punishment, . . . we must consider the
> impact of a damage award upon the particular defendant
> in determining the constitutional limit. The appropriate
> ratio of punitive to compensatory damages may vary with
> the amount of the compensatory damages and the net worth
> of the defendant. In some cases, although the conduct
> may be similar, because of lower compensatory damages or
> the defendant's higher net worth, a higher ratio may be
> necessary to achieve a deterrent or punitive effect. In
> other cases, where the variables are the opposite, a
> lower ratio may be appropriate.
>
> For example, if $10,000 in compensatory damages is
> awarded against a defendant with a net worth of $50,000,
> then $10,000 in punitive damages may be an appropriate
> amount to achieve both the punitive and deterrent
> purposes. The same amount of punitives awarded against
> a company earning $1 billion a year, with a net worth of
> $50 billion, would hardly serve either of these
> objectives.

24      Finally, this appears to be a fact based test. Of note,
25 however, the Ninth Circuit found a punitive damage award of
26 $1,185,217.14 appropriate where compensatory damages were

7

$395,072.38, a ratio of three to one.

### 1. Awards Against CUSA

Upon consideration of the facts before it, the court finds that all the punitive damages awards for Dawe and FIMA need not be remitted to comport with due process. CUSA does not seek to remit the award to Dawe. As to FIMA, the court sees two alternative understandings of how the award should be calculated under Bains LLC. FIMA's claims of breach of contract and intentional interference prospective economic relations are intertwined. Thus, when the two are calculated together, the ratio of punitive damages is 0.23:1, well within the bounds of State Farm. Alternatively, Dawe's claims against CUSA could be intertwined with FIMA's claims against CUSA. These ratios also comport with due process.

The court cannot, however, determine that Harkins' false imprisonment claim is intertwined with his other claims against CUSA. The question, then, becomes whether a ratio of 5:1 is impermissible where Harkins was only awarded a relatively small amount of compensatory damages. Considering the totality of the circumstances, the court determines that this punitive damages award should be remitted to $6,000, a ratio of three to one.

The court also determines that these punitive damages awards are appropriate under Southern Union Co. in light of all the evidence before it.

### 2. Awards Against CCPOA

After a close review of all the evidence in this case, the court finds that the punitive damages awarded against CCPOA must

8

all be remitted to a ratio of one to one. Specifically, the court finds that the punitive damages be remitted as follows:

|  | Claim | Compensatory Award | Jury Award for Punitive Damages | Remitted Punitive Damages Award |
|---|---|---|---|---|
| Dawe's Claims Against California Correctional Peace Officers' Association ("CCPOA") | Defamation | $1,639,405 | $3,000,000 | $1,639,405 |
| FIMA's Claims Against CCPOA | Intentional Interference with Contractual Relations | $333,000 | $3,000,000 | $333,000 |
|  | Intentional Interference with Prospective Economic Relations | $1 | $3,000,000 | $1 |
|  | TOTAL | $333,001 | $6,000,000 | $333,001 |
| Harkins' Claims Against CCPOA | Defamation | $315,000 | $1,000,000 | $315,000 |

The court further finds that these remitted awards comport with due process relative to CCPOA's net worth.

**II.   Liability for Interference with Contract**

CCPOA has filed a renewed motion for judgment as a matter of law on plaintiff's interference with contract claims against CCPOA. Specifically, CCPOA argues that it cannot be liable for interfering

9

Case 2:07-cv-01790-LKK-EFB   Document 570   Filed 03/18/11   Page 10 of 11

with the contract between CUSA and FIMA because "the only alleged 'interference' attributed to CCPOA were actions taken by Mike Jimenez, who was the incorporator and a board member of CUSA." Def.'s Renewed Mots. J. Matter Law ("RJMOL"), Doc. No. 533, 5 (Nov. 22. 2010). FIMA opposes this motion on several grounds. First, it contends that a reasonable jury could have found that Jimenez was acting on behalf of CCPOA at the time that the conduct supporting this claim occurred. Second, FIMA argues that the jury could have also reasonably concluded that conduct of defendant Donald Baumann ("Baumann"), CCPOA Chapter President, interfered with the contract between FIMA and CUSA even though the jury found that Baumann was not liable for interference with this contract.

The parties generally agree as to the standard the court should apply. The parties agree that CCPOA can only be found liable for interference with contract if the CCPOA agents who engaged in the interfering conduct were not employees of CUSA or otherwise acting as agents of CUSA at the time of the interfering conduct, and this standard seems to be supported under California law. See Shoemaker v. Myers, 52 Cal. 3d 1, 24 (Cal. 1990); Mintz v. Blue Cross of California, 172 Cal. App. 4th 1594, 1604 (2009). Here, the law is clear that Jimenez could not act on behalf of CUSA because he was merely an incorporator and board member. See Woods v. Fox Broadcasting Sub., Inc., 129 Cal. App. 4th 344, 356 (2005) (petition for review denied at 2005 Cal. Lexis 9494) ("[O]ur courts have allowed contract interference claims to be stated against owners, officers, and *directors* of the company whose contract was

the subject of the litigation.") (emphasis in original). Thus, CCPOA's motion is denied on this ground.

### III. Conclusion

For the foregoing reasons, the court ORDERS as follows:

(1) Defendants' renewed motions for judgment as a matter of law are DENIED. (Doc. No. 533)

(2) Defendants' motion for a new trial (Doc. No. 534) is GRANTED on the grounds of (a) whether the punitive damage award for Harkins' false imprisonment claim against CUSA was unconstitutionally excessive; (b) whether the punitive damage award for Dawe's defamation claim against CCPOA was unconstitutionally excessive; (c) whether the punitive damage awards for FIMA's claims against CCPOA were unconstitutionally excessive; and (d) whether the punitive damage awards for Harkins' defamation claim against CCPOA was unconstitutionally excessive. It is OTHERWISE DENIED.

(3) Plaintiffs shall inform the court within twenty-one (21) days of the issuance of this order as to whether they will (a) stipulate to the remitted punitive damage awards described herein; (b) seek a new trial; or (c) intend to appeal this order.

IT IS SO ORDERED.

DATED: March 17, 2011.

LAWRENCE K. KARLTON
SENIOR JUDGE
UNITED STATES DISTRICT COURT

11